UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ERIC TOLLIVER,                                      :

                     Plaintiff,               :

             -against-                   : **REPORT AND RECOMMENDATION**

C.O. J. SKINNER, D.S.A. LYNN LILLEY,     :          12 Civ. 971 (DAB) (KNF)
D.S.P. L. MALIN, SUPERINTENDENT
PATRICK GRIFFIN, COMMISSIONER            :
BRIAN FISCHER, DIRECTOR OF S.H.U.
ALBERT PRACK, ACTING DIRECTOR            :
OF S.H.U. D. VENNETTOZZI,[1]
                                                    :
                Defendants.

-----------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

*Introduction*

      Eric Tolliver ("Tolliver") commenced this action pursuant to 42 U.S.C. §1983, alleging

violations of his constitutional rights arising out of the September 11, 2011 visit of his fiancée,

Kayan Grant ("Grant"), to him in New York's Sullivan Correctional Facility ("SCF").  Tolliver

used the court's prisoner complaint form for filing his action, to which he attached the following:

Exhibit A (Tolliver's September 12, 2011 SCF complaint against Correction Officer J. Skinner

("Skinner")); Exhibit B (Tolliver's September 26, 2011 SCF complaint against D.S.A. Lynn

Lilley ("Lilley"), and Lilley's September 13, 2011 letter to Grant); Exhibit C (Tolliver's October

5, 14 and 18, 2011 appeals from a disciplinary hearing); Exhibit D (Superintendent Patrick J.

---

[1] Although the plaintiff names defendant "D. Vennettozzi"in the caption of his complaint,
the defendant spells his name "D. Venetozzi."  The Court will use the defendant's version of the
spelling.

Griffin's ("Griffin") October 24, 2011 discretionary review letter to Tolliver, and Tolliver's

October 30, 2011 appeal of that discretionary review); Exhibit E (Tolliver's October 3,

November 28 and December 26, 2011 appeals to Commissioner Brian Fischer ("Fischer"));

Exhibit F (Tolliver's November 20 and December 14, 2011 complaints to Albert Prack

("Prack")); Exhibit G (D. Venettozzi's undated Review of Superintendent's Hearing); and

Exhibit H (the November 8, 2011 response to Tolliver's October 5, 2011 grievance, November

8, 2011 response to his September 19, 2011 grievance, November 22, 2011 response to his

October 19, 2011 grievance, November 21, 2011 response to his October 7, 2011 grievance,

Tolliver's grievance letter dated December 16, 2011 and a "Response of IGRC" to his appeal,

which was returned to Tolliver on January 3, 2012).

     Before the Court is the defendants' motion to dismiss the complaint, "pursuant to Rule[s]

12(b)(6) and (1) of the Federal Rules of Civil Procedure" (Docket Entry No. 21), which includes

the following documents: (1) a notice of motion; (2) a notice to pro se litigants opposing a

motion to dismiss or motion for summary judgment, pursuant to Local Civil Rule 12.1; (3) a

memorandum of law; and (4) a declaration by the defendants' counsel, an assistant attorney

general, Jeb Harben, accompanied by Exhibit A (the plaintiff's complaint), Exhibit B (a

September 11, 2011 SCF Inmate Misbehavior Report), Exhibit C (the October 5, 2011

disciplinary hearing disposition), Exhibit D ("Transcript of September 20, 22, 27, 28 and

October 5, 2011 Disciplinary Hearing"), Exhibit E (the December 8, 2011 review of

Superintendent's Hearing), Exhibit F (the January 19, 2012 letter from William Gonzalez, Esq.

("Gonzalez") to Tolliver), Exhibit G (the September 28, 2011 Witness Interview Notice), Exhibit

H (the September 11, 2011 Inmate Injury Report), Exhibit I (Tolliver's inmate disciplinary

history), Exhibit J (State of New York Department of Correctional Services Directive 4932) and

Exhibit K (State of New York Department of Correctional Services Directive 4403).

Tolliver opposes the defendants' motion with a motion for an order "granting plaintiff's complaint and opposing motion, to the defendants' motion to dismiss," (Docket Entry No. 26), which includes the following: Exhibit A (Tolliver's November 6, 2011 appeal to Karen Bellamy ("Bellamy"), Bellamy's November 17, 2011 response to that appeal and November 6, 2011 appeal to the grievance supervisor), Exhibit B (Tolliver's November 28, 2011 appeal to Griffin), Exhibit C (Tolliver's November 10, 2011 appeal to Bellamy, C. Gregory's November 10, 2011 memorandum to Tolliver, Tolliver's October 30, 2011 grievance, Bellamy's November 18, 2011 letter to Tolliver, Tolliver's January 4, 2012 letter to Bellamy and Bellamy's January 31, 2012 letter to Tolliver), Exhibit D (SCF Assistant Form associated with Tolliver's September 11, 2011 misbehavior report), Exhibit E (three September 11, 2011 memoranda to Griffin from G. Maliga, Sergeant, Sgt. K. Phelps and the Watch Commander), Exhibit F (Grant's July 9, 2012 affidavit), Exhibit G (Marvette Brown's ("Marvette Lewis[2]") July 9, 2012 affidavit), Exhibit H (Tolliver's October 30, November 6, November 28 and December 26, 2011 letters to Fischer, and Gonzalez's January 19, 2012 letter to Tolliver), Exhibit I (Tolliver's November 20, December 1 and December 26, 2011 letters to Prack and Prack's November 3 and December 21, 2011 letters to Tolliver), Exhibit K (State of New York Department of Corrections and Community Supervision determinations respecting Tolliver's March 21, April 4, May 2 and June 27, 2012 grievances), and Exhibit L (May 25 and July 11, 2012 Five Points Correctional Guidance Unit memoranda).  The defendants filed a reply in support of their motion to dismiss and in

---

[2] Marvette Brown, whose testimony the plaintiff requested at his disciplinary hearing, is the wife of inmate Lewis, one of the plaintiff's witnesses at his disciplinary hearing.  The plaintiff's disciplinary hearing officer and the parties refer to inmate Lewis's wife as Marvette Lewis.  Thus, the Court will refer to this person as Marvette Lewis.

opposition to the plaintiff's motion.

***Allegations in the Complaint***

Tolliver alleged that, at approximately 2:00 p.m., during Grant's September 11, 2011 SCF visit to him, they "decided to take a walk out to the visiting room yard. They walked about "4 to 5 feet from the visiting room entrance" and, since it was cold, they hugged tightly and "leaned up against the wall overlooking the parking lot." Tolliver asserts that four officers were present at all times while he and Grant were in the visiting room yard. Just after one of the officers had finished talking with Tolliver and Grant about the weather and returned to his post, Tolliver noticed that an officer who was not working in the visiting room that day came to the visiting room yard and used his hand to summon Tolliver. Tolliver approached that officer and was asked if he knew why he was being summoned. When Tolliver said he did not know, the officer responded: "I just walk in the visit room and I saw you having sex with your visitor. I saw you entering her vagina and also pulling out of her." Tolliver asserts he became angry with the officer, whose name he learned was Skinner and asked: "is this for real or is this some kind of retaliation because of the two prior [altercations] him and I have had in the past." Tolliver alleges he told Skinner never to disrespect him and Grant with this type of accusation, and Skinner stated "I think that's what I saw you doing, and I am going to call the area sgt. and have your visit terminated and you in the SHU [segregated housing unit]." Tolliver said he would be glad to talk to the sergeant since the four officers "sitting and standing a few feet from me" did not see anything. Skinner walked away.

Shortly thereafter, Tolliver observed a sergeant enter the visiting room, talk with Skinner and turn to the other four officers in the visiting room asking whether they had noticed anything, to which each replied "no." When Tolliver tried to speak with the sergeant, he was told: "I am

4

not the area sergeant.  I am the SHU sergeant.  I was sent by the watch commander to terminate your visit and take you to the SHU."  Tolliver asked the sergeant to be taken to "the strip room so that I can show him and prove that this officer Skinner is trying to set me up, because if I was having sex with my fiancé [sic] and enter her as this officer claimed, my penis would be wet with pre-cum and my [fiancée's] vaginal fluid, plus my pants and undershorts would have some kind of wet stains on them."  The sergeant terminated Tolliver's visit and took him to the strip room where two officers inspected his clothes piece by piece as well as his penis, without noticing any kind of stain.  Next, Tolliver was taken to a hospital, where he was examined and wrote a statement on a hospital form.  Tolliver was then taken to SHU's strip room where officer Terk "again strip[ped] and inspect[ed] my penis and clothing and he also [saw] that I [had] no wetness on my penis or clothes or any sign that I was having sex."  Thereafter, Tolliver was taken to SHU.  A misbehavior report dated September 11, 2011 was issued to Tolliver by Skinner in connection with this event.  Tolliver alleged that Skinner wrote in the misbehavior report that "he was standing at the visiting room window watching [Tolliver] inside his female visitor rocking back and forth having sex, upon [Tolliver] turning around and seeing [Skinner] watching [Tolliver] then slowly pulled or slid out of her, and immediately put his penis inside his pants."  After a disciplinary hearing, Tolliver was found guilty of creating a disturbance and a sex offense and was sentenced, inter alia, to six months of SHU confinement.

