UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERIC TOLLIVER,                                          :

                Plaintiff,               :

          -against-                      :     **MEMORANDUM AND ORDER**

D.S.P. L. MALIN, SUPERINTENDENT       :     12 Civ. 971 (DAB) (KNF)
PATRICK GRIFFIN,  COMMISSIONER
D. VENNETTOZZI,[1]                         :

            Defendants.              :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      The plaintiff, proceeding <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights arising out of his fiancée's September 11, 2011

visit to him at New York's Sullivan Correctional Facility and the September 2011 related

disciplinary hearing.  On March 18, 2013, the assigned district judge adopted the Court's Report

and Recommendation and dismissed the following claims: (1) "Plaintiff's official capacity

claims for damages"; (2) "claims based on the issuance of an allegedly false misbehavior

report"; (3) "retaliation claims against Defendant C.O. J. Skinner and D.S.A. Lynn Lilley"; and

(4) "all claims against Commissioner Brian Fischer and Director of S.H.U. Albert Prack."  The

remaining claims in this action allege: (a) procedural due process violations, in connection with

the plaintiff's 2011 hearing concerning the September 11, 2011 incident; (b) retaliation, against

D.S.P.L. Malin; and (c) due process violations, based on contact-visit restrictions.  Before the

---

[1] Although the plaintiff names defendant "D. Vennettozzi"in the caption of his complaint,
the defendant spells his name "D. Venettozzi."  The Court will use the defendant's version of the
spelling.

1

Court is the plaintiff's motion for leave to amend the complaint and an extension of time to complete service, "pursuant to Rules 15(a) and 6(b)(1)(A) of the Federal Rules of Civil Procedure." The defendants oppose the motion.

***Plaintiff's Contentions***

The plaintiff's proposed claims are against the following new defendants: (1) "Lt. T. Levac," a "hearing officer" at New York's Five Points Correctional Facility; (2) "D.S.S. R. Coveny," a "review" officer at New York's Five Points Correctional Facility; and (3) Albert Prack, "Director, Special Housing/Inmate Disciplinary Program," New York State Department of Corrections and Community Supervision, in Albany. The plaintiff contends that "[t]he three (3) defendants plaintiff wants to make part of the complaint, violated plaintiff's Due Process and Constitutional Rights," and the violations alleged were "done under the continuing violation doctrine." The plaintiff asserts the following in his proposed amended complaint:

> On 5/16/2013, I was called before L.t. T. Levac, for a Re-hearing. It was during this Re-hearing that this said officer violates plaintiff's due process and constitutional rights. See, plaintiff's complaint-grievance and appeal against this said officer attached hereto as Exhibit-A. D.S.S. R. Coveny, was order[ed] to conduct a discretionary review of the said Re-hearing of Lt. Levac, and all the violations that was done, D.S.S. R. Coveny chose to turn a blind eye to all violation[s] plaintiff alleged and denied plaintiff's discretionary request. See, plaintiff's discretionary review request and D.S.S. R. Coveny decision attached hereto as Exhibit-B. On 7/17/13, plaintiff appeal[ed] the violations that was [sic] done to him at the Re-hearing to Director Albert Prack, in Albany, and this Director chose to turn a blind eye and denies plaintiff's appeal. See, plaintiff's appeal and Director Albert Prack decision attached hereto as Exhibit-C. All exhibits attached herein as plaintiff's complaint against all defendants.

The plaintiff seeks damages and that the charges against him be dismissed and removed from his institutional records.

Exhibit A to the Proposed Amended Complaint

Exhibit A to the proposed amended complaint contains several documents reflecting the

following: On May 15, 2013, Michael Sheahan, Superintendent, Five Points Correctional

Facility, New York State Department of Corrections and Community Supervision, assigned L.T.

