UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ERIC TOLLIVER,                                              :

                                    Plaintiff,             :

                          -against-                       : **REPORT AND RECOMMENDATION**

D.S.A. LYNN LILLEY, SUPERINTENDENT        :            12-CV-971 (DAB) (KNF)
PATRICK GRIFFIN, LT. T. LEVAC,
D.S.S. R. COVENY, DIRECTOR ALBERT         :
PRACK,
                                                          :
                                    Defendants.
------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## BACKGROUND

***Procedural History***

      On February 3, 2012, Eric Tolliver ("Tolliver"), proceeding pro se, commenced this

action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights arising out of

his fiancée's September 11, 2011 visit with him at New York's Sullivan Correctional Facility

and the September 2011 related disciplinary hearing.  On March 18, 2013, your Honor dismissed

the following claims: (1) "Plaintiff's official capacity claims for damages"; (2) "claims based on

the issuance of an allegedly false misbehavior report"; (3) "retaliation claims against Defendant

C.O. J. Skinner and D.S.A. Lynn Lilley"; and (4) "all claims against Commissioner Brian

Fischer and Director of S.H.U. Albert Prack" ("Prack")  The claims that remained from the

original complaint are: (a) procedural due process violations in connection with the plaintiff's

2011 disciplinary hearing concerning the September 11, 2011 visit; (b) retaliation against

D.S.P.L. Malin; and (c) due process violations based on contact-visit restrictions.

On April 4, 2014, the Court granted Tolliver's application for leave to supplement the complaint to add claims against: (1) Lt. T. Levac, a hearing officer at New York's Five Points Correctional Facility; (2) D.S.S. R. Coveny, a review officer at New York's Five Points Correctional Facility; and (3) Prack, director, Special Housing/Inmate Disciplinary Program, New York State Department of Corrections and Community Supervision. Tolliver's proposed new constitutional rights violations claims concern the 2013 hearing of his grievance in connection with the September 11, 2011 visit by his fiancée that formed the basis of the original claims asserted in the 2012 complaint. The defendants objected to the April 4, 2014 determination, contending that: (i) having lost his New York Civil Practice Law and Rules ("CPLR") Article 78 ("Article 78") proceeding, the plaintiff is collaterally estopped from re-litigating his supplemental claims in this Section 1983 case; (ii) the plaintiff failed to exhaust properly his proposed new claims; (iii) the plaintiff's supplemental claims do not connect sufficiently to his initial claims; and (iv) no basis exists to allow the supplemental non-Southern District of New York claims to proceed in this judicial district. Your Honor rejected the defendants' objection premised on the Article 78 proceeding, because it was based on "new developments not presented in the record at the time the Magistrate considered plaintiff's motion to supplement his complaint." Your Honor determined that the Court's April 4, 2014 findings were not clearly erroneous or contrary to law, approving, adopting and ratifying them.

By a letter, dated July 7, 2014, Prack's counsel "requested that the Court confirm that [the] supplemental defendants have until July 19, 2004 to respond to the supplemental complaint, as that is 60 days after I forwarded the acknowledgment form." The Court denied that request, finding that Prack's counsel "failed to provide good cause for an extension of time

for Prack to answer the complaint."

On July 21, 2004, Prack made a motion "pursuant to Rule 12(b)(6) and (1) of the Federal Rules of Civil Procedure," for an order dismissing the "Plaintiff's Supplemental Complaint or, in the alternative, an order pursuant to 28 U.S.C. § 1404(a) transferring venue from the Southern District to the Northern or Western District of New York." The plaintiff opposes the motion.

### Prack's Contentions

Prack asserts that personal jurisdiction over him has not been obtained because he was not served properly with the "Supplemental Complaint" or "Complaint," when "the U.S. Marshal[s] Service purportedly served him personally on June 16, 2014, or when the Service attempted service by mail in April/May 2014." According to Prack, "[a]ttempted service of just the Summons, Judge Preska's IFP Order and the Court's April 4, 2014 Order, as occurred, was insufficient under the Federal Rules of Civil Procedure and the Court's April 4, 2014 Order." In support of the motion, Prack submitted a declaration by Jessica Norton ("Norton"), who stated: "I am Secretary I with the New York State Department of Corrections and Community Supervision ('DOCCS') and in that capacity I review and document all correspondence (including legal papers) received by Albert Prack." She attached Exhibit A and Exhibit B to her declaration, contending they contain "true and correct copies of all legal documents in this action left with Mr. Prack from the U.S. Marshals Service on June 16, 2014" and "in May 2014," respectively.