Tolliver alleges that he was accused falsely and "set up" by Skinner "who did this out of retaliation [for] two prior run ins him and I have had in the past."  Moreover, he asserts that Lilley retaliated against him because Tolliver is "the co-chairman of the inmate liaison committee and always goes against his policy, so he did this so that I could not get married to my fiancé [sic]."  Tolliver asserts that the disciplinary hearing officer, D.S.P. L. Malin ("Malin")

5

retaliated against him for "winning a lawsuit against her friend D.S.P. Cunningham."

On September 26, 2011, Tolliver filed a grievance in connection with the termination of Grant's September 11, 2011 visit to him, his placement in SHU and an order that Grant's visits will be non-contact for an indefinite period of time, without an investigation or a hearing having been conducted. Attached to his grievance is Lilley's September 13, 2011 letter to Grant, a copy of which Tolliver asserts he received "on or about September 27, 2011." The letter informed that, on September 11, 2011, Grant "was observed engaging in physical contact that was very sexual in nature," for which her visit was terminated and, further, that her visiting privileges with Tolliver "are now <u>indefinitely</u> limited to non-contact only."

On October 5, 2011, Tolliver appealed from the disciplinary hearing disposition related to the September 11, 2011 misbehavior report. He contended that the disposition was achieved in violation of his due process right to have a fair and impartial hearing officer. Tolliver asserted that the hearing officer ignored all the evidence in his favor.

On October 18, 2011, Tolliver made another appeal from the disciplinary hearing disposition related to the September 11, 2011 misbehavior report, contending, <u>inter alia</u>, that: (i) the "quality of the hearing tapes is very poor, and the testimony at the hearing is inaudible"; (ii) he was told that no "to-from" memorandum in connection with his charges existed, and Skinner wrote "to-from" memoranda after the hearing commenced; (iii) he "was denied the right to have a photograph taken of the visiting room area to show and prove that . . . the windows to the yard . . . are one-way, and a person cannot see another person inside the visit room through the windows from the outside yard"; (iv) he "asked for and was never given a written statement in violation of Directive 4932 §§ 253.2 and 254.5"; (v) he "was denied the right to call his witness Ms. Marvette Lewis, wife of inmate Lewis," when the hearing officer: (1) declared "her

6

testimony to be redundant," and (2) "stated to [him] off the record that she don't believe inmate witness"; (vi) his hearing was not commenced timely and the hearing officer forged the date on the hearing record sheet "from 9-20-2011, to 9-16-2011"; and (vii) a penalty of six months in SHU and three months non-contact visits "for his alleged first time offense" was excessive and arbitrary.

On October 14, 2011, Tolliver complained that upon his request for his "disciplinary and inmate record to review [his] hearing package and the tapes," an officer brought the paperwork and three tapes from the hearing, but said the tapes were "no good" because "the hearing officer did not record the hearing." According to Tolliver, he listened to the three tapes and discovered that they were "blank" and "nothing was recorded as the officer has told me." Tolliver alleges his right to have his hearing recorded was violated and he was not able to "conduct an appeal" due to this violation.

On October 24, 2011, Griffin sent a letter to Tolliver, informing him that a discretionary review of his October 5, 2011 "Tier III hearing . . .  was completed on October 5, 2011 by DSP Malin," and stated: "I find no reason to modify the disposition rendered in this matter." On October 30, 2011, Tolliver appealed the October 24, 2011 determination, contending his due process rights were violated because Griffin could not have reviewed the hearing records when the tapes were "blank and not audible."

On October 3, November 28 and December 26, 2011, Tolliver wrote letters to Fischer, appealing the indefinite suspension of his contact visits with Grant. On November 20 and December 14, 2011, Tolliver appealed to Prack. Tolliver was informed by D. Venettozzi that his October 5, 2011 hearing was "reviewed and affirmed on December 8, 2011."

Attached to Tolliver's complaint is Exhibit H, containing the denials of his various grievances, including the November 22, 2011 denial of his October 19, 2011 grievance, stating:

> By response dated 10/25/11 Disciplinary Lt. (J) advised, in part, "The hearing officer recorded the hearing as required." Additionally, "with (Grievant) hearing tapes, of the 3 tapes 1 is clear and the other 2 are difficult to hear at times. This is an equipment problem. We are in the process of correcting this issue."

Tolliver's December 28, 2011 grievance, states that he was wrongfully given an indefinite period of non-contact visits with Grant because he was "a first offender per Directive 440.3." Tolliver also included in Exhibit H a "Response of IGRC," stating that a "letter was sent to grievant's visitor, dated 9/13/11, from Acting Supt. L. Lilley informing them [sic] that the visitors [sic] contact visitation privileges were suspended indefinitely, only allowing non-contact visits, for any NYS Corr. Fac. This was due to an incident that occurred on 9/11/11 at Sullivan Corr. Fac." On January 17, 2012, Tolliver signed the January 13, 2012 denial of his December 28, 2011 grievance, stating that his contact visits were illegally suspended and that his "fiancé [sic] was never given notice" of the suspension.

Tolliver seeks monetary damages and that: (a) "these false charges be dismissed against me and I be given my full contact visiting privileges with my fiancé [sic]"; (b) "these charges be expunged from my record"; and (c) he be transferred back to the facility "in the hub" where he was housed "prior to these charges." He alleges that he is suing the defendants in their individual and official capacities.

***Defendants' Contentions***

The defendants contend that the plaintiff's claim "regarding the receipt of a false misbehavior report must be rejected" because " [i]nmates have no guaranteed immunity from being falsely accused of conduct that may result in the deprivation of a protected liberty

interest." They also contend that the plaintiff received all the process he was due, "including notice of his hearing, the opportunity to present witnesses and evidence and to defend against the charges against him." The defendants maintain that the hearing officer's determination, that the testimony of Marvette Lewis, the wife of one of the plaintiff's inmate witnesses, "would be redundant, assuming that [her] testimony would be similar to her husband's . . . hardly shows prejudice in that several witnesses who said they were close to plaintiff during the time in question stated that they had not seen him having intercourse."

According to the defendants, the plaintiff was not prejudiced when he was not allowed to take photographs of the visiting room windows to support his theory that "the windows were not see-through," and he could not have seen Skinner observing him from the inside of the visiting room, because several witnesses "testified that the windows are, in fact, clear and that the only thing that would block visibility would be shades if they were drawn." Thus, the hearing officer relied reasonably on the testimony of those witnesses, rather than on the plaintiff's testimony.

The defendants contend that the "remainder of plaintiff's argument appears to be that the weight of the evidence was in his favor and thus his rights were violated when the discipline was imposed"; however, "the Constitution only requires that some reliable evidence support the determination." The testimony of other witnesses did not contradict Skinner's testimony, and "the fact that other corrections officers in the area did not see plaintiff engaged in sexual intercourse does not mean they were actually watching plaintiff during the time in question as they were engaged in various duties then." Moreover, "Malin was free to give little weight to [the plaintiff's theory that Skinner's observation of the sexual intercourse can be challenged by the lack of observations of visible bodily fluids on his penis or clothing] given that the nurse who examined plaintiff approximately 20 minutes after the incidents testified that he could not

9

determine whether someone had recently been engaged in sexual intercourse by examining them."

The defendants contend that the plaintiff's claim that his disciplinary sanction of six months in SHU was too long should be rejected because "the penalty was within the discretion of the hearing officer and within the guidelines of the DOCCS's directive in question." Furthermore, "[w]hether or not DOCCS's directives or regulations were followed perfectly . . . is also irrelevant to the constitutional inquiry as an alleged violation of a state law, regulation or agency directive is not cognizable under Section 1983 and may not be used as a basis to conclude that any constitutional rights have been violated."

The defendants assert that the plaintiff failed to state a retaliation claim with respect to Skinner because he alleged in the complaint that Skinner retaliated against him "due to past 'altercations' or 'disagreements,' not because plaintiff was engaged in any protected activity." Similarly, any retaliation claim arising from the plaintiff's "purported position on the Inmate Liaison Committee" fails because the plaintiff did not allege that he engaged in a protected activity or specify either the substance of his work or the role of the defendants in connection with that committee. Additionally, any allegation that Malin retaliated against him based on the plaintiff's litigation against her friend is "unsupported, speculative and conclusory" and may be dismissed on the pleadings.