Tad Levac to conduct a Tier III hearing for the misbehavior report for Eric Tolliver, "Date &

Time 09/11/11 2:00 p.m." On May 24, 2013, the plaintiff sent a letter to the "Inspector

General's Office," informing it about "an incident between myself and LT. Levac," described in

the grievance the plaintiff filed on the same date as follows:

> At the above date and approximately 2:45 P.M. I was called to the hearing room on
> the flats in 11-block to continue a re-hearing for a tier-3 hearing that was reverse[d]
> by the supreme court because of errors at the first hearing. As I got to the hearing
> and stand before LT. Levac, who was appointed by the superintendent to hold my re-
> hearing, we start to talk about the witness that I do need to call[] to testify on my
> behalf, this LT. got very upset and start to swear and threatened me and stated that
> he is trying to find a way to not only find me guilty, but also how is it that he could
> give me at least a year in the SHU. I then ask this LT. Levac, what is the reason for
> him to be this upset at me? And his answer was "You and I know very well that I
> don't like you, and you know this from the time that you was [sic] voted the ILC
> chairman, and I was the supervisor for the ILC, I did already talk to you about
> bringing my name to the superintendent at the ILC executive meetings, and you not
> only did it once but twice, so now that I have you in front of me for a new hearing
> what do you really think is going to be the out come [sic]?" This LT. Levac, then
> ordered me out of the room, and I complied and went back to my cell and tell my cell
> mate what just took place between myself and the LT. Therefore, because of this
> fact, it is impossible for me to get a f[ai]r hearing. Therefore, I am also requesting
> the video recorder of the hearing room between 2:30 P.M. and 3 P.M. on the above
> date be saved for my review. I also want to state that this officer have [sic] been
> threatening me since I was the ILC chairman and he was the staff advisor. ACTION
> REQUESTING: That this hearing officer Mr[.] Levac, recuse himself as my hearing
> officer and a new hearing officer be appointed.

The plaintiff's grievance was denied. On June 25, 2013, the plaintiff's appeal of grievance

number "FPT 27560-13," entitled "WANTS H.O. TO RECUSE SELF," was denied with the

following explanation:

> The investigation reveals that grievant alleges the Hearing Officer harassed and
> threatened him during a re-hearing for an incident at Sullivan CF. The Hearing
> Officer supplied a written statement and stated that he denies threatening or swearing
> at the grievant. The Hearing Officer states that this was a re-hearing and the time

3

that was previously issued to the grievant cannot be exceeded and that the hearing
had already been extended several times to retrieve the 14 witnesses that the grievant
requested.

On June 26, 2013, the plaintiff made the following Appeal Statement in connection with the June

25, 2013 denial of his grievance: "I disagree with this decision due to the fact that I have yet to

receive a written disposition of this (so-called superintendent's hearing) in violation of 7

NYCRR 254.7(A) Sec. 5 (24 hours violation)."  The plaintiff's "grievance FPT-27560-13

entitled Wants Hearing Officer to Recuse Self was rec'd by CORC on 7/8/13."

On July 26, 2013, the plaintiff filed the following grievance:

On 7-16-2013, I receive[d] my inmate monthly statement and notice that five dollars
($5) was taken from my inmates account for a Tier-3 hearing, that [was] held out of
my presen[c]e, it states that I was found guilty, I then did a F.O.I.L. request to have
the tapes and documents of this hearing sent to me for my review, due to the fact that
the hearing officer LT. Levac, did not send me any decision of this hearing or any
notice of my rights to appeal, neither did he or any other officer advise me of the
rights I am giving up if I refused to attend the hearing in person.  However, on 7-26-
2013, a[n] officer from the F.O.I.L. office brings me a tape player and [a] tape of this
Tier-3 hearing.  I then listen to this tape over 3-times and notice that this hearing
officer intentionally doct[o]red-cut out a part of the hearing that record[ed] him
swearing and threatening me, he also cut out the part where I caught the officer who
wrote the false ticket against me, in his lies, these and many more misdeeds was
done by this officer at this hearing.  Action Requested: That this hearing against me
be dismissed, and these facts I stated be investigated, and this officer be disciplined
for his intentional wrong doings against me.