Prack contends that, having lost, in state court, the Article 78 proceeding "raising the same issues he raised in his supplemental claims here," the plaintiff is collaterally estopped from re-litigating these issues in a Section 1983 action. According to Prack, the plaintiff failed to exhaust properly his supplemental claims because the plaintiff's "claims arising from the 2013

3

re-hearing were, by definition, not exhausted when" he commenced the action in 2012.  Prack contends that the plaintiff "can attempt to pursue his Supplemental Claims as a separate action, although those claims would (as they are here) presumably be barred, by collateral estoppel."

Prack asserts that the plaintiff's supplemental claims fail to provide sufficient factual allegations to demonstrate Prack's personal involvement because "[t]here are no readily discernable gaps alleged in the hearing tape in question that Plaintiff could argue may have given notice to Supplemental Defendant Prack of problems with the 2013 re-hearing itself."  Prack maintains that his disagreement with the plaintiff's arguments on appeal is not a basis to find personal involvement in a constitutional violation, and "affirming a re-hearing that imposed no actual sanctions on Plaintiff, at most, caused a *de minims*, non-constitutional, injury and is not actionable here."  Moreover, the equitable relief sought here of expunging the plaintiff's disciplinary record does not implicate any due process rights.

Prack asserts that he is entitled to qualified immunity because it is unclear what clearly established right he violated, and "denying a prison disciplinary appeal is hardly a constitutional violation, particularly when that decision is subsequently upheld by an Article 78 court as not being unconstitutional."  Furthermore, it was objectively reasonable for Prack not to believe that he violated any clearly established law, as confirmed by the subsequent Article 78 proceeding.

Prack contends that no basis exists to allow claims that arose outside the Southern District of New York to proceed here because "[t]he primary locus of the Supplemental Claims and Defendants is Five Points, which is located in the Western District of New York or, in the alternative, the Northern District, as those claims relate to" him, as he is located in Albany, New York.  According to Prack, he does not reside in the Southern District of New York and none of the operative facts concerning the plaintiff's claims in the supplemental pleading occurred in the

Southern District of New York and, even if they were pleaded initially, they would have to be dismissed or transferred. Prack contends that the convenience of the parties mandates that the supplemental claims be transferred to the Western or the Northern District of New York because the plaintiff's choice of venue is not controlling, given the facts of this case.

***Tolliver's Contentions***

Tolliver contends that Prack's motion should be denied as untimely, since it was filed after the time to respond expired, and the Court did not extend the time for responding to the supplemental claims. He asserts that Prack's argument that he was not served properly should be rejected because he failed to make that argument, "upon finding out that the service by the U.S. Marshal was incomplete and was not in compliance with" the Court's April 4, 2014 order; rather, he made it for the first time in the instant motion. According to Tolliver, the July 8, 2014 order already determined that Prack did not show good cause to extend the deadline for filing his motion and he should not be allowed to make this argument anew.

Tolliver maintains that Prack's collateral estoppel argument should be rejected "because [an] Article 78 Court does not have the power to award the type of relief available in a § 1983 action." Tolliver contends that he already demonstrated, in his January 20, 2014 opposition to the defendants' motion to dismiss, that he exhausted all his grievances before filing his supplemental claims, and the Court agreed with him.