The defendants contend that no constitutional right to contact visits exists and suspension of Grant's contact visits "was implemented pursuant to the applicable DOCCS' directives." In addition, according to the defendants, the plaintiff also failed to state a conspiracy claim, and even if he did, "it must be dismissed pursuant to the intra-corporate conspiracy doctrine because the alleged conspirators were all employees of DOCCS."

10

The defendants maintain that, if Skinner "was simply mistaken in what he believed he had observed, he is entitled to qualified immunity."  Moreover, all other defendants would have had no basis to believe they were violating any clearly established rights, namely: (a) "Malin would have no basis for believing that crediting the eyewitness testimony of a corrections officer under the circumstances presented here could have violated any clearly established rights"; (b) Lilley would "have had [no] basis to believe he was violating any clearly established rights by notifying Ms. Grant-Beckles that he had decided under DOCCS's Directive 4403 . . . that she was no longer allowed contact visits with plaintiff, also relying on the eyewitness statements of a corrections officer"; and (c) Prack, D.Venettozzi, Griffin and Fischer would have had no reason to believe they were violating any rights "by either not personally responding to plaintiff's correspondence, denying grievances or deciding plaintiff's appeals against him."

The defendants contend that "[c]ontrary to the bulk of plaintiff's claims against supervisory defendants here, there is *no respondeat* superior liability under Section 1983," and "the claims against these supervisory defendants must be dismissed," since they "are not alleged to have taken any action other than not personally responding to, or obeying, plaintiff's communications within a time-period acceptable to plaintiff."  Furthermore, "[a]ny official capacity claims for damages must be dismissed under the Eleventh Amendment" sovereign immunity doctrine.  The defendants contend that no state-law claims are alleged, but if they were, they must be dismissed because they must be brought in the New York Court of Claims. Moreover, "[w]hile Plaintiff has exhausted his Due Process/Retaliation claims stemming from his disciplinary hearing by appealing that decision, plaintiff has attached numerous unexhausted grievances to his Complaint and appears to attempt to incorporate them by reference and, to the extent any of those grievances contain additional claims, he has not exhausted these claims."

11

The defendants maintain that the plaintiff's request to be transferred "back to Sullivan" is improper, because prison officials have the discretion to transfer prisoners and should be accorded deference on that issue.

***Plaintiff's Contentions***

Tolliver contends that he has a protected right against being falsely accused and "unjustly found guilty" based on a false misbehavior report.  Tolliver maintains that he had a liberty interest in not being confined in SHU for six months, deprived of the right to marry Grant and to have contact visits with her, and that the hardship imposed by the deprivation of his liberty interest was atypical.  According to Tolliver, at the time of his disciplinary hearing, he was scheduled to marry Grant.  He contends that he also has a paralyzed leg, "a drop foot with pins in his knee, and it is very painful and hard to live in the SHU [as it requires] plaintiff to be chained up and handcuff[e]d around his waist every time he [leaves] his cell."  Moreover, according to Tolliver, "because of the SHU time given to him," he was transferred from SCF to the Upstate correctional facility, far away from his children, Grant and family, all of whom live in New York City.  During his time in SHU, Tolliver was unable to touch his visitors, including Grant, was not allowed to eat food from the vending machines, was limited to one hour of recreation daily and two showers per week, was not allowed to possess personal property, had limited access to books and legal papers, and had no income to buy stamps.

Tolliver contends that he did not receive the due process that was owed to him because the hearing officer, intentionally, "chose to erase and not record the testimony of five of plaintiff's requested witnesses."  He maintains that Sgt. Balloy testified at the disciplinary hearing that, before the testimony began, the hearing officer told him what to say about the window in the visiting room; that is why Sgt. Balloy's "testimony was erased and not recorded

for the court to review." According to Tolliver, the testimony given by each of his witnesses was erased because the witnesses supported his claim. Tolliver contends that the three hearing tapes he received from the defendants were blank and "the alleged tapes hearing transcript that was submitted to this court by the defendants' attorney as an exhibit, is false." Tolliver asserts that the hearing officer denied his request to call Sgt. Meliga as his witness without giving him a written reason, although her testimony was very important given that she was the visiting room supervisor on the day of the incident.

The hearing officer also denied Tolliver's request to call Marquette Lewis as a witness. Although the hearing officer wrote that the denial of the plaintiff's request to call Marquette Lewis as a witness is due to the redundancy of her testimony, according to Tolliver, the hearing officer told him, "off the record[,] that she don't believe inmate witness." However, the hearing officer permitted Tolliver to call as witnesses four officers who were working in the visiting room on the day of the incident, without finding their testimony redundant.

Moreover, prior to the hearing, Tolliver requested "to and from" memoranda related to his case and was told none existed. However, Tolliver contends, when he filed an Article 78 proceeding in the state Supreme Court, the attorney for the respondent submitted three "to and from" memoranda with his answer, which Tolliver then saw for the first time. Tolliver maintains that it was not until "September 23, 2011 that this to-from was turned over [to him]. The hearing had already started on September 20, 2011"; thus, Tolliver's due process rights were violated because he was not "given at least 24 hours to review the evidence against him before the commencement of the hearing." Tolliver maintains that the hearing officer was partial, and she forged the date on the September 13, 2011 letter to Grant from the Superintendent, telling Grant that Tolliver's "hearing is to begin no later than 9-17-2011," to read "9-20-2011."

13

Similarly, he contends, the hearing officer forged the date on the hearing record sheet from "9-20-2011, to 9-16-2011."

Moreover, Tolliver contends, the hearing officer lied "on her evidence relied upon form, when she claimed that when plaintiff ask[ed] the question of C.O. Skinner at the hearing . . . if the day of the alleged incident was the first time seeing or talking with the plaintiff? She claim[ed] this officer['s] answer to this question was yes, when in fact this officer['s] answer to this question was, no, no we may have had some run ins before that day."  Tolliver asserts that "it is because of this fact that this hearing officer chose to destroy this part of the hearing tape, and also chose to intentionally not record the witnesss [sic] testimony."  Tolliver maintains that "the hearing was intentionally not recorded and what was recorded was after erased and destroyed," which, Tolliver asserts, is supported by the tapes he submitted on his appeal "to Albany."

With respect to Tolliver's retaliation claim, he contends he made allegations in his complaint that Skinner's action "was in retaliation of past altercation and disagreements," given that Skinner testified at the disciplinary hearing that he "may have had some run ins in the past" with Tolliver.  Moreover, Tolliver maintains, it was Malin who stated at the hearing that she knew of the litigation Tolliver had against her friend Dep. Cunningham, to which Tolliver objected; however, the hearing officer determined not to record his objection.  Similarly, Tolliver recalls that he objected to the hearing officer's statements that she does not believe inmate witness testimony and she did not understand why Tolliver called any inmate as his witness, but, according to Tolliver, his objections were not recorded.

Tolliver maintains that he has a state-created liberty interest in having contact visits, and New York courts "prohibit suspension of visitation privileges to inmate for disciplinary

14

purpose." Thus, when Lilley "'indefinitely' suspen[ded] plaintiff and his fiancé [sic] visiting privileges to only non-contact it was unconstitutional, because he fail[ed] to give both plaintiff or his fiancé [sic] any notice, and still have not given Ms. Grant any notice up to this day," whereas the plaintiff did not receive notice in writing until one week after the suspension. Tolliver asserts that Lilley failed to give him and Grant notice "hoping that the 30 day in which to appeal would run out, and our chance to appeal would be over," which, he contends violates due process, by depriving the plaintiff of the opportunity to be heard. Moreover, Tolliver asserts, the defendants' own directive provides that contact visits can only be denied for a maximum of 90 days, and the defendants' claim, that the plaintiff suffered no injury because the indefinite suspension was modified to 90 days, is meritless because Tolliver's contact visit privilege was suspended on September 11, 2011, and the indefinite suspension was not lifted "until some time in January 2012, over a month [beyond] the (90) days given by DSP Malin." Tolliver contends that the indefinite suspension imposed by Lilley would have remained in place had he not appealed it "to Albany."

With respect to the defendants' qualified immunity defense, Tolliver contends that it is meritless because "none of these defendants was mistaken when they chose to violate the plaintiff['s] due process and constitutional rights." Tolliver also asserts that the defendants' contention that he failed to allege personal involvement of the defendants is also meritless because he made specific allegations against Skinner, Lilley and Malin, and supervisory officials, Griffin, Fischer, Prack and D. Venettozzi, may be held liable because they learned about the violations from Tolliver's grievances, described in his complaint, but failed to remedy the wrong.

Tolliver contends that he exhausted the available administrative remedies because he

15

filed grievances, which he attached to his complaint.  Moreover, the issues the defendants

contend are not exhausted are in fact exhausted because the defendants delayed intentionally

making their decisions to prevent him from filing his complaint.