On August 1, 2013, "P.O. Neil, IGPS" of Five Points Correctional Facility, sent a letter to the

plaintiff, stating that the time limit for filing his July 26, 2013 grievance had expired, and "an

exception to the time limit for filing this grievance cannot be granted by me at this time because

it has well surpassed the maximum 45-day limit in which such an exception might be granted."

On August 4, 2013, the plaintiff appealed the August 1, 2013 letter, contending that he

did not know that my tier three hearing tape was intentionally tempered with, and all
of my objections w[ere] earse[d] until I made my f.o.i.l. request and have the chance
to listen to the tape, then I notice that the tape was tampered with, and that[']s the

4

day I file my grievance on this issue, therefore, my grievance is on time because I file[d] my grievance on the date that I discover[ed] the violation.

On August 13, 2013, a "Response of IGRC" stated that the finding of untimeliness was correct, since "Directive 4040 leaves no wiggle room in allowing an exception to the time frame for filing a grievance beyond 45 days from the date of the occurrence," which, in this case, "was the hearing date, not the date of discovery." The plaintiff appealed the August 13, 2013 determination, but his appeal was denied on August 20, 2013, based on the finding that "time frame was exceeded and, as such, rejection of the grievance as untimely was appropriate. It is noted that grievant had not exhausted his disciplinary appeal options on 08/01/13."

Exhibit B to the Proposed Amended Complaint

Exhibit B to the proposed amended complaint contains the plaintiff's July 16, 2013 request for a discretionary review by the superintendent. In that document, the plaintiff claimed violations of his due process rights, including his right to: (i) be advised of the rights he is giving up in refusing to attend his disciplinary hearing; (ii) receive a copy of the disposition and evidence relied upon at the hearing; and (iii) be notified of his right to appeal. On August 11, 2013, the plaintiff inquired about the status of his request for discretionary review. A letter to the plaintiff from R. Coveny, Deputy Superintendent for Security, Five Points Correctional Facility, New York State Department of Corrections and Community Supervision, dated August 13, 2013, stated: "I am in receipt of your letter to Superintendent Sheahan regarding a Discretionary Review. After review, you do not currently have any disciplinary sanctions in effect." On August 20, 2013, the plaintiff sent another request for discretionary review to "Dep. Coveny," explaining the background of his grievance and stating: "I think that you may have misunderstood what is it I was inquiring about, therefore, now that I have inform[ed] you about

5

the facts of the matter, please I am asking, what is the status of my discretionary review request that was sent to and acknowledge[d] by the superintendent?"  A letter to the plaintiff from R. Coveny, dated August 28, 2013, states: "I am in receipt of your letter to my office.  After closer review, I discovered this was a re-hearing for a prior incident.  The disposition has already been served.  I will not adjust any sanctions imposed."

<u>Exhibit C to the Proposed Amended Complaint</u>

Exhibit C to the proposed amended complaint contains a letter sent to the plaintiff by Albert Prack, Director, Special Housing/Inmate Disciplinary Programs, dated August 16, 2013, stating: (a) his office received the plaintiff's appeal on July 22, 2013; (b) the office "has 60 days from the date it was received to render a decision"; and (c) "[a] review of his appeal will be conducted in accordance with established procedures and you will be notified directly of the results."  A letter by Albert Prack, stamped "Received Sep 24 2013 Tier Office" and entitled "Review of Superintendent's Hearing," stated: "On behalf of the Commissioner and in response to your recent letter of appeal, please be advised that your superintendent's hearing of June 11, 2013, has been reviewed and affirmed on September 23, 2013."