Tolliver asserts that he alleged sufficiently Prack's personal involvement, when he alleged that Prack received his request for review but turned a blind eye to the constitutional violations of which Tolliver complained, and the supplemental claims are all "apparent and visible on the hearing transcript," which was "tampered with many times over by the hearing officer, and many parts of the transcript [are] cut out and moved around." Tolliver contends that

5

Prack's argument that Tolliver suffered no injury as a result of the "re-hearing" is erroneous because "a RED highlight" covers Tolliver's name "whenever he goes on his visits with any female visitor," and he "must be seated in a[n] area of the visiting room where he could be watched at all times." According to Tolliver, he and his female visitor are watched not only by the officers, but also by "other inmates and their visitors," and "at times these officers would just sit there and stare[] directly at the plaintiff and his visitor, and then just burst out laughing, and this causes plaintiff and his visitor to become very embarrassed, belittled and disrespected." Tolliver asserts that, as a result of this treatment, his fiancée ended her relationship with him, which is "painful to endure, but knowing that I'm not guilty of these charges is very depressing." Tolliver contends that he has "been locked up now for almost twenty-one years, and never in his whole incarceration plaintiff have ever been locked up for such a charge." Tolliver asserts that "this kind of offense on plaintiff[']s record could stop him from participat[ing] in the Family Reunion Program," and further, require him "to take a sex offender's program, and could certainly prevent an inmate from obtaining parole approval at the board."

Tolliver asserts that Prack contradicted himself when he claimed in his memorandum of law that Tolliver "submitted all his appeals, and that none was deemed untimely," because an assistant attorney general, Kristen Quaressimo, stated in her affirmation, submitted in support of this motion, that Tolliver's appeal was untimely. According to Tolliver, Prack's decision not to deny Tolliver's appeal on the ground of untimeliness was a strategic move because he knew it would have brought "a lot of attention to the fact that the plaintiff did not receive: (1) the evidence relied upon sheet; (2) the notice of plaintiff[']s right to appeal the hearing officer's decision, [and] (3) the right the plaintiff was giv[ing] up in not attending the hearing."

6

Tolliver contends that Prack's qualified immunity argument is baseless, because

the New York regulation itself give[s] the officials clear notice that the inmate[s] have several rights including: (1) [w]ritten notice at least twenty-four hour[s] in advance of the hearing; (2) disposition of the hearing within seven days of the confinement; (3) an impartial hearing officer; (4) the right to be present when witnesses testify; (5) the right to be advised of the evidence against [them; and] (6) the right to comment on said evidence prior to the disposition by the hearing officer.

Since these rights were well established at the time when the defendants violated them, he cannot be shielded by qualified immunity. Tolliver contends that Prack's argument that venue is improper is baseless because the action started originally in the Southern District of New York and the Court has discretion to permit his supplemental claims to be brought in the Southern District of New York.

### Prack's Reply

Prack contends that the burden is on the plaintiff to show that "personal service was proper in light of the Supplemental Defendants' submissions, which he cannot do because he has no personal knowledge of which materials the U.S. Marshal[s] Service actually served on the Supplemental Defendants." He asserts that collateral estoppel applies here to bar re-litigation of the issues that were litigated in the Article 78 proceeding, because the Article 78 court rejected the plaintiff's due process and retaliation claims that the hearing officer was biased and conducted part of the hearing improperly, in the plaintiff's absence. Prack asserts that, if he "committed constitutional violations by denying Plaintiff's administrative appeal and declining to conduct a discretionary review, respectively, then so did [the state court] in denying Plaintiff's Article 78 petition, which, of course, cannot be the case." According to Prack, "regardless of whether the incident is reflected in his disciplinary history, Plaintiff is now again housed at Sullivan [Correctional Facility] where the incident took place, and thus it would not be

surprising if staff is aware of the incident independent of whether it appears in his formal disciplinary record." Prack contends that the 2013 hearing does not implicate due process liberty rights because it imposed no segregated housing unit ("SHU") time or any other sanctions. Moreover, since no sanctions were imposed, it cannot be said that Prack's conduct was objectively unreasonable. Prack contends that the "April 4, 2014 Order did not hold that the Supplemental Defendants could not raise an objection to venue here," but that the issue of proper venue over supplemental claims was a matter to be raised by the defendants involved, after they are made parties to the action, rather than the defendants who were not objecting to venue with respect to the claims against them. Prack contends that forcing him to defend against this action in the Southern District of New York is inconvenient and inappropriate, notwithstanding that the plaintiff is incarcerated in that judicial district.