With respect to the defendants' contention that Tolliver should not be transferred "back

in the hub plaintiff was living prior to the false misbehavior report," Tolliver contends it is a

baseless contention because he did not ask to be transferred "back to Sullivan, but to be

transferred back to that hub," close to his family.  He maintains that the transfer far away from

his family, as a punishment, constitutes retaliatory conduct.  Tolliver contends that he was

scheduled to marry Grant on July 18, 2012, and when that date approached he was sent a letter

informing him that the new date was July 25, 2012, but as the rescheduled date approached, he

received another letter rescheduling his marriage date for October 31, 2012.  Tolliver claims the

defendants denied him his "First Amendment right to get married."  He contends the defendants'

motion to dismiss should be denied and the court should "grant the plaintiff['s] complaint."

### Defendants' Reply and Opposition to the Plaintiff's Motion

The defendants contend that the plaintiff is mistaken in contending that the rule that

inmates have no guaranteed immunity from being falsely accused of conduct that may result in

the deprivation of their liberty "only applies when an inmate has prevailed in a disciplinary

hearing and/or where there were no alleged due process violations at a disciplinary hearing."

According to the defendants, allowing claims of false misbehavior reports "to proceed if there

were alleged due process violations at a disciplinary hearing makes little sense in that the

corrections officer in question would not have conducted the disciplinary hearing and thus would

not have been personally involved in allegedly not providing due process at the hearing."  The

defendants assert that the filing of an allegedly false report alone is insufficient to raise a claim

under section 1983.

The defendants maintain that Malin was free to conclude that Skinner's testimony was more credible than the testimony of the plaintiff's witnesses, and the plaintiff's argument regarding whether the window at issue was one-way is "an issue of credibility that DSP Malin was free to decide." With respect to the plaintiff's remaining alleged deficiencies, the defendants contend they are irrelevant to the inquiry whether "DSP Malin relied on constitutionally adequate evidence in reaching her decision." They assert that, "while there are some gaps in the transcript where the audio tapes in question appear to have been defective, this does not present an issue of constitutional magnitude, particularly where DSP Malin provided a detailed summary of the evidence relie[d] upon and where the critical testimony relied upon is reflected in the transcript."

The defendants contend that the plaintiff failed to state a retaliation claim against Skinner because he did not file any grievances against him, and "[w]hether C.O. Skinner allegedly disliked plaintiff is insufficient" to state a retaliation claim. Moreover, the plaintiff's retaliation claim against Malin is speculative and conclusory, and the "plaintiff is using his litigation at a different facility against a different defendant in an attempt to insulate himself (through the claim of retaliation) against any discipline that may be imposed on him in the future at any facility by any defendant."

The defendants contend that no constitutional right to contact visits exists, and the indefinite suspension of contact visits was modified, which prevents the plaintiff from claiming "an injury resulting from an 'indefinite' suspension even if one was initially imposed." The defendants maintain that if Skinner was mistaken in what he observed, "he is entitled to qualified immunity even if the Court determines that issuing an incorrect misbehavior report can violate

the Constitution." Moreover, "Malin would have had no basis to believe that crediting the eyewitness testimony of a corrections officer under the circumstances presented here could have violated any clearly established rights," and Lilley would have no "basis to believe he was violating any clearly established rights by notifying Ms. Grant-Beckles that he had decided under DOCCS' Directive 4403 . . . that she was no longer allowed contact visits with plaintiff." Furthermore, according to the defendants, the supervisory officials would have had no reason to believe they were violating any clearly established rights by not responding personally to the plaintiff's correspondence or deciding his grievances. Additionally, their lack of personal involvement warrants dismissal of the plaintiff's claims against them.

With respect to the plaintiff's motion, the defendants contend it is procedurally improper because Tolliver failed to meet the requirements of Rule 56 of the Federal Rules of Civil Procedure and failed to provide a Local Civil Rule 56.1 statement. In any event, according to the defendants, even if considered, the motion "must be denied on substantive grounds for all the same reasons that defendants' motion to dismiss should be granted." The defendants contend that, given that Malin's actions satisfy the "some evidence" constitutional standard and that no protected activity occurred in connection with the retaliation claims, the plaintiff's motion for a judgment "granting the Complaint" must be denied.

The defendants allege that they were unaware, until the plaintiff asserted for the first time in his opposition to their motion, "that he is currently litigating virtually identical issues in an Article 78 proceeding that is now pending before the Appellate Division Third Department (Index Nos. 51486-12 (Third Dept.) and 7912-11 (Albany Co.))." According to the defendants, "[a]s there is a parallel state court proceeding that was initiated by plaintiff prior to the instant litigation, this Court should also consider dismissing this action pursuant to the abstention

doctrine" set forth in <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746 (1971).

## DEFENDANTS' MOTION TO DISMISS

## RULE 12(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to

and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56."  Fed. R. Civ. P. 12(d).

> In certain circumstances, the court may permissibly consider documents other than
> the complaint in ruling on a motion under Rule 12(b)(6).  Documents that are
> attached to the complaint or incorporated in it by reference are deemed part of the
> pleading and may be considered.  In addition, even if not attached or incorporated
> by reference, a document "upon which [the complaint] *solely* relies and which is
> *integral to the complaint*" may be considered by the court in ruling on such a motion.

> <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted).

"Factual allegations contained in legal briefs or memoranda are also treated as matters outside

the pleading for purposes of Rule 12(b)."  <u>Fonte v. Bd. of Managers of Continental Towers</u>

<u>Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

### *Defendants' Submissions*

The following exhibits submitted by the defendants in support of their Rule 12 motion to

dismiss will be considered by the Court because they are not matters outside the pleadings: (1)

Exhibit A, a copy of the complaint; (2) Exhibit B, a copy of the September 11, 2011 Inmate

Misbehavior Report, incorporated by reference in the complaint; (3) Exhibit C, a copy of the

Superintendent Hearing Disposition in connection with the September 11, 2011 incident,

incorporated by reference in the complaint; (4) Exhibit E, a copy of the plaintiff's Exhibit G,

attached to the complaint; (5) Exhibit F, a copy of the January 19, 2012 letter from Gonzalez to

Tolliver, responding to his letters of appeal, incorporated by reference in the complaint; (6)

19

Exhibit G, a Witness Interview Notice denying Tolliver's request to Marvette Lewis as a witness, incorporated by reference in the complaint, <u>see</u> the plaintiff's Exhibit C; (7) Exhibit H, an Inmate Injury Report dated "9/11/11," incorporated by reference in the complaint, <u>see</u> the plaintiff's Exhibit A; (8) Exhibit I, Tolliver's Inmate Disciplinary History, dated 5/30/12, incorporated by reference in the complaint, <u>see</u> the plaintiff's Exhibit C; (9) Exhibit J, Directive 4932, incorporated by reference in the complaint, <u>see</u> the plaintiff's Exhibit C; and (10) Exhibit K, Directive 4403, incorporated by reference in the complaint, <u>see</u> the plaintiff's Exhibit E.

The defendants' Exhibit D, which purports to be Tolliver's Tier III Disciplinary Transcript of September 20, 22, 27, 28 and October 5, 2011, will be excluded and not considered by the Court because the transcript is a matter outside the pleadings, neither mentioned nor relied upon in the complaint. Moreover, the Court will not consider any factual allegations contained in the defendants' memorandum of law.  See <u>Fonte</u>, 848 F.2d at 25.  Since the Court will exclude matters outside the pleadings, namely, the defendants' Exhibit D, and will consider only the complaint and the documents incorporated in the complaint by reference, namely the defendants' Exhibits A, B, C, E, F, G, H, I, J and K, no need exists for the Court to convert the defendants' Rule 12 motion to dismiss into a Rule 56 motion.

### *Plaintiff's Submissions*

Consequently, the following plaintiff's exhibits will be considered by the Court as they are incorporated by reference in the complaint: (a) Exhibits A, B, C, H and I, because they are appeals of the grievances the plaintiff filed with prison officials; (b) Exhibit D, an SCF Assistant Form, showing the witnesses the plaintiff requested for his disciplinary hearing; and (c) Exhibit E, three "to and from" memoranda, dated September 11, 2011, which the plaintiff alleged in his complaint that Skinner wrote, "after the hearing commenced and petitioner's defense was made

known."  The plaintiff's factual allegations and the following exhibits will be excluded as they

are matters outside the pleadings: (i) Exhibit F, Grant's affidavit, made after the complaint was

filed and dated "7-9-2012"; (ii) Exhibit G, Marvette Lewis's affidavit, made after the complaint

was filed and dated "7/9/2012"; (iii) Exhibit K, containing the March 21, April 4, May 2 and

June 27, 2012 determinations on the plaintiff's grievances; and (iv) Exhibit L, two memoranda

by the Five Points Correctional Guidance Unit concerning the plaintiff's marriage application,

issued after the complaint was filed and dated "07/11/12" and "05/25/12."

**RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

"It is well established that the submissions of a *pro se* litigant must be construed liberally

and interpreted 'to raise the strongest arguments that they *suggest*.'"  Triestman v. Federal

Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> accepted as true, to "state a claim to relief that is plausible on its face."  A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell
> Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

"Conclusory allegations that the defendant violated the standards of law do not satisfy the need

for plausible factual allegations."  Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 191 (2d

Cir. 2010) (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).  On a motion pursuant to Rule

12(b)(6), all facts alleged in the complaint are assumed to be true and all reasonable inferences

are drawn in the plaintiff's favor.  See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 655

F.3d 136, 141 (2d Cir. 2011).  "[A] complaint can be dismissed for failure to state a claim

pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the defense appears on the

face of the complaint.'"  Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.

Coopers & Lybrand, LLP, 322 F.3d 147, 158 (2d Cir. 2003) (citation omitted).  To state a claim

under section 1983, a plaintiff must allege that: "(1) the defendant acted under color of state law;

and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal

statutory rights, or her constitutional rights or privileges."  Annis v. Cnty. of Westchester,

136 F.3d 239, 245 (2d Cir. 1998).

### *Younger Abstention Doctrine Defense*

> An abstention pursuant to Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971) is
>
> appropriate where "1) there is an ongoing state proceeding; 2) an important state
> interest is implicated; and 3) the plaintiff has an avenue open for review of
> constitutional claims in the state court." . . . In determining whether the "important
> state interest" requirement has been met, [courts] consider whether the state action
> concerns the central sovereign functions of state government such that "exercise of
> the federal judicial power would disregard the comity between the States and the
> National Government." "[Courts] do not look narrowly to [the State's] interest in the
> *outcome* of the particular case," but rather look to "the importance of the generic
> proceedings to the State."  The burden is on the state to establish that an important
> state interest is implicated. . . . In order to ascertain the "generic proceeding"
> involved in the action brought [in] the state [court, courts]  must consider the
> underlying nature of the state proceeding on which the federal lawsuit would
> impinge.
>
> Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 105-06 (2d Cir. 1997) (internal
> citations omitted).

"Not only must state proceedings be pending in order to invoke *Younger*, the proceedings must

have been initiated before any proceedings of substance on the merits have taken place in the

federal court."  Liberty Mut. Ins. Co. v. Hurlbut, 585 F.3d 639, 647 (2d Cir. 2009) (quotation

marks and citation omitted).  "*Younger* abstention is appropriate only when there is an adequate

opportunity in the state proceedings to raise constitutional challenges."  Reno v. American-Arab

Anti-Discrimination Comm., 525 U.S. 471, 495, 119 S. Ct. 936, 949 (1999)(quotation marks and

citation omitted).  Younger abstention is not jurisdictional; rather it is a defense that can be

waived.  See McCune v. Frank, 521 F.2d 1152, 1157 n.15 (2d Cir. 1975) ("Younger is

apparently not a defense that must be pleaded affirmatively. . . . On the other hand, Younger is

not jurisdictional, since in Sosna the Court permitted the state to waive it, [Sosna v. Iowa,]

419 U.S. 393, 396-97 n.3, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975), and jurisdiction of course is

not waivable."); Dairy Mart Convenience Stores, Inc. v. Nickel, 411 F.3d 367, 373 (2d Cir.

2005) ("we deem the issue of *Younger* abstention to have been waived.").

 An Article 78 proceeding is a special proceeding through which "[r]elief previously

obtained by writs of certiorary to review, mandamus or prohibition shall be obtained."  New

York Civil Practice Law and Rules ("CPLR") §§ 7804(a) and 7801.

> The only questions that may be raised in a proceeding under [Article 78] are:
>
> 1. whether the body or officer failed to perform a duty enjoined upon it by law; or
> 2.  whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
> 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.
>
> CPLR § 7803.

 The plaintiff did not assert or incorporate in his complaint facts pertaining to any Article

78 proceeding, especially not the one the defendants contend was initiated in 2011.  In his

opposition to the defendants' motion, the plaintiff asserted, for the first time, that he filed an

Article 78 proceeding in connection with "to and from memos" in the "Albany Supreme Court,

case # Index # 7912-11," and that, in that proceeding, a "D.O.C. attorney" submitted "three to

and from memos that plaintiff had seen for the first time."  The plaintiff attached the three

memoranda to his opposition (Plaintiff's Exhibit E in opposition to the motion).  However, since

the Court excluded the plaintiff's exhibits and the new factual allegations submitted in

opposition to the defendants' motion to dismiss because they are matters outside the pleadings,

the defendants' <u>Younger</u> abstention defense is without basis.  Accordingly, the defendants

waived their <u>Younger</u> abstention defense when they failed to raise it in their motion to dismiss.

Alternatively, even if the defendants did not waive their <u>Younger</u> abstention defense,

they failed to meet their burden of showing that it applies in this case.  The defendants' entire

<u>Younger</u> abstention argument is that the plaintiff "is currently pursuing an Article 78 proceeding

regarding the issues in this action that was filed in 2011."  The defendants do not: (i) identify the

underlying nature of the Article 78 proceeding on which this action would impinge; (ii) identify

what important state interest is implicated; and (iii) explain whether the plaintiff has an adequate

opportunity in the state proceeding to raise constitutional challenges he raised in his complaint.

The express language of CPLR Article 78 provides that it is a special proceeding limited in

nature and with respect to the questions that may be raised through it.  An Article 78 proceeding

does not appear to provide an opportunity for the plaintiff to raise the constitutional violation

claims that he raised in the complaint.  <u>See</u> CPLR §§ 7801, 7803 and 7804.

Moreover, the defendants did not identify the issues the plaintiff raised in the Article 78

proceeding, notwithstanding their contention that the plaintiff "is pursuing an Article 78

proceeding regarding the issues in this action."  The plaintiff mentioned an Article 78 proceeding

in his complaint, namely, in his November 28, 2011 letter to Fischer concerning his visitation

privileges appeal, in which he was inquiring about the status of his appeal: "I [wrote] to you a

few weeks ago [to] ask what is the status of my appeal, and if I need to go on and file a[n]

Article 78."  He neither incorporated an Article 78 proceeding in his complaint nor relied upon

it.  Thus, it is not possible to ascertain from the pleadings and the defendants' argument, what

issues were raised in the Article 78 proceeding on which the defendants rely for their Younger abstention defense.

Furthermore, the plaintiff mentioned an Article 78 proceeding  in his opposition to the defendants' motion only in connection with the "to and from memos," which he contends he saw for the first time during that Article 78 proceeding, notwithstanding that he was told at the time of his disciplinary proceeding that they did not exist.  Thus, even assuming that an Article 78 proceeding was incorporated by reference or relied upon by the plaintiff in his complaint, which it was not, it is not clear what additional issues, if any, the plaintiff raised in his Article 78 proceeding.  Having failed to meet their burden of establishing the elements of the Younger abstention defense, the defendants cannot use it to defeat the plaintiff's complaint.

### Eleventh Amendment Sovereign Immunity Defense

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has not decided whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction," Wisconsin Dep't Corr. v. Schacht, 524 U.S. 381, 391, 118 S. Ct. 2047, 2054 (1998), but in this Circuit, a sovereign immunity claim is analogized to an affirmative defense, "which a party may invoke or not as it wishes."  Woods v. Rondout Valley Cent. Sch., 466 F.3d 232, 238 (2d Cir. 2006).  Accordingly, the Eleventh Amendment Sovereign Immunity defense is analyzed pursuant to Rule 12(b)(6), not Rule 12(b)(1) of the Federal Rules of Civil Procedure.

"[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  The Eleventh Amendment bar to suit is not

absolute.  States may consent to suit in federal court, and, in certain cases, Congress may

abrogate the States' sovereign immunity."  Port Authority Trans-Hudson Corp. v. Feeney,

495 U.S. 299, 304, 110 S. Ct. 1868, 1872 (1990) (internal citations and quotation marks

omitted).  "[A]bsent waiver by the State or valid congressional override, the Eleventh

Amendment bars a damages action against a State in federal court.  This bar remains in effect

when State officials are sued for damages in their official capacity."  Kentucky v. Graham,

473 U.S. 159, 169, 105 S. Ct. 3099, 3107 (1985) (internal citations omitted).  "[T]he entity

asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity."

Woods, 466 F.3d at 237 (citation omitted).