***Defendants' Contentions***

The defendants contend that "all of the alleged events concerning plaintiff's proposed new claims took place in 2013," and, "[b]ecause plaintiff's claims arising from the 2013 re-hearing were, by definition, not exhausted when the 'action' 'yet to be initiated' was 'brought' in 2012, the plain language of PLRA [the Prison Litigation Reform Act] § 1997(e)(a) requires the proposed amended complaint be rejected."  Moreover, "[a]mending a complaint to add new claims that had not been exhausted prior to the filing of the original complaint does not circumvent this requirement."  According to the defendants, the plaintiff is not without remedy

because he "can pursue his proposed new claims as a separate action."

The defendants contend that the plaintiff's new allegations are "a supplement adding new claims against new defendants," not an amendment of his original complaint, and his motion "should be assessed under the standards set forth in Fed. R. Civ. P. 15(d)." They maintain that the proposed supplemental claims "do not satisfy the 'threshold consideration' of being connected to his original complaint," since they involve new factual allegations against new defendants. According to the defendants, the plaintiff "alleges that the Western and Northern District defendants violated his due process and unspecified 'constitutional' rights at the May 13, 2013 re-hearing and subsequent administrative reviews." Allowing the supplemental claims to go forward would burden and prejudice the current and the proposed new defendants "because of venue considerations," and "a jury may confuse their alleged actions with those of the original defendants in this case." Additionally, increased discovery obligations would be imposed on the current defendants and delay the action, which was already set for summary judgment briefing.

The defendants contend that the plaintiff's amendment would be futile based on the improper venue, since no basis exists to allow the proposed claims to proceed in this district. The focus of the proposed allegations is Five Points Correctional Facility, located in the Western District of New York, and allowing the proposed claims would impose undue hardship on the new defendants "by forcing them to litigate an action far outside of their proper venue." According to the defendants, "the plaintiff must show that venue is proper for each claim asserted," and "venue in this action as to these claims and defendants in the Southern District of New York under 28 U.S.C. § 1391(b) is improper because none of the proposed defendants reside here and a substantial part of the operative facts concerning the new claims raised in the proposed pleading did not occur here." Thus, "even if these claims had been initially pleaded,

they would be required to be dismissed or transferred" to the proper venue on a motion by the defendants.

Furthermore, if the instant motion is treated as a motion for leave to amend the complaint, "the proposed new claims are not properly 'related' to the existing claims in this case as to allow supplementation or addition via amendment," and they lack merit.  The defendants maintain that the "plaintiff's proposed pleading fails to satisfy the pleading requirements of Fed. R. Civ. P. 8 as its purported factual allegations regarding alleged constitutional violations are made in the most conclusory and non-specific fashion and are defective as a matter of law."  The allegations are also "devoid of any substance regarding defendants Coveny and Prack," because "reviewing the appeal of a disciplinary hearing or grievance is insufficient to find personal involvement," and no proposed allegations support the inference that either defendant should have known that the results of the underlying re-hearing were unconstitutional.

### Plaintiff's Reply

The plaintiff contends that the defendants' argument, that he failed to exhaust his proposed claims, is meritless because he exhausted them properly before filing his motion for leave to amend the complaint.  Moreover, the constitutional violations alleged in the proposed claims are related to the 2013 re-hearing and are continuous and systematic, and he "could not have grieved this issue until the [r]e-hearing have concluded," which is what he did.

The plaintiff contends that he seeks to amend his complaint "under Rule 15(a)" to add three defendants, which is a proper vehicle for doing so in light of his allegations that the violations by the three new defendants represent a "continuation of the original violations that were done to the plaintiff at Sullivan Corr. Fac. that is under and within jurisdiction of the Southern District."  Even under Rule 15(d)'s standard, the plaintiff contends, his proposed