## DISCUSSION

### *Timeliness of the Rule 12 Motion to Dismiss*

> Unless another time is specified by this rule or a federal statue, the time for serving a responsive pleading is as follows: (A) A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint; or (ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

> Fed. R. Civ. P. 12(a)(1)(A)(i),(ii).

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

> Fed. R. Civ. P. 12(b).

"When an act may or must be done within a specified time, the court may, for good cause,

extend the time: (A) with or without motion or notice, if the court acts, or if a request is made,

before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A).

The United States Marshals Service certified that the "Summons and Complaint" were

"personally served" on Prack, on June 16, 2014. (Docket Entry No. 70). Although Prack's

counsel contended in his July 7, 2014 letter that: (a) "[o]n or about May 19, 2014," he

"forwarded to the U.S. Marshals Service an acknowledgment of service form executed by Mr.

Prack (Dated May 12, 2014)," and that the form "was attached" to his letter; and (b) he "will

send the Service another set of copies of [the form] today," no such form was received by the

United States Marshals Service. Prack did not submit his own affidavit in support of his motion.

Norton's declaration, made under penalty of perjury, states that Exhibit B contains "true and

correct copies of all legal documents in this action received by Mr. Prack by mail from the U.S.

Marshals Service in May 2014." However, Norton failed to explain how Exhibit B's "Statement

of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint,"

directed to Prack and dated April 28, 2014, can be a true copy of a document received by Prack

from the U.S. Marshals Service, when that document appears to contain Prack's signature.

Prack failed to submit any evidence that he executed the acknowledgment form on May 12,

2014, or that his counsel sent the form "executed by Mr. Prack" to the United States Marshals

Service, on or about May 19, 2014. Having failed to waive service timely, under Rule 4(d), see

Fed. R. Civ. P. 12(a)(1)(A)(ii), Prack had "21 days after being served with the "summons and

complaint," Fed. R. Civ. P. 12(a)(1)(A)(i), or until July 7, 2014, to serve his response to the

complaint. On July 7, 2014, the last day on which Prack's response was due, Prack's counsel

"requested that the Court confirm that [the] supplemental defendants have until July 19, 2004 to

respond to the supplemental complaint, as that is 60 days after I forwarded the acknowledgment form." (Docket Entry No. 71). The Court denied that request, finding that Prack's counsel "failed to provide good cause for an extension of time for Prack to answer the complaint." (Docket Entry No. 72). Prack failed to answer the complaint within the time permitted, namely by July 7, 2014.

Prack served his motion to dismiss on July 21, 2014, after: (i) the deadline to serve his answer expired; and (ii) the denial of the requested enlargement of time to "respond to the supplemental complaint." While a Rule 12(b) motion must be made before pleading, which is satisfied here since no answer was served by Prack, the time in which to make a Rule 12(b) motion is not unlimited. See 5C Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1361 (3d ed. 2004). ("Since the only time limitation on Rule 12(b) motions is that they must be made 'before pleading,' Rule 12(a), which allows twenty[-one] days for filing responsive pleadings, normally controls the time limit on these motions."). Therefore, a motion to dismiss, pursuant to Rule 12, served after the time to answer the complaint expired and in the absence of a court order enlarging the time pursuant to Rule 6(b), is untimely. See United States ex rel. Masucci v. Follette, 272 F. Supp. 563, 564 (S.D.N.Y. 1967); see also Gillo v. Gary Cmty. Sch. Corp., No. 14-CV-99, 2014 WL 3767680 at *2 (N.D. Ind. July 31, 2014) ("To conclude otherwise would effectively allow a defendant that has failed to answer to grant itself an extension of time without showing good cause or excusable neglect."). Thus, Prack's motion to dismiss is untimely. Alternatively, given the "strong preference for resolution of disputes on their merits" in this circuit, Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986), the Court will analyze Prack's motion on the merits.

10

*Merits of the Rule 12(b)(1) Motion*

Although Prack's notice of motion states that it is made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides that a party may assert a defense of "lack of subject-matter jurisdiction" by a motion, he does not make any arguments challenging subject-matter jurisdiction. Thus, his motion is made, improperly, under Rule 12(b)(1).