The defendants are correct when they contend that "[a]ny official capacity claims for

damages must be dismissed under . . . Eleventh Amendment" sovereign immunity.  Accordingly,

the plaintiff's claims for damages against the state officials in their official capacities, based on

section 1983, are barred.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71, 109 S. Ct.

2304, 2312 (1989).

### Qualified Immunity Defense

Qualified immunity is an affirmative defense shielding government officials performing

discretionary functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

> To determine whether a right is clearly established, we look to (1) whether the right
> was defined with reasonable specificity; (2) whether Supreme Court or court of
> appeals case law supports the existence of the right in question, and (3) whether
> under preexisting law a reasonable defendant would have understood that his or her
> acts were unlawful.

> Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010).

A right claimed to be violated must be clearly established "at the time of the conduct at issue." Davis v. Scherer, 468 U.S. 183, 197, 104 S. Ct. 3012, 3021 (1984).

The defendants do not contend that the plaintiff did not have clearly established rights, but argue that no reason existed to believe they were violating any clearly established rights of the plaintiff, whatever those rights might be.  Where the defendants concede that the plaintiff had clearly established rights, their burden is to show that "under preexisting law a reasonable defendant would [not] have understood that his or her acts were unlawful."  Scott, 616 F.3d at 105.  That burden cannot be satisfied solely by contending, without more, that the defendants had no reason to believe they were violating any clearly established rights of the plaintiff. Therefore, dismissing the plaintiff's claims, based on the defense of qualified immunity, is not warranted.

### Prison Reform Litigation Act Exhaustion Defense

The Prison Reform Litigation Act provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendants.  See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011).

The plaintiff alleged that he exhausted the available administrative remedies applicable to all his claims—including those for which he did not receive timely appeals responses, as provided for under the prison grievance procedures—and that the defendants caused delays in his grievances intentionally, to prevent him from obtaining relief.  Although the defendants contend that the "plaintiff has attached numerous unexhausted grievances to his Complaint and

appears to attempt to incorporate them by reference and, to the extent any of those grievances contain additional claims, he has not exhausted these claims," they failed to identify the plaintiff's "numerous unexhausted grievances" or describe what issues those grievances raise that are allegedly unexhausted. Accordingly, the defendants failed to satisfy their burden of showing that any of the plaintiff's claims are unexhausted and they cannot obtain relief on this ground.

### Claim Based on Misbehavior Report

"[T]he filing of unfounded charges is not *per se* a constitutional violation under section 1983." Freeman v. Rideout, 808 F.2d 949, 950 (2d Cir. 1986). To state a constitutional violation claim based on a misbehavior report premised on unfounded charges, "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

Tolliver's allegation that Skinner wrote a misbehavior report in retaliation for the alleged "two prior alt[er]cations him and I have had in the past" is not sufficient to state a claim of retaliation. Tolliver failed to allege that he exercised a constitutional right, and that it was the exercise of that right that prompted Skinner to retaliate against him. Therefore, Tolliver failed to state a constitutional violation claim based on the allegedly false misbehavior report.

### Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974 (1974). To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process under the Fourteenth Amendment, as a result of conduct performed under color of state law, a plaintiff must establish that he or she: (1) had a

liberty interest; and (2) was deprived of that interest without due process of law.  See Wilkinson v. Austin, 545 U.S. 209, 221-24, 125 S. Ct. 2384, 2393-95 (2005).  "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks, brackets and citation omitted).  Once a liberty interest is established, to evaluate the sufficiency of particular procedures, the courts apply the framework established in Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893 (1976), which requires consideration of the following factors:

> "First the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
>
> Wilkinson, 545 U.S. at 224, 125 S. Ct. at 2395 (quoting Mathews, 424 U.S. at 335, 96 S. Ct. at 903).

With respect to "the three factors set forth in Mathews," the Supreme Court instructs that the courts should "first consider the significance of the inmate's interest in avoiding erroneous placement in [SHU]. . . . The private interest at stake . . . must be evaluated . . . within the context of the prison system and its attendant curtailment of liberties."  Id. at 225, 125 S. Ct. at 2395.  Concerning the second factor, the Supreme Court has stated that a "notice of the factual basis leading to consideration of [SHU] placement and a fair opportunity for rebuttal . . . are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations."  Id. at 225-26, 125 S. Ct. at 2395-96.

29

> An inmate charged with a violation must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action.
>
> Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986) (citing Wolff, 418 U.S. at 564-66, 94 S. Ct. at 2987-80 (1974)).

"An inmate has a due process right to summon witnesses in his defense at a prison disciplinary hearing, provided facility officials do not determine that this would in any way threaten institutional safety or correctional goals." Bedoya v. Coughlin, 91 F.3d 349, 352 (2d Cir. 1996). The third factor, the state's interest, is analyzed with an appreciation for "[p]rison security" and "[t]he problem of scarce resources." Wilkinson, 545 U.S. at 227-28, 125 S. Ct. at 2396-97.

The defendants do not dispute that: (i) they acted under color of the state law; and (ii) the plaintiff had a protected liberty interest in not being confined in SHU for six months as a result of the September 11, 2011 misbehavior report, since they do not make any arguments in their memorandum of law concerning these elements of the procedural due process claim. The only argument the defendants make with respect to the plaintiff's procedural due process claim, is that the plaintiff received all the process due to him. Thus, the only issue is whether the plaintiff alleged sufficient factual matter, accepted as true, to state a claim that he did not receive the process that was due.

Denial of Request to Call Marvette Lewis to Testify

Prison officials have the discretion to refuse to call witnesses to testify at a disciplinary hearing, and should state the "reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." Wolff, 418 U.S. at 566, 94 S. Ct. at 2980. The plaintiff alleged that the hearing officer's denial of his request to call Marvette

Lewis as a witness violated his due process right because her testimony "was very important due to the fact that the hearing officer had told the petitioner off the record that she does not respect inmate witnesses' testimony."  Moreover, the hearing officer did not deny, based on redundancy, the plaintiff's request to call, as witnesses, four officers who were working in the visiting area. The defendants contend that the hearing officer denied the plaintiff's request because "she determined that the testimony would be redundant, assuming [it] would be similar to her husband's and would be in support of plaintiff's version of the events."

> The defendants' Directive # 4932 provides that, at a disciplinary hearing:
>
> The disciplinary hearing officer shall be responsible for conducting disciplinary hearings in an impartial manner. . . . The inmate may call witnesses on his or her behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals.  If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals.
>
> (Defendants' Exhibit J, Part 253).

The hearing officer provided the plaintiff with a written statement denying his request to call Marvette Lewis, wife of inmate Lewis,  as his witness, indicating: "Testimony of this witness would be redundant.  Three other witnesses, inmates and visitors, who were present in the area at the time of the incident have already testified."  (Defendants' Exhibit G).

Although the hearing officer may deny a prisoner's request to call a witness based on redundancy, the plaintiff alleged that the hearing officer acted with bias when she denied his request to call Marvette Lewis because: (a) she told him off the record that she does not respect the testimony of inmate witnesses; and (b) she did not find the testimony of four officers who were all working in the visiting area at the time of the incident redundant.  Inmate Lewis, the husband of Marvette Lewis, testified.  Malin told the plaintiff, off the record, that she does not

31

respect the testimony of inmate witnesses, but denied his request to call Marvette Lewis to

testify because that testimony, as the defendants contend, "would be similar" to the testimony of

her husband, which Malin already told the plaintiff she does not respect.  Thus, Malin's denial of

the plaintiff's request to call Marvette Lewis to testify, based on redundancy, under these

circumstances, is suspect and leads the Court to conclude that Tolliver has stated a plausible

claim that Malin acted in a partial manner.  Since the plaintiff's allegations must be taken as

true, and the defendants do not refute these allegations, the Court finds that the plaintiff alleged a

plausible claim that the hearing officer acted in a partial manner when she denied the plaintiff's

request to call Marvette Lewis to testify.  See Wolff, 418 U.S. at 571, 94 S. Ct. at 2982 (the

adjudicator's discretion to deny a witness request is not unlimited and the adjudicator must act in

a "sufficiently impartial manner to satisfy the Due Process Clause.").

<u>Denial of Request to Take a Photograph of the Visiting Room Window</u>

The defendants' arguments that: (1) the denial of the plaintiff's request to take a

photograph of the visiting room window did not violate his due process rights because "[s]everal

witnesses . . . testified that the windows are, in fact, clear and that the only thing that would

block visibility would be shades if they were drawn"; and (2) it was not unconstitutional "to rely

on the testimony of these witnesses," are unsupported by the record on this motion.  The

plaintiff's allegations that: (a) the windows were not transparent from the outside; and (b) the

tapes from the hearing were blank, taken as true, set forth a plausible claim that the hearing

officer was biased in denying the plaintiff's request to take a photograph of the visiting room

window and that she acted as she did to prevent him from presenting documentary evidence

showing where he and Grant were standing, the type of window that existed in the visiting room,

and to bar him from challenging any evidence to the contrary.  See Russell v. Selsky, 35 F.3d 55,

59 (2d Cir. 1994) ("Due process requires that a prison disciplinary hearing be impartial.").