8

allegations are sufficient to have his motion granted, because all "facts surrounding three new defendants are connected to the original pleading," and fall within the continuing violation doctrine.  The plaintiff asserts personal jurisdiction over the new defendants as well as supplemental jurisdiction over his proposed claims exists because they form part of the same case or controversy as the original claims.  The plaintiff contends that the defendants' assertion that "the procedure for disciplinary prison inmates for serious misconduct is a matter of policy raising no constitutional issue" and their implication that "prisoners in state prisons are wholly without the protections of the Constitution and Due Process clause [are] plainly untenable."  He maintains that he alleged sufficiently violations of his due process rights, which include the right to: (1) notice of the hearing; (2) be present at the hearing; (3) confront the evidence against you; (4) "be notified of the decision, and record the hearing"; (5) "be issued a written report of the evidence relied upon by the hearing officer and his reason for his decision"; and (6) "be given notice to appeal the decision."

Attached to the plaintiff's reply are documents in support of his retaliation claim against "LT. Levac," who "threaten[e]d and sw[ore] at [the plaintiff] at the start of the re-hearing out of retaliation [for] the plaintiff bringing up this officer[']s name to the executive team during the ILC meeting, because at the time this officer was the staff-advisor for the ILC committee of which plaintiff was the ILC chairman-president."  According to the plaintiff, the documents attached to his reply include his grievance in connection with the denial of his "First Amendment rights to run as a ILC 11-block Rep.," which formed the basis for LT. Levac's actions.

***Legal Standard***

Once the time for amending pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). However, "mere delay is not, of itself, sufficient to justify denial of a Rule 15(a) motion." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (quotation marks and citation omitted).

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading or futility, the motion should be freely granted." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) (citing Foman, 371 U.S. at 182, 83 S. Ct. at 230). "An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party." Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989). Whether the instant motion is considered a motion for leave to amend the complaint under Rule 15(a) or a motion for leave to supplement the complaint under Rule 15(d), "the same standards apply to motions under both these subdivisions of Rule 15." Novak v. Nat'l Broad. Co., 724 F. Supp. 141, 145 (S.D.N.Y. 1989).

*Application of Legal Standard*

The plaintiff's proposed new claims concern the 2013 re-hearing of the plaintiff's grievance in connection with the September 11, 2011 incident that formed the basis of the plaintiff's original claims asserted in his 2012 complaint. Since the proposed new claims are based on the allegations related to the occurrences and omissions in connection with the 2013 re-hearing, the plaintiff's motion for leave to assert them in this action is treated more properly as a motion for leave to supplement the complaint under Rule 15(d), rather than as a motion for leave to amend the complaint under Rule 15(a). In either case, the standard for determining the plaintiff's motion is the same. See Novak v. Nat'l Broad. Co., 724 F. Supp. at 145. The defendants do not make any arguments based on undue delay, bad faith or dilatory tactics. They argue the motion should be denied on the following grounds: (1) futility, for (i) failure to exhaust properly under PLRA, (ii) improper venue, and (iii) lack of merit; and (2) prejudice.

Futility: Failure to Exhaust Properly Under PLRA

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[P]roper exhaustion of administrative remedies is necessary," and "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Woodford v. Ngo, 548 U.S. 81, 84, 88-89, 126 S. Ct. 2378, 2382, 2385 (2006). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007).

11

The defendants do not contend that the proposed new claims: (a) are not exhausted; or (b) cannot be brought in a separate action.  They argue that the proposed new claims are not exhausted properly, because they "had not been exhausted prior to the filing of the original complaint."  In effect, the defendants argue that permitting the plaintiff to supplement his complaint by adding the proposed new claims is futile, since, as a matter of law, any claims that arose after the filing of the complaint are barred because they had not been exhausted prior to the filing of the complaint.  If the defendants are correct, it means that PLRA's exhaustion requirement makes Rule 15(d) inapplicable, namely, prisoners are barred by PLRA from supplementing their pleadings to allege any transaction, occurrence, or event that happens after the date of the pleading to be supplemented, because their exhaustion of such post-pleading claims will always be untimely with respect to "the filing of the original complaint."  Under the defendants' theory, Rule 15(d) does not apply to any prisoner's exhausted claims that arise out of post-pleading occurrences or omissions, and such claims must be brought in a separate action.