Prack argues that: (a) personal jurisdiction has not been obtained over him because "he was not served with the Supplemental Complaint (or Complaint, as directed by the Court)"; and (b) the "[a]ttempted service of just the Summons, Judge Preska's IFP Order and the Court's April 4, 2014 Order, as occurred, was insufficient." Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a defense of "lack of personal jurisdiction" may be asserted in a motion. Fed. R. Civ. P. 12(b)(2). Rule 12(b)(4) governs the defense of "insufficient process" and Rule 12(b)(5) governs the defense of "insufficient service of process."

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.
>
> 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004).

"Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." Anzulewicz v. Nat'l Fuel Gas Supply Corp., 208 F.R.D. 47, 49 n.5 (W.D.N.Y. 2002).

Since Prack does not assert noncompliance with Rule 4(b), dealing with the content of the summons, or otherwise challenge the form of the process, his motion is not governed by Rule

11

12(b)(4).  Rather, he asserts that "he was not served with the Supplemental Complaint (or Complaint, as directed by the Court)," which is a defense governed by Rule 12(b)(5).  Prack's argument that no personal jurisdiction over him exists, due to the asserted insufficient service of process, is governed by Rule 12(b)(2).  Since insufficient service of process is the only ground upon which Prack asserts lack of personal jurisdiction over him, the Curt must analyze that ground.

"Under Rule 12(b), a 'speaking' motion, i.e., a motion that includes evidentiary matters outside the pleadings, is properly converted to a Rule 56 motion only when it is made under Rule 12(b)(6): failure to state a claim." Kamen v. Am. Tele. & Tele. Co., 791 F.2d 1006, 1010 (2d Cir. 1986).  "[M]aterials outside the pleadings . . . may [be considered by the court] without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013).  Similarly, materials outside the pleadings may be considered without converting a motion to dismiss for insufficient service of process, under Rule 12(b)(5), into a motion for summary judgment.  See Darden v. Daimlerchrysler North America Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).  Thus, in resolving Prack's motion on the grounds of lack of personal jurisdiction and insufficient service of process, the Court will consider materials outside the pleadings without converting the motion to dismiss into a motion for summary judgment.

"Where an independent process server files an affidavit affirming that the requirements of Rule 4(e) have been complied with, '[t]he mere denial of receipt of service . . . is insufficient to overcome the presumption of validity' of that affidavit." J & J Sports Prods., Inc. v. Arnoat, No. 06 Civ. 2103, 2007 WL 2042981, at *1 (S.D.N.Y. July 12, 2007) (quoting Nolan v. City of Yonkers, 168 F.R.D. 140, 144 (S.D.N.Y. 1996)).  "Once a defendant raises a challenge to the

sufficiency of service of process, the plaintiff bears the burden of proving its adequacy," and

"[c]onclusory statements are insufficient to overcome a defendant's sworn affidavit that he was

not served.  If service of process was not sufficient, the Court has discretion to dismiss the

action, but dismissal is not mandatory."  Darden, 191 F. Supp. 2d at 387.

The United States Marshals Service certified that Prack was served personally with the

"Summons & Complaint," on June 16, 2014, and that certification renders personal service on

Prack presumptively valid.  Prack failed to submit his own affidavit to support his challenge to

the sufficiency of the service of process.  Norton's statement that, in her capacity as a Secretary

I, she "review[s] and document[s] all correspondence (including legal papers) received by Albert

Prack," establishes only that fact.  However, her statement that Exhibit A contains "true and

correct copies of all legal documents in this action left with Mr. Prack from the U.S. Marshals

Service on June 16, 2014," does not establish what the United States Marshals Service served

personally on Prack on June 16, 2014, what was "left with Mr. Prack" or that the "Summons &

Complaint" were not served as the United States Marshals Service certified.  That is so, because

Norton's declaration does not establish that she has personal knowledge of what was served

personally on Prack.  Moreover, Exhibit B to Norton's declaration contains a "Statement of

Service by Mail," dated April 28, 2014, that Prack appears to have signed on "5/12/14,"

acknowledging that he "received a summons and complaint" and stating: "I affirm the above as

true under penalty of perjury."  The unrebutted evidence shows that Prack: (a) "received a

summons and complaint," because he was served personally with the "Summons & Complaint,"

on June 16, 2014, by the United States Marshals Service.  Moreover, he appears to have

executed the acknowledgment of receipt of "a summons and complaint," on May 12, 2014.