Skinner's testimony

The defendants contend that the hearing officer did not violate due process when she concluded that Skinner's eyewitness testimony was more credible than the plaintiff's testimony and that of the plaintiff's witnesses. However, the defendants do not address the plaintiff's allegation that the hearing officer was partial when she wrote in her "Statement of Evidence Relied Upon" that Skinner stated at the hearing that "he was not familiar with [the plaintiff] prior to this incident," which was contrary to what Skinner actually testified. Although the hearing officer was free to assess the witnesses' credibility, she was not free to state in her report that Skinner testified he was not familiar with the plaintiff, if Skinner did not so testify. According to the plaintiff's allegations, which are taken as true, contrary to what the hearing officer wrote in her statement, Skinner testified that "it is possible we may have run into each other," and Skinner and he had altercations prior to the September 11, 2011 incident. Given that the plaintiff's allegation that the tapes from the hearing were blank must be taken as true, his allegation that the hearing officer acted in a partial manner when she wrote that Skinner testified he was unfamiliar with the plaintiff prior to the September 11, 2011 incident, sets forth a plausible claim that the hearing officer was partial, since she either erased or failed to record the hearing and fabricated the statement about Skinner's testimony.

Blank Tapes from the Disciplinary Hearing

The defendants' Directive # 4932 provides that "[t]he entire hearing must be electronically recorded." (Defendants' Exhibit J, Part 253.6(b)). The plaintiff's allegation, taken as true, that, in response to his request to review the hearing tapes so he can make an appeal from his hearing disposition, an officer brought three tapes to him which were blank, was not

addressed by the defendants.  The defendants' arguments concerning the disciplinary hearing and the "weight" given by the hearing officer to the evidence presented are unsupported by the record on this motion because the Court excluded Exhibit D, the purported transcript from the disciplinary hearing, as a matter outside the pleadings.  Thus, the plaintiff made a plausible claim of a due process violation, based on the allegations concerning the blank tapes.

SHU Confinement Was Excessive

The defendants contend that even if the sentence of six months in SHU was too long under the regulations, no federal constitutional claim would arise because a violation of a state law, regulation or agency directive is not cognizable under section 1983.  However, in light of the defendants' concession that the plaintiff had a liberty interest in not being confined to SHU for six months, and the Court's finding that the plaintiff made plausible factual allegations that he did not receive the process that was due to him under the Fourteenth Amendment, the duration of the plaintiff's SHU confinement, while arguably not actionable by itself under federal law, is relevant to the plaintiff's due process violation claim.

***Retaliation Claims***

To state a First Amendment retaliation claim under section 1983 a plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002)).

The plaintiff concedes in his opposition to the defendants' motion that he did not file any grievances in connection with his alleged prior altercations with Skinner.  The complaint does

not allege any constitutionally protected activity by the plaintiff that could form the basis for his retaliation claim.  Thus, the plaintiff failed to state a claim of retaliation against Skinner.

The plaintiff's allegations that Lilley imposed an indefinite period of non-contact visits on him: (a) "out of revenge and retaliation of me as co-chairman of the inmate liai[s]on committee"; and (b) "out of revenge of me going against his decision toward the inmate population, with me as the I.L.C. inmate liai[s]on committee co-chairman, therefore he wants me off the committee," are insufficient to state a claim of retaliation by Lilley.  In his opposition to the motion, the plaintiff makes additional allegations related to Lilley's alleged retaliation against him.  However, the factual allegations in opposition to the motion to dismiss are matters outside of the pleadings and cannot be considered on this motion.  Accordingly, the plaintiff failed to state a retaliation claim against Lilley.

Similarly, the plaintiff's allegations that Malin erased the hearing tapes "out of revenge of me being on the I.L.C. committee as a co-chairman and most of the times go[sic] against . . . Dep. Malin's agenders [sic] for the inmates population," cannot be the bases for his retaliation claim because they are insufficient to allege plausibly any constitutionally protected speech or conduct by the plaintiff for which Malin retaliated.  However, the plaintiff's allegations that Malin "did what she did to me out of revenge and retaliation of me winning a lawsuit against her friend D.S.P. Cunningham" are not insufficient, in light of the entire complaint, to state a claim of retaliation by Malin for the plaintiff's filing a lawsuit against Malin's friend.  Therefore, the only plausible retaliation allegations the plaintiff made in his complaint are against Malin.

***Contact Visit Restrictions***

The defendants contend that: "whether or not plaintiff, as an inmate in a maximum security prison, is allowed visits permitting physical contact is a function of DOCCS regulations

and, as such, cannot form the basis for a federal due process or Constitutional claim." In support of this contention, the defendants invoke the following Second Circuit authorities Pollnow v. Glennon, 757 F.2d 496 (2d Cir. 1995) and Russell v. Coughlin, 910 F.2d 75 (2d Cir. 1990). Moreover, they contend that "the indefinite suspension was modified to a suspension of three months." The plaintiff contends that he has a constitutionally protected interest in contact visits, created by the state and the defendants violated his constitutional right when they deprived him of that interest without providing notice to him and an opportunity to be heard. Tolliver alleges that he received a copy of the September 13, 2011 letter to Grant "on or about 9-27-2011," suspending his contact visit privileges and that neither an investigation was conducted nor any opportunity afforded him or Grant to be heard in connection with the suspension.

The Second Circuit authorities invoked by the defendants do not support their contention that a contact visit determination, being "a function of DOCCS regulations," cannot form the basis for "a federal due process or Constitutional claim" because Pollnow does not involve a prisoner's section 1983 action, see Pollnow, 757 F.2d at 497-98 (the issue is whether granting summary judgment to defendant officials of the Millbrook, New York, school system, based on qualified immunity, was proper), and Russell involves an assumed "administrative and not disciplinary" confinement, see Russell, 910 F.2d at 77 (assuming for the purposes of the qualified immunity analysis that the plaintiff's confinement was administrative and not disciplinary). Moreover, in Russell, the Second Circuit found that "New York State's regulations governing keeplock create a liberty interest in remaining free from administrative confinement," and the plaintiff "was deprived of this interest when he was placed in keeplock . . . since the deprivation of [his] liberty did not occur pursuant to constitutionally adequate procedures." Id. at 77-78. Absent any explanation for how these Second Circuit authorities

support the defendants' argument, the Court is at a loss to discern what utility exists in making citation to them.  Notwithstanding the defendants' failure to support their argument that a contact visit determination cannot form the basis for a federal claim, the plaintiff's allegation that he was deprived of contact visits, on September 11, 2011, without notice and an opportunity to be heard, as well as the allegation that the indefinite ban on contact visits was not modified until January 19, 2012 (see Plaintiff's Exhibit H in the opposition to the motion), taken as true, state a plausible due process violation claim.

### *Personal Involvement of Supervisory Officials*

The defendants contend that claims against supervisory defendants must be dismissed because "there is *no respondeat* superior liability under Section 1983," and the allegation that a high-ranking official was informed of an incident is insufficient to establish personal involvement.  The plaintiff contends he appealed to each supervisor, bringing to his or her attention the alleged constitutional violations, but each turned a blind eye and ignored his letters. According to the plaintiff, the supervisory officials all affirmed the hearing decision "without a complete record of plaintiff's hearing, because the hearing officer had destroy[ed] the hearing tapes," and cannot claim they did not know that the hearing was not recorded because he raised that issue in his letters.  The plaintiff contends that each supervisor violated his due process right to a fair and impartial review, when each wrote to the plaintiff affirming the hearing decision upon his or her review of the hearing record, even though the hearing was not recorded.