The defendants do not make citation to any binding authority, in support of this extraordinary claim; unsurprisingly, since no such authority appears to exist at this time. Instead, the defendants rely on Neal v. Goord, 267 F.3d 116, 212 (2d Cir. 2001), contending that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal."  Neal was decided based on the standard articulated in Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000),  and Lawrence v. Goord, 238 F.3d 182 (2d Cir. 2001), that was overruled by Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002).  Nussle and Lawrence combined held that "the exhaustion requirement did not apply" to "the retaliatory conduct and excessive force claims" involving "a practice . . . aimed at one specific inmate rather than the prison population as a whole."  Neal, 267 F.3d at 120 (citing Lawrence, 238 F.3d at 186, for an example of

retaliation and Nussle, 224 F.3d at 106, for an example of excessive force).  The Second Circuit concluded that, "[a]pplying the principles of *Lawrence* and *Nussle*, plaintiff's amended complaint does not suggest he was singled out for the denial of medical services"; thus, having filed his original claims without exhausting them, Neal's original claims were dismissed without prejudice to "simply" re-filing his pleadings "after fully complying with the exhaustion requirement." Neal, 267 F.3d at 123.  The Second Circuit stated: "We have recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." Id. (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).  Notwithstanding Neal's overruling by Porter, Neal is inapposite, because it did not involve any claims that arose out of post-pleading occurrences or omissions, such as is the case here.  Neal involved claims asserted in the original pleading that were not exhausted prior to filing the original pleading, see Neal, 267 F.3d at 120 ("Neal concedes that administrative remedies are available to him," and that he was "pursuing several grievances during the pendency of his lawsuit."), which is not the case here.

Absent any binding authority to the contrary, the Court finds that PLRA does not bar a prisoner's motion for leave to supplement his pleading, pursuant to Rule 15(d), to set out any transaction, occurrence, or event that happens after the date of the pleading to be supplemented, as long as the prisoner has exhausted his administrative remedies related to that transaction, occurrence, or event, properly, prior to making such a motion.  Thus, since the plaintiff exhausted properly his administrative remedies related to the proposed new claims based on a post-pleading event, namely, the 2013 re-hearing in connection with the September 11, 2011 incident forming the basis of his original pleading, prior to making the instant motion, his proposed new claims are not futile for failure to exhaust properly under PLRA.

13

Futility: Improper Venue

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Improper venue is an affirmative defense that a party may assert in the answer or by a motion. See Fed. R. Civ. P. 12(b)(3). Personal jurisdiction and venue "are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties." Leroy v. Great W. United Corp., 443 U.S. 173, 180, 99 S. Ct. 2710, 2715 (1979). "Defendants who have appeared generally in the action cannot even object that they were themselves inhabitants of another district, and, of course, cannot object that others of the defendants were such." Interior Constr. & Imp. Co. v. Gibney, 160 U.S. 217, 220, 16 S. Ct. 272, 273 (1895).

The defendants have not asserted an affirmative defense of improper venue in either their motion to dismiss or answer; thus, they waived it. See Fed. R. Civ. P. 12(h)(1). The defendants named in the proposed new claims are not residents of this district but they are residents of New York. The instant action is brought properly in this district, even if the proposed new claims against nonresident defendants have been pleaded initially, because all the defendants, regardless of whether they reside in this district, are residents of New York. See 28 U.S.C. § 1391(b)(1). The defendants do not make citation to any binding authority for their contention that, even if the proposed claims were pleaded initially, "they would be required to be dismissed or transferred." As long as "any defendant resides" in this judicial district, as is the

14

case here, and all defendants are residents of New York, as they are here, venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1).  The statutory provisions of 28 U.S.C. § 1391 are written in the disjunctive; thus, where venue in a judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1), the statute does not require that 28 U.S.C. § 1391(b)(2) be satisfied additionally, namely that "a substantial part of the operative facts concerning the new claims raised in the proposed pleading . . .  occur here," as the defendants seem to suggest.