Accordingly, granting Prack's motion on the grounds of insufficient service of process and lack

of personal jurisdiction, based on insufficient service of process, is not warranted.

***Merits of the Rule 12(b)(6) Motion***

"If, on a motion under Rule 12(b)(6) . . . matters outside of the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document "upon which [the complaint] *solely* relies and which is *integral to the complaint*" may be considered by the court in ruling on such a motion.

Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted).

In support of his Rule 12(b)(6) motion, Prack submitted: (a) Exhibit A, the plaintiff's Article 78 petition in Tolliver v. Fischer, Index No. 5824-13, filed in the New York State Supreme Court, Albany County; (b) Exhibit B, the respondent's answer to the petition; (c) Exhibit C, the April 1, 2014 decision and order, denying the petition; and (d) Exhibit D, the plaintiff's reply. The plaintiff alleged in his amended complaint that he appealed his supplemental claims in "an Article 78 [petition] to the Albany Supreme Court." Therefore, the Article 78 proceeding concerning the plaintiff's appeal related to his 2013 hearing is incorporated by reference, and the Court will consider the defendant's exhibits without converting the motion to dismiss into a motion for summary judgment.

Collateral Estoppel

"Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a

14

different claim." New Hampshire v. Maine, 532 U.S. 742, 748-49, 121 S. Ct. 1808, 1814 (2001).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be

given that judgment under the law of the State in which the judgment was rendered." Migra v.

Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984). Here, the

preclusive effect is determined by New York law.

> [T]wo requirements . . . must be satisfied before the [collateral estoppel doctrine] is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination. The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. . . . If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation.

> Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-57, 492 N.Y.S.2d 584, 588-89 (1985) (internal citations omitted).

> [T]hese principles are not to be mechanically applied as a mere checklist. Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis. For example, the question whether a party had a full and fair opportunity to contest the prior decision is not answered simply by reference to the procedural benefits available in the first forum or by a conclusion that the requirements of due process were satisfied. Instead, the analysis requires consideration of "the realities of litigation", such as recognition that if the first proceeding involved trivial stakes, it may not have been litigated vigorously. In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings.

> Staatsburg Water Co. v. Staatsburg Fire Dist., 72 N.Y.2d 147, 153, 531 N.Y.S.2d 876, 878 (1988) (internal citations omitted).

New York Article 78 Proceeding

CPLR § 7801 provides that the relief historically available by the former writs of certiorari to review, mandamus and prohibition are all available now through proceedings brought under article 78. CPLR 7803 supplements that provision by setting forth "[t]he only questions that may be raised in a proceeding under . . . article [78]." Taken together, these statutes and the body of common law they incorporate are necessarily the prime reference points for determining whether a particular claim against a public body or officer may be brought in the form of an article 78 proceeding.

New York City Health & Hosps. Corp. v. McBarnette, 84 N.Y.2d 194, 204, 616 N.Y.S.2d 1, 5 (1994).

The only questions that may be raised in a proceeding under this article are: 1. whether the body or officer failed to perform a duty enjoined upon it by law; or 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence. . . .

CPLR § 7803.

"A proceeding under [Article 78] is a special proceeding." CPLR § 7804(a).