To establish a section 1983 claim against government officials, including supervisors, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009).  In the Second Circuit,

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The Second Circuit has not yet addressed what, if anything, remains of the five ways of showing personal involvement of supervisory defendants after Iqbal, "and the district courts in this Circuit, as well as the other courts of appeals, have grappled with this question and reached conflicting results." Turkmen v. Ashcroft, __ F. Supp. 2d __, 2013 WL 153158, at *11 (E.D.N.Y. Jan. 15, 2013) (listing cases).  However, absent Second Circuit authority to the contrary, the Court finds that Iqbal did not abrogate the five forms of evidence showing personal involvement, as articulated in Colon, 58 F.3d at 873.  See Toliver v. City of New York, No. 10 Civ. 5803, 2012 WL 6013098, at *6 (S.D.N.Y. Dec. 3, 2012) (applying the Colon five forms of evidence to show personal involvement of supervisory defendants); Hyman v. Nassau Cnty. Corr. Facility, No. 12-CV-6094, 2013 WL 171268, at *3 (E.D.N.Y. Jan. 15, 2013) (applying the Colon five forms of evidence to show personal involvement of supervisory defendants); James v. Poole, No. 06-CV-6007, 2013 WL 132492, at *3 (W.D.N.Y. Jan. 9, 2013) (applying the Colon five forms of evidence to show personal involvement of supervisory defendants); Bowens v. Smith, No. 9:11-CV-784, 2013 WL 103575, at *4 (N.D.N.Y. Jan. 8, 2013) (applying the Colon five forms of evidence to show personal involvement of supervisory defendants); but see Richardson v. Dep't of Corr., No. 10 Civ. 6137, 2011 WL 710617, at *2 (S.D.N.Y. Feb. 28, 2011) (stating that only "the first and third Colon factors have survived the Supreme Court's

decision in *Iqbal*.").  "While mere receipt of a letter from a prisoner is insufficient to establish

individual liability, an official's actions and responses arising out of a grievance may."  Bodie v.

Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004).

   Superintendent Griffin

   The plaintiff alleged that, in response to the appeals in which he asserted that his hearing

was not recorded, he received an October 24, 2011 letter from Griffin personally, in which

Griffin stated he completed a discretionary review of the plaintiff's hearing and found no reason

to modify the disposition rendered.  Thus, Griffin received the plaintiff's complaint and

responded personally to it, after reviewing the grievance in which the plaintiff raised the alleged

constitutional violations.  These allegations are sufficient to state a plausible claim that Griffin

was involved personally in violating the plaintiff's due process rights because his letter to the

plaintiff states that he affirmed the hearing decision, after completing a review of the hearing,

despite the fact that the plaintiff asserted in his appeal to Griffin, that the hearing was not

recorded.  Therefore, dismissing the claims against Griffin based on lack of personal

involvement is not warranted.

   Commissioner Fischer

   The plaintiff alleged that he wrote to Fischer multiple times without receiving an answer,

and it was only after he commenced an Article 78 proceeding that he received a response to his

letters.  However, the response he received to his grievances, dated January 19, 2012, was

prepared by Deputy Counsel Gonzalez, not Fischer.  Moreover, an undated letter the plaintiff

received in response to his appeal was sent by D. Venettozzi, acting director, Special Housing

Inmate Disciplinary Program, albeit "on behalf of the Commissioner."  Therefore, the allegation

that the plaintiff sent letters of appeal to Fischer and received responses to those letters from

officials other than Fischer, is insufficient to state personal involvement by Fischer exists. Consequently, dismissing claims against Fischer is warranted.

### Director of SHU Prack

The plaintiff alleged that he wrote appeals to Prack raising the alleged constitutional violations and asking that they be investigated, and he received personal responses from Prack. Prack's November 3, 2011 letter stated that the plaintiff's appeal was received on October 24, 2011, and a "review will be conducted in accordance with established procedures and you will be advised directly of the results."  Prack's December 21, 2011 letter stated:

> As you are aware, the hearing was reviewed and affirmed on December 8, 2011.  It appears that you disagree with that decision.  You may request a reconsideration of that decision by submitting your request and reasons for the reconsideration to this officer.  There are no time limitations on replies to reconsideration requests.

Although the plaintiff contends that Prack turned a "blind eye" to his appeals, Prack's letters show that he responded to the plaintiff's letters by informing the plaintiff about the procedures to follow to pursue further a remedy.  Therefore, the plaintiff failed to allege Prack's personal involvement, because he did not assert Prack's direct participation in violating his constitutional rights, Prack's failure to remedy any violation after being informed of it through the plaintiff's appeal letters, or make any other allegations sufficient to demonstrate personal involvement by Prack.  Accordingly, dismissing claims against Prack is appropriate.

### Acting Director of SHU D. Venettozzi

The plaintiff alleged that D. Venettozzi responded to his appeals, "affirming my appeal without any hearing records."  Since D. Venettozzi responded personally to the appeals in which the plaintiff raised the alleged unconstitutional conduct, including that his hearing was not recorded, and D. Venettozzi affirmed the December 8, 2011 denial of the hearing "without any

hearing records," the plaintiff's allegations are sufficient to state D. Venettozzi's personal involvement in violating the plaintiff's constitutional rights.  Thus, dismissing claims against D. Venettozzi is not warranted.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Since the defendants served the plaintiff with a Local Civil Rule 12.1 notice to <u>pro se</u> litigant who opposes a Rule 12 motion supported by materials outside the pleadings, the plaintiff filed his summary judgment motion in anticipation of a possible conversion of the defendants' Rule 12 motion to dismiss into a Rule 56 motion for summary judgment.  The plaintiff's motion "granting plaintiff's complaint" is interpreted by the Court as a motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For the purposes of the plaintiff's motion, the Court will consider all material submitted by the parties, including the material that was excluded on consideration of the defendants' Rule 12(b) motion.

The defendants contend in their reply that the plaintiff's motion should be denied because it lacks a Local Civil Rule 56.1 statement "and is otherwise procedurally improper." Alternatively, they contend, the motion "must be denied on substantive grounds for all the same reasons that defendants' motion to dismiss should be granted."

As a plaintiff appearing <u>pro se</u>, Tolliver was subject to the defendants' Local Civil Rule 12.1 notice, not the Local Civil Rule 56.2 notice.  Unlike Local Civil Rule 56.2 notice to a <u>pro se</u> litigant who opposes a summary judgment motion, which instructs that a non-movant's claims may be dismissed if the non-movant does not respond to the motion "as required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Rule 56.1," Local Civil Rule 12.1 notice to

a pro se litigant who opposes a Rule 12 motion supported by matters outside the pleadings instructs that a non-movant's claims may be dismissed if the non-movant does not respond to the motion "by filing sworn affidavits as required by Rule 56(c) and/or other documents."  Local Civil Rule 12.1 notice does not mention the Local Civil Rule 56.1 statement.  Since the plaintiff's motion for summary judgment was made in response to the defendants' Rule 12 motion supported by matters outside the pleadings, which did not contain either a Local Civil Rule 56.2 notice or a Local Civil Rule 56.1 statement, no need existed for the plaintiff to oppose the defendants' motion with a Local Civil Rule 56.1 statement.  Thus, the plaintiff's motion cannot be denied on the ground that it lacks a Local Civil Rule 56.1 statement.  Although the defendants also contend that the plaintiff's motion is "otherwise procedurally improper," they fail to identify any procedural impropriety.  Therefore, the plaintiff's motion cannot be denied based on procedural grounds.

However, the plaintiff's motion must be denied, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, because facts essential to justify the defendants' opposition do not appear to be available to them.  For example, the plaintiff states in his affirmation that his September 11, 2011 disciplinary hearing was not recorded and the three tapes given to him by prison officials were blank.  In support of their motion, the defendants submitted Exhibit D, which the defendants' counsel contends is a"[t]ranscript of September 20, 22, 27, 28 and October 5, 2011 Disciplinary Hearing,"  The defendants' counsel does not contend that he has personal knowledge related to Exhibit D, making that exhibit, without more, inadmissible evidence.  However, the Court cannot disregard Exhibit D, which may become admissible evidence once discovery is undertaken and completed.  Whether the plaintiff's hearing was recorded or the tapes erased is a material fact at the heart of the plaintiff's procedural due

42

process violation claim.  Another example of such a material fact is whether the hearing officer falsified any date in the hearing disposition, as the plaintiff states in his affirmation, and the defendants should have an opportunity, through discovery, to present facts essential to justify their opposition to this allegation.  The plaintiff also stated in his affirmation that the hearing officer made certain statements to him "off the record," which is a material fact tending to show the hearing officer's bias.  However, absent discovery, the defendants cannot present facts that would justify their opposition to the plaintiff's assertion.  Although the defendants failed to show "by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition," Fed. R. Civ. P. 56(d), based on the record at this juncture in the proceedings, it is apparent to the Court that, absent any discovery, the defendants cannot present facts essential to justify their opposition to the plaintiff's motion.  Therefore, denying the plaintiff's motion for summary judgment, in this circumstance, is warranted.  See Fed. R. Civ. P. 56(d)(1).

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the defendants' motion to dismiss, Docket Entry No. 21, be granted, in part, and denied, in part; and (2) the plaintiff's motion for summary judgment, Docket Entry No. 26, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Batts.  ***Failure***

***to file objections within fourteen (14) days will result in a waiver of objections and will***

***preclude appellate review.***  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v.

Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                           Respectfully submitted,
        February 11, 2013


Copy mailed to:                                     KEVIN NATHANIEL FOX
                                                    UNITED STATES MAGISTRATE JUDGE
Eric Tolliver

44