The defendants cite U.S. E.P.A. ex rel. McKeown v. Port Authority of N.Y. & N.J., 162 F. Supp. 2d 173 (S.D.N.Y. 2001), for the proposition that "[i]n a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted." Port Authority of N.Y. & N.J. involved venue provisions under the Clean Air Act, 42 U.S.C. § 7604(c)(1), and the Clean Water Act, 33 U.S.C. § 1365(c)(1), not under 28 U.S.C. § 1391.  See Port Authority of N.Y. & N.J., 162 F. Supp.2d at 186.  Moreover, the Port Authority of N.Y. & N.J. court did not make citation to any binding authority for the proposition that  "[i]n a case involving multiple claims, the plaintiff must show that venue is proper for each claim asserted"; rather, it cited "17 James Wm. Moore et al., Moore's Federal Practice § 110.05 (3d ed. 1997)," id. at 183, which states:

> Generally, when multiple causes of action are joined, venue must be established for each separate cause of action.  This rule would appear to create a problem for much modern multi-claim and multi-party litigation.  There is no real problem, however, because since early in the twentieth century, the courts have interpreted the meaning of a cause of action broadly.  The Federal Rules of Civil Procedure provide for the pleading of claims.  Since Hurn v. Oursler[, 289 U.S. 238, 53 S. Ct. 586 (1933)] was decided in 1933, factually interrelated claims have been considered to be one cause of action with two grounds of relief.

17 James Wm. Moore, et al., Moore's Federal Practice § 110.05 (2014).

It is not clear why the treatise makes citation to Hurn at all in its discussion of venue because

15

Hurn involved a federal court's subject matter jurisdiction, not venue.  See Hurn, 289 U.S. at 240, 53 S. Ct. at 587.

> The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer.  But the locality of a law suit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition.  This basic difference between the court's power and the litigant's convenience is historic in the federal courts. . . . [The venue statute] merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election."

> Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68, 60 S. Ct. 153, 154-55 (1939).

Courts "are required to construe the venue statute strictly."  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005) (citing Olberding v. Ill. Cent. R.R., 346 U.S. 338, 340, 74 S. Ct. 83, 85 (1953)).  Since venue is proper in this district under 28 U.S.C. § 1391(b)(1), even if the nonresident defendants were to exercise their privilege by making a motion under Rule 12(b)(3) with respect to the proposed claims against them, it cannot be concluded, based on the record of this motion, that the proposed new claims are futile based on improper venue.  Accordingly, denying the plaintiff's motion, based on improper venue, is not warranted.

Futility: Lack of Merit

The defendants contend that the plaintiff's "purported allegations regarding alleged constitutional violations are made in the most conclusory and non-specific fashion and are defective as a matter of law," in contravention of "the pleading requirements of Fed. R. Civ. P. 8," and "reviewing the appeal of a disciplinary hearing or grievance is not sufficient to find personal involvement" of "Coveny" and "Prack."

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of

16

the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

"Each allegation must be simple, concise, and direct.  No technical form is required."  Fed. R. Civ. P. 8(d)(1).  "Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  "[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

The plaintiff's proposed new claims are not "made in the most conclusory and non-specific fashion and are [not] defective as a matter of law," as the defendants suggest.  The plaintiff identified specific violations of his "due process and constitutional rights" in connection with the 2013 re-hearing before "L.t. T. Levac," and the subsequent related appeals.  The plaintiff's Exhibit A contains, inter alia, his factually detailed grievance in connection with the 2013 re-hearing, in which the plaintiff alleged that the hearing officer became upset after the plaintiff started talking about the witnesses he intended to call, threatened him and ordered him out of the room.  The plaintiff alleged that he found out subsequently that the 2013 re-hearing was conducted in his absence, without his receiving any notice informing him about the rights he would give up if he refused to attend the re-hearing.  The plaintiff asserted that he never received any decision resulting from the 2013 re-hearing, or any information about the evidence upon which the hearing officer relied in rendering that decision, or a notice of his right to appeal.  Moreover, he alleged that the tape he obtained from the re-hearing was doctored because it did not contain the hearing officer's swearing and threatening utterances, as well as other statements that incriminated the hearing officer.  The plaintiff made plausible factual allegations asserting