In his Article 78 petition, Tolliver alleged that: (1) his waiver of his right to attend the

2013 hearing was not knowing and voluntary because he was not informed of the consequences

of failing to appear at his hearing; (2) his right to appeal was violated because he never received

a copy of the 2013 hearing disposition or a notice of his right to appeal; (3) his 2013 hearing

"should have started and completed within (14) days of the court order from the Supreme Court

Appellate Division" annulling the initial determination and ordering a new hearing; (4) "the

delay to reverse petitioner's Superintendent's hearing upon his appeal to Albany," caused him

"to lose his most important witness"; and (5) the 2013 hearing officer was biased because he

"intentionally erase[d] and cut out petitioner's objections and questioning of officer Skinner's

testimony," and "then this hearing officer went and have this officer [S]kinner, testified again for a second time out of petitioner's presence."  The Article 78 court determined that: (a) "the rehearing was [not] untimely" because "the timing of rehearing on remand" is not governed by 7 NYCRR § 251-5.1(a), no order stated "the time in which to hold the hearing," and Tolliver "failed to allege that he was in disciplinary confinement"; (b) "Respondent did not violate either the commencement or the extension provisions of the regulations" governing the hearing and the respondent was not "ousted of jurisdiction"; (c) refusal to attend the hearing was knowing and voluntary and Tolliver's rights were protected; and (d) Tolliver "failed to preserve the claims he now advances which should have been raised at the hearing."  In his complaint against Prack in this action, Tolliver asserted that Prack "turn[ed] a blind eye" to constitutional violations which occurred in connection with the 2013 hearing and violated his constitutional rights when he denied his appeal.

The following issues were not necessarily decided in the Article 78 proceeding, the: (a) failure to send Tolliver a copy of the 2013 hearing disposition, the recitation of evidence forming the basis for the disposition and a notice of his right to appeal; and (b) delay in reversing the hearing upon his 2012 appeal resulting in the loss of the most important witness, because the court did not address these issues, finding them unpreserved.  Thus, not having been litigated, these issues are not identical to the issues raised in the instant action.

Moreover, since the issues that can be raised via an Article 78 proceeding are limited, the court that heard Tolliver's Article 78 petition determined the following questions solely, whether: (i) the determination concerning his 2013 hearing was made in violation of lawful procedure; and (ii) the respondent proceeded without or in excess of jurisdiction.  Since Article 78 does not authorize a petitioner to raise constitutional violation questions, whether Prack

17

turned a blind eye to the due process rights violations asserted by Tolliver could not have been actually litigated in the Article 78 proceeding. In fact, Prack's contention that Tolliver's claims in this action "simply mirror those made in his unsuccessful Article 78 proceeding" is meritless, given that the Article 78 proceeding was a special proceeding in which only very limited and specific questions were permitted to be raised, and Prack did not raise res judicata or claim preclusion as a defense in this motion. The issues raised in this action and decisive for determination of this action could not have been decided in the Article 78 proceeding. The Court finds that Prack failed to carry his burden of establishing that the issues litigated in Tolliver's Article 78 proceeding are identical to the issues in this action. Therefore, collateral estoppel is not a basis for dismissing Tolliver's claims against Prack.

### *Failure to Exhaust Properly Claims Against Prack*

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[P]roper exhaustion of administrative remedies is necessary," and "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Woodford v. Ngo, 548 U.S. 81, 84, 88-89, 126 S. Ct. 2378, 2382, 2385 (2006).

Prack makes the identical arguments the defendants made in their opposition to the plaintiff's motion to supplement his complaint, namely, that the "claims arising from the 2013 re-hearing were, by definition, not exhausted" properly when Tolliver commenced this action, in 2012. However, the Court already rejected these arguments, finding that Tolliver exhausted his administrative remedies related to his claims based on the post-pleading, 2013 hearing properly, prior to making his claims related to the 2013 hearing in this action. See Docket Entry Nos. 65

18

& 68. Since Prack failed to make citation to any binding authority for the contrary proposition,

dismissing the claims against him based on failure to exhaust administrative remedies properly,

is not warranted.

### *Personal Involvement and Failure to State a Claim*

To establish a Section 1983 claim against government officials, including supervisors, a

plaintiff "must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.

Ct. 1937, 1948 (2009). In the Second Circuit,

> [t]he personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The Second Circuit has not yet addressed what, if anything, remains of the five ways of showing

the personal involvement of supervisory defendants after Iqbal. See Hogan v. Fischer, 738 F.3d

509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which the Supreme Court's

decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), 'may

have heightened the requirements for showing a supervisor's personal involvement with respect

to certain constitutional violations.'"). The Court finds that Iqbal did not abrogate the five forms

of evidence that may show the personal involvement of a supervisory defendant, as articulated in

Colon, 58 F.3d at 873. "While mere receipt of a letter from a prisoner is insufficient to establish

individual liability, an official's actions and responses arising out of a grievance may." Bodie v.