17

violations of his due process rights, and the defendants' argument that the proposed new claims contravene Rule 8 and are conclusory is meritless.

"Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citation omitted).  R. Coveny, "Deputy Superintendent for Security," not only received the plaintiff's grievance, he also reviewed it and acted on it, personally.  Similarly, "Albert Prack, Director, Special Housing/Inmate Disciplinary Programs," also received the plaintiff's grievance, reviewed it and acted on it, personally.  Thus, for the purpose of this motion, it cannot be said that the plaintiff's proposed new claims are futile because they do not assert sufficiently personal involvement of "Coveny and Prack." Accordingly, the defendants' argument based on futility, for lack of merit, is rejected.

Prejudice

The defendants contend that allowing the plaintiff to supplement his pleading would: (a) be prejudicial because "a jury may confuse [the new defendants'] actions with those of the original defendants in this case"; and (b) increase the "current" defendants' "discovery obligations and delay" the action.  The defendants failed to explain why or how a jury may confuse the actions of the new defendants with those of the original defendants.  Moreover, "juries are presumed to follow their instructions," Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987), and "are not presumed to be stupid or unable to follow the court's rulings on the law." United States v. Palmieri, 456 F.2d 9, 13 (2d Cir. 1972).  Thus, a mere conclusory assertion that a jury may confuse the actions of the new defendants with those of the original defendants is not sufficient to convince the Court that the defendants would be prejudiced by allowing the plaintiff to add the proposed new claims to this action.  Similarly, the

18

defendants failed to explain or specify how the "Plaintiff's supplement would burden and prejudice the current defendants because of the increased discovery obligations," or what they perceive "the increased discovery obligations" might be.  Given that the supplemental claims involve new defendants and new, post-pleading occurrences, it appears to the Court that the potential "increased discovery obligations" of the original defendants, if any, would be minimal. Allowing supplemental claims will delay the action; however, the Court does not anticipate that the delay will be significant and cause prejudice to the defendants.  Therefore, the Court finds that the defendants did not show that prejudice would attend them if the plaintiff's motion is granted.

***Conclusion***

For the foregoing reasons, the plaintiff's motion to supplement the complaint, pursuant to Rule 15(d), Docket Entry No. 57, is granted.  The plaintiff's supplemental pleading, Docket Entry No. 57, is deemed filed and served on the New York Attorney General, as of the date of this order.  It is ORDERED that:

(A)     the Clerk of Court close Docket Entry No. 62 (the plaintiff's reply);

(B)     on or before April 10, 2014, the Clerk of Court send the plaintiff a U.S. Marshals Service Process Receipt and Return form (USM-285 form) for each new defendant;

(C)     on or before April 21, 2014, the plaintiff complete and return a USM-285 form for each new defendant;

(D)     on or before April 28, 2014, the Clerk of Court issue a summons and provide USM-285 forms, the summons and copies of the complaint (Docket Entry No. 2)

and supplemental pleading (Docket Entry No. 57) to the U.S. Marshals Service

for service on each new defendant; and

(E)     the plaintiff ensure the service of the summons and the complaint with

supplemental pleading is complete on each new defendant within 120 days after

the summons is issued.

Dated: New York, New York
       April 4, 2014                          SO ORDERED:

                                              _Kevin Nathaniel Fox_____

Copy mailed to:                               KEVIN NATHANIEL FOX
                                              UNITED STATES MAGISTRATE JUDGE

Eric Tolliver

20