19

Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004).

      Prack received Tolliver's grievance, reviewed it and acted on it, personally. Accordingly, the allegations against Prack are sufficient to state personal involvement and dismissing the claims against him based on this ground is not warranted.  Moreover, Tolliver's allegations, including that the defendants tampered with the hearing tape, must be taken as true on a motion to dismiss; thus, Prack's argument that "[t]here are no readily discernible gaps alleged in the hearing tape in question that Plaintiff could argue may have given notice to Supplemental Defendant Prack of problems with the 2013 re-hearing itself, only Plaintiff's absurd claim that it too had been 'tempered [sic] with,'" is meritless.

      Prack's contention that no due process liberty interest was implicated because "the 2013 re-hearing imposed no SHU time" is inconsistent with his assertion that "the penalty imposed was less than the 101 days."  The 2013 hearing was conducted after the state court annulled the 2011 hearing, which imposed six months of SHU time on Tolliver that he served.  Therefore, at this stage of the litigation, it cannot be concluded that no due process liberty interest was implicated in connection with the 2013 hearing.  Accordingly, dismissing the claims against Prack, on this ground, is not warranted.

### *Qualified Immunity Defense*

      Qualified immunity is an affirmative defense shielding government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

>To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful.

>Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010).

A right claimed to be violated must be clearly established "at the time of the conduct at issue." Davis v. Scherer, 468 U.S. 183, 197, 104 S. Ct. 3012, 3021 (1984). Prison inmates are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S. Ct. 2963, 2974-75 (1974)).

Prack's argument that "[i]t is unclear what clearly established right [he] is supposed to have violated," is meritless. Tolliver asserted that Prack violated his due process rights when he "turn[ed] a blind eye" to constitutional violations in connection with the 2013 hearing of which Tolliver complained to him. Tolliver's due process rights, in connection with the 2013 disciplinary action, were clearly established at the time of the conduct at issue. See Wolff, 418 U.S. at 555-56, 94 S. Ct. at 2974-75. Furthermore, Prack's contention that "denying a prison disciplinary appeal is hardly a constitutional violation, particularly when that decision is subsequently upheld by an Article 78 court as not being unconstitutional," is also meritless. As discussed above, an Article 78 proceeding is a special proceeding which does not authorize questions of constitutionality to be raised, including the constitutionality of Prack's denial of "a prison disciplinary appeal." Thus, the Article 78 court did not find that Prack's denial of Tolliver's appeal was not unconstitutional, and even if it did, such a finding is not contemplated to be considered as part of the qualified immunity defense analysis in this action. Prack's conclusory contention that it was objectively reasonable for him not to believe he was violating

21

any clearly established law by denying Tolliver's appeal, without more, is not sufficient to dismiss the claims against Prack based on a qualified immunity defense.

***Improper Venue***

Although Prack's notice of motion states it is brought pursuant to Rules 12(b)(1) and 12(b)(6) of Federal Rules of Civil Procedure, Prack raised an affirmative defense of improper venue, which is governed by Rule 12(b)(3) of the Federal Rules of Civil Procedure.

"A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). As long as "any defendant resides" in this judicial district and all defendants are residents of New York, venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1).

Prack makes arguments identical to those the defendants made in their opposition to the plaintiff's motion to supplement the complaint. Those arguments have been rejected previously. See Docket Entry Nos. 65 & 68. Since Prack does not make any new arguments in this motion, the Court finds that venue is proper in the Southern District of New York because all defendants are residents of New York and some defendants are residents of this district namely, D.S.A. Lynn Lilley and Superintendent Patrick Griffin. Thus, transferring the action to another judicial district is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that Prack's motion to dismiss, Docket Entry

No. 73, be denied as untimely and, alternatively, on the merits.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated:  New York, New York
       October 24, 2014

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Eric Tolliver