UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC TOLLIVER,

                       Plaintiff,

            -against-              : **REPORT AND RECOMMENDATION**

D.S.A. LYNN LILLEY, SUPERINTENDENT    :  12-CV-971 (DAB) (KNF)
PATRICK GRIFFIN, LT. T. LEVAC,
D.S.S. R. COVENY, DIRECTOR ALBERT
PRACK,

                    Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## BACKGROUND

*Procedural History*

On February 3, 2012, Eric Tolliver ("Tolliver"), proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights arising out of his fiancée's September 11, 2011 visit with him at New York's Sullivan Correctional Facility and the September 2011 related disciplinary hearing. Albert Prack ("Prack"), director, Special Housing/Inmate Disciplinary Program, New York State Department of Corrections and Community Supervision, filed a timely motion to dismiss. On March 18, 2013, claims against Prack were dismissed.

On April 4, 2014, the Court granted Tolliver's application for leave to supplement the complaint to add claims against: (1) Lt. T. Levac, a hearing officer at New York's Five Points Correctional Facility; (2) D.S.S. R. Coveny, a review officer at New York's Five Points

Correctional Facility; and (3) Prack. Tolliver's new constitutional rights violation claims concern the 2013 hearing of his grievance in connection with the September 11, 2011 visit by his fiancée that formed the basis of the original claims asserted in the 2012 complaint. Your Honor approved, adopted and ratified the Court's April 4, 2014 memorandum and order.

On June 16, 2014, Prack was served, personally, with the "Summons & Complaint" by the United States Marshals Service. (Docket Entry No. 70). Prack had 21 days after being served, or until July 7, 2014, to respond to the complaint.

By a letter, dated July 7, 2014, Prack's counsel, Jeb Harben, Esq. ("Harben"), stated, in pertinent part:

> Today I received via the ECF [Electronic Case Filing] system an affidavit of service indicating that Albert Prack, a supplemental defendant in the above action, was served by hand by the U.S. Marshals Service on July 16, 2014 and that his response is due today. On or about May 19, 2014, however, I forwarded to the U.S. Marshals service an acknowledgment of service form executed by Mr. Prack (dated May 12, 2014), along with acknowledgment forms executed on behalf of supplemental defendants [Lt. T.] Levac and [D.S.S. R.] Coveny (dated May 16 and 19, 2014, respectively). These forms are attached. Unfortunately, it does not appear that the forms were processed by the U.S. Marshals service and it proceeded to serve Mr. Prack again. I will send the Service another set of copies of these forms today. Under the Southern District's December 30, 2013 standing order, these supplemental defendants would ordinarily have until July 19, 2014 to respond to the supplemental complaint, as that is 60 days after I forwarded the acknowledgment form. It is respectfully requested that the Court confirm that these supplemental defendants have until July 19 to jointly respond to the supplemental complaint. It is defendants' position that any subsequent service of process was unnecessary as the forms had been executed and returned and that any subsequent service does not impact any deadlines.

On July 8, 2014, the Court denied Prack's July 7, 2014 request, based on his failure to provide good cause for an extension of time to answer the complaint. The Court found that Harben was not diligent in discharging his duty of regularly checking the docket sheet in this action because he was not aware: (a) that his forwarded "acknowledgment" forms were not appearing on it; and

2

(b) of the June 16, 2014 service, until he was prompted to check the docket sheet by the July 7, 2014 electronic notice generated by the court.

On July 21, 2014, Prack made a motion "pursuant to Rule 12(b)(6) and (1) of the Federal Rules of Civil Procedure," for an order dismissing the "Plaintiff's Supplemental Complaint or, in the alternative, an order pursuant to 28 U.S.C. § 1404(a) transferring venue from the Southern District to the Northern or Western District of New York." On October 24, 2014, the Court issued a report recommending that Prack's motion be denied as untimely or, alternatively, on the merits. (Docket Entry No. 104). Prack's objections to the Court's October 24, 2014 recommendations are pending at this time.

On August 18, 2014, Tolliver made a motion for judgment by default against Prack, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. (Docket Entry No. 93). On September 9, 2014, Prack filed a letter, accompanied by his and Harben's declarations, requesting that: (i) the plaintiff's motion "be denied sua sponte"; and (ii) "[i]n the event that the Court is not inclined to deny the motion at this time," a conference be scheduled "to discuss the issues raised in Plaintiff's motion so that the Court can determine whether this matter warrants further briefing." (Docket Entry Nos. 94, 95 and 96).

On October 24, 2014, the Court determined that: (a) Prack is in default as of July 7, 2014; and (b) inconsistent factual assertions have been made requiring an evidentiary hearing. (Docket Entry No. 103). The hearing was scheduled for November 21, 2014. On November 13, 2014, the Court received a letter from Richard W. Brewster, Esq. ("Brewster"), stating, <u>inter alia</u>:

> I am Special Litigation Counsel in the New York City Litigation Bureau of the New York State Attorney General's Office and am responsible for major case litigation and special projects, primarily in defensive litigation handled by the Bureau on behalf of the State's criminal justice agencies, including the Department of Correction and Community Supervision ("DOCCS"). I will be handling the

3

> November 21, 2014 hearing as counsel to defendants and have entered an appearance on their behalf. As a threshold matter, I sincerely apologize to the Court for multiple reasons with respect to our handling of service issues in this case. When I first learned of plaintiff's default motion I reviewed the docket sheet and our file in this matter and noted that the mailing date of our return to the U.S. Marshals of Mr. Prack's acknowledgment of service by mail was not documented in our file. Clearly a review of the docket sheet in the weeks that followed the mailing of the acknowledgment to the Marshals would have revealed that Mr. Prack's acknowledgment was never docketed. Finally, waiting nearly two weeks after the Court's July 8, 2014 order and then moving to dismiss was wrong. I apologize to the Court for these errors and departures from best practice, as well as for the resulting inconvenience and burden on the Court. . . . We have identified Northern District of New York Deputy U. S. Marshal Michael Tracey ["Tracey"] as the Deputy Marshal who served papers at DOCCS Central Office on June 16, 2014. . . . In conclusion, both I and AAG Harben apologize to the Court for the errors leading to the scheduling of the November 21 hearing and the related burdens on the Court.

After the hearing was held on November 21, 2014, the parties submitted their respective post-hearing arguments.

*Plaintiff's Contentions*

In his motion, Tolliver contends that the summons and complaint were served on Prack "personally by mail on May 12, 2013," and "[t]he original summons and affirmation of service were file[d] with the [c]ourt on April 28, [2014]." He asserts that "[t]he time to respond to this complaint has expired," and, since Prack did not answer or make a timely motion, or obtain an extension of time to do so, he is now in default. Tolliver contends that "demand was made for damages in the amount of one million and twenty seven thousand dollars," and he seeks interest on that amount since the date the complaint was served, as well as "disbursements in the amount of three hundred and fifty dollars."

*Defendant's Contentions*

In his September 9, 2014 letter, Prack contends:

[T]he U.S. Marshals Service sought to effect service on Defendant Prack both by mailing him a request for acknowledgment of service mail on or about April 28,

4

2014 and by delivering a service package to his Albany office on June 16, 2014. Only the June 16, 2014 method is reflected on the docket as having been completed as an earlier acknowledgment of service form does not appear on the docket.

According to Prack, he "is no stranger to this case," because the claims against him in the original complaint were dismissed previously upon his motion to dismiss. Prack asserts that he was not served properly because "the pleadings were omitted from the service packet," and "there is no personal jurisdiction over" him; thus, he could not have defaulted. Moreover, his "lack of willfulness and desire to proceed in good faith is further demonstrated by the fact that he has not sought to evade service or avoid participating in this action." Prack contends:

> A difference of opinion, or even a mistake, as to the applicable deadline is hardly indicative of willfulness. Moreover, Plaintiff cannot show prejudice as a result of this relatively short delay. In addition, as demonstrated in Defendant Prack's motion to dismiss and his September 8, 2014 Declaration, he has meritorious defenses to Plaintiff's claims against him. Finally, Defendant Prack's lack of willfulness and desire to proceed in good faith is further demonstrated by the fact that he has not sought to evade service or avoid participating in this action. In fact, he voluntarily signed an acknowledgment form that he was not required to sign. Indeed, he was already a party in 2012, moved to dismiss at that time, and his motion was granted in 2013. Defaulting a defendant who already appeared in this action in 2012 and moved to dismiss on two separate occasions (in 2012 and 2014) makes little sense. If Defendant Prack's July 21 motion to dismiss is deemed timely submitted by the Court and Plaintiff's motion for a default denied, he does not intend to pursue his defense of lack of service of process. It is Defendant Prack's position that Plaintiff's motion should be denied sua sponte for the reasons stated herein so as not to consume more of the Court's valuable time. In the event that the Court is not inclined to deny the motion at this time, we seek to schedule a conference to discuss the issues raised in Plaintiff's motion so that the Court can determine whether this matter warrants further briefing. If the Court believes that a conference is appropriate, or wishes the issue briefed, it is respectfully requested that Defendant Prack be allowed until September 15 in which [sic] to submit his opposition and that the Clerk of the Court be stayed from certifying any default in this action while the motion is pending.

### *The November 21, 2014 Hearing*

The following testimony is pertinent to Prack**:**

Tracey testified that, on June 16, 2014, he completed the "Process Receipt and Return"

5

form, USM-285, addressed to Prack, and he acknowledged his handwriting and signature on that form.  Tracey testified that he hand-delivered the process packet to Prack.  Tracey stated that he neither knew nor reviewed the content of the process packet he delivered.  Tracey testified that he never opened the process packet before he served it on Prack, and he did not recall whether Prack opened the process packet in his presence, or whether Prack objected to its content.

      Jessica Norton ("Norton") testified that she is a secretary within DOCCS and, in that capacity, she reviews and documents all correspondence received by Prack.  Norton testified that she did not receive personally the June 16, 2014 process packet for Prack.  Norton stated that she became aware of it, on June 17, 2014, when she found it on her desk.  Norton does not know who placed the packet on her desk.  Norton explained that she did not review the June 16, 2014 process packet for Prack, and she did not know its content.  Norton testified that, previous to the June 16, 2014 service, a process packet for Prack was received in "[t]he mailroom," after which one of the keyboard specialists opened it, stamped it "received" and "put it on my desk."  Norton explained that she did not read the content of the packet, "just reviwe[d] it quickly," to "find a hearing date, if there is one in there, so I can put that in the spreadsheet."  Norton testified that she first learned that a complaint was not included in the process packets for Prack from the attorney general's office, in July 2014.  Norton was asked about the basis for her statement, made in her declaration in support of Prack's motion to dismiss, that Exhibit A to her declaration contains "true and correct copies of all legal documents in this action left with Mr. Prack from the U.S. Marshals Service on June 16, 2014." (Docket Entry No. 77).  She admitted that she had no personal knowledge about the content of the packet served on June 16, 2014 on Prack.  Norton testified that she enters information in a spreadsheet she maintains to record litigation against DOCCS employees, including Prack.  In that spreadsheet, Norton recorded, <u>inter alia,</u> the

following:

```
DATE RECEIVED:    6/16/2014
CASE NAME:        Tolliver v. Prack
CIV NUM:          12-CV-971
SIGNED:           Y
HDATE:            6/11/13 REHEARING SUPPLEMENTAL PAPERWORK?
```

Norton explained that she referenced "June 11, 2013," because she "looked up in our computer system what maybe the paperwork had to go along with, and I assumed it came with the June 11, 2013 rehearing that was done." Norton assumed that what was received on June 16, 2014 "went with what we received in May, it was the same paperwork." Norton wrote a question mark because she "was unsure why we were getting it again or receiving the same information twice when I already sent out the letter for representation." When questioned about an entry on the spread sheet for which no column was identified, Norton testified that she did not create the spreadsheet she maintains and she was "not sure what someone meant when they made the spreadsheet." Norton stated that other people also enter information on that spreadsheet, and it is possible for anyone who has access to the spreadsheet to alter information contained on it.

Prack testified that he does "not remember being personally served on June 16," but the process packet was received "in [his] office." Prack stated that, on May 12, 2014, he signed, under penalty of perjury, a statement of service by mail and acknowledgment of receipt by mail of summons and complaint, which states: "I received a summons and complaint." Prack testified that when he signed that form, on May 12, 2014, "whatever is in this package is what I signed for." He explained that, he "briefly looked" at the content of the process packet for which he signed on May 12, 2014, but did "not go through it page by page," because "[m]y sole function at that point is to get these documents to the attorney general's office and ask for representation." Prack testified that he first became aware that the process packet served on him by mail for

7

which he signed on May 12, 2014, did not contain the supplemental complaint "maybe a month ago," in October 2014. When questioned about his declaration, dated September 8, 2014, in which he stated that the materials received by mail by his office "did not contain a copy of the Supplemental Complaint, or Complaint, in this action," Prack admitted that he became aware of the missing complaint earlier than October 2014. Prack testified that he assumed responsibility for the risk that, if he failed to respond to the complaint timely, he would be in default, because "[i]t goes with the job."

Harben testified that when he wrote the July 7, 2014 letter to the Court, he "was aware that if the court did not accept our attempt to accept mail service, this could actually be an issue." Tolliver testified that the documents he received from the U.S. Marshals Service and the defendants' attorney all confirm that the service was effected on all defendants in this action.

*Post-Hearing Submissions*

Tolliver contends, in his post-hearing submission, that his motion for judgment by default should be granted because Prack's failure to act timely was willful and he resorted to "game playing" with the court by submitting declarations "contradicting each other." According to Tolliver, Prack, Norton and Harben "all claimed that they have . . . each touched the package on at least (2) occasions," and none of them brought to anyone's attention that the complaint was not enclosed in the package, but "after the July 7, 2014 deadline had past, . . . all of these . . . individual[s] remember that the complaint was not enclosed in the package." This, he contends, is incredible. Tolliver contends that, even "assuming no prejudice was cause[d] to the plaintiff, and that Prack had [a] meritorious defense, this does not automatically overcome the willful failure to answer; willful failure alone may constitute sufficient cause for the Court to deny [Prack's] motion" to set aside his default, making citation to Dierschke v. O'Cheskey, 975 F.2d

8

181, 185 (5th Cir. 1992).

Prack makes two arguments in his post-hearing submission. First, he asserts that the plaintiff failed to meet his burden of showing that service was effected properly on Prack because none of the packets included the complaint or supplemental complaint naming him as a defendant. According to Prack, even if the service on him was valid, compelling reasons exist why he "should not be deemed in default." Prack asserts that the November 21, 2014 testimony shows that "there was no willfulness on Prack's part," because "[h]e and his staff viewed the June packet as [a] duplication of the May packet and accordingly attributed no significance to it." Since Norton was uncertain "why DOCCS received an additional copy of the same packet of legal process received weeks earlier," Prack "instructed Norton just to copy and mail it to the Attorney General's Office, which she did without a new request for representation or cover letter of any kind." Second, Prack contends that, because "uncontradicted testimony" shows that proper service of process on Prack was not established, the plaintiff failed to obtain personal jurisdiction over Prack, and his default motion must fail.

## DISCUSSION

***Legal Standard***

"Rule 55 [of the Federal Rules of Civil Procedure] provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011)(citing New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "[A] district court is also empowered to enter a default" against a defendant

9

who fails to appear or otherwise defend. Mickalis Pawn Shop, LLC, 645 F.3d at 129. "The clerk's record should contain a notation to that effect." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Where the clerk has entered a party's default, and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation, . . . the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). "Strong public policy favors resolving disputes on the merits." American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). "[T]he entry of a judgment by default [is a] drastic remed[y], and should be applied only in extreme circumstances." Independent Prods. Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir. 1960). "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Three criteria must be assessed when determining whether "good cause" is satisfied under Rule 55(c), namely, whether: (1) "the default was willful"; (2) "setting aside the default would prejudice the adversary"; and (3) "a meritorious defense is presented." Enron Oil Corp., 10 F.3d at 96. Other factors may also be considered, such as "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Id. at 95.

> [B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously.

Id. at 96.

"Where an independent process server files an affidavit affirming that the requirements of Rule 4(e) have been complied with, '[t]he mere denial of receipt of service . . . is insufficient to overcome the presumption of validity' of that affidavit." J & J Sports Prods., Inc. v. Arnoat, No. 06 Civ. 2103 (WHP), 2007 WL 2042981, at *1 (S.D.N.Y. July 12, 2007) (quoting Nolan v. City of Yonkers, 168 F.R.D. 140, 144 (S.D.N.Y. 1996)). "Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy," and "[c]onclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." Darden v. Daimlerchrysler North America Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

***Application of Legal Standard***

<u>Procedural Deficiencies</u>

"[A]ll oppositions and replies with respect to motions shall comply with Local Civil Rule 7.1(a)(2) and (3) [of this court], and an opposing party who seeks relief that goes beyond the denial of the motion shall comply as well with Local Civil Rule 7.1(a)(1) [of this court]." Local Civil Rule 7.1(b). Prack's September 9, 2014 letter was filed in contravention to Local Civil Rule 7.1 (b) of this court, because it appears to oppose the plaintiff's motion, improperly, by a letter, rather than by a "memorandum of law, setting forth the cases and other authorities relied upon in [opposition to] the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined," as required by the Local Civil Rules of this court. Local Civil Rule 7.1(a).

Prack's September 9, 2014 letter, seeking "a conference to discuss the issues raised in Plaintiff's motion so that the Court can determine whether this matter warrants further briefing," is also in contravention to Local Civil Rule 7.1(d), which permits letter-motions only in the case

11

of "[a]pplications for extensions or adjournments, applications for a pre-motion conference and similar non-dispositive matters as permitted by the instructions regarding ECF [Electronic Case Filing] published on the website" of this court. Local Civil Rule 7.1(d). Prack's September 9, 2014 letter is not an application for an extension or adjournment, or an application for a pre-motion conference, or similar non-dispositive matter; it appears to be his opposition to the plaintiff's motion, requesting, inappropriately, a conference in connection with the plaintiff's motion.

In his September 9, 2014 letter, Prack makes arguments opposing the plaintiff's motion as well as arguments based on the "good cause" standard under Rule 55(c), seemingly asking to set aside the entry of default against him. Notwithstanding the above deficiencies, and in light of the circuit's preference for resolving disputes on the merits and the interest of preserving time and resources of the Court and the parties, the Court will consider Prack's September 9, 2014 letter as both his opposition to the plaintiff's motion for judgment by default as well as his request to set aside the entry of default, under Rule 55(c).

Rule 55(a): Entry of Default

Although Prack was in default as of July 7, 2014, the record did not indicate his default at the time of the plaintiff's motion for judgment by default. "The omission of the entry of a default was largely technical" because Prack had an opportunity to oppose the motion for judgment by default and was afforded "the same opportunity to present mitigating circumstances that [he] would have had if a default had been entered [at the time of the plaintiff's motion] and [he] had then moved under Rule 55(c) to set it aside." Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). "Even if a default had been entered, opposition to a motion for a default

judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion." Id.

The Court determined, on October 24, 2014, that, having been served personally with the summons and complaint and having failed to respond or make a motion to dismiss timely, Prack was in default as of July 7, 2014. Thus, Prack's default was noted on the record, on October 24, 2014. (Docket Entry No. 103). The Court provided an opportunity for Prack to present evidence at the November 21, 2014 hearing and to make post-hearing arguments in connection with the plaintiff's motion and the Court's October 24, 2014 determination that Prack was in default. The Court will consider Prack's September 9, 2014 letter as his request to set aside the entry of default.

<u>Whether Prack Was Served With Process</u>

The Court finds the following facts: On May 12, 2014, Prack signed an acknowledgment of service by mail form. On June 16, 2014, Tracey hand-delivered the process packet to Prack. The Process Receipt and Return form, USM-285, signed by Tracey, indicates that the type of process served on Prack, on June 16, 2014, is "Summons & Complaint." Neither Tracey nor Norton has personal knowledge about the content of the packet handed to Prack, on June 16, 2014.

The Court concludes that no evidence rebuts the presumption of validity accorded Tracey's certification in the Process Receipt and Return USM-285 form pertaining to Prack, and no evidence was presented to the Court to rebut or undermine Tracey's testimony. No credible evidence was presented to the Court demonstrating the absence of the complaint and supplemental complaint from the packet served on Prack, on June 16, 2014. The Court finds that

the plaintiff carried his burden of showing the adequacy of the June 16, 2014 service of process on Prack.

<u>Rule 55(c): Setting Aside the Entry of Default</u>

(a)  <u>Whether Prack's Default Was Willful</u>

Harben admitted, in his July 7, 2014 letter, that he first became aware, on that date, of the June 16, 2014[1] service of process on Prack and the corresponding deadline to answer or otherwise move with respect to the complaint.  Harben testified that he operated under the assumption that Prack's response to the complaint was due 60 days after Harben sent Prack's May 12, 2014 acknowledgment of service by mail form, and that, if the Court did not agree with that assumption, the time to respond to the complaint would expire.  No credible evidence was presented that Harben mailed Prack's May 12, 2014 acknowledgment of service by mail form to the U.S. Marshals Service.  Having been served personally with the summons and complaint on June 16, 2014, and having failed to respond or make a motion to dismiss timely, Prack knew he was going to be in default as of July 7, 2014.  "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." <u>American Alliance Ins. Co.</u>, 92 F.3d at 61.  Prack's contention that "[h]e and his staff viewed the June packet as [a] duplication of the May packet and accordingly attributed no significance to it" does not establish that "there was no willfulness on Prack's part"; rather, it compounds Prack's failure to: (a) assure that his May 12, 2014 acknowledgment of service by mail was filed in this action; and (b) inquire why he was receiving a "duplication of the May packet."  Rather than being alerted that something is amiss, Prack determined that "the June packet" was of "no

---

[1]In his July 7, 2014 letter, Harben states, erroneously, that service on Prack occurred on July 16, 2014, instead of June 16, 2014.

14

significance," and ignored the June 16, 2014 service and his obligation to answer or otherwise move timely with respect to the complaint. The Court finds that Prack's actions are of the type constituting an inexcusable neglect of his obligation in this litigation. As a result, the Court concludes that Prack's default was willful.

Tolliver contends that the finding of willfulness alone is sufficient to deny Prack's request to set aside his default, making citation to Dierschke, 975 F.2d at 185. While Tolliver is correct that in the Fifth Circuit, "when the court finds an intentional failure of responsive pleadings there need be no other finding," when analyzing "good cause" to set aside the entry of default, id. at 184, no such law exists in this circuit. Although the Second Circuit Court of Appeals has found that willfulness and lack of a meritorious defense, see Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (upholding the entry of default judgment under Rule 55 based on the finding of willful default and no meritorious defense), and willfulness and prejudice to the adversary, see State Bank of India v. Chalasani, 92 F.3d 1300, 1307 (2d Cir. 1996) (upholding the lack of good cause under Rule 55(c) based on a finding of willful default and prejudice to the plaintiff), are sufficient bases to deny a motion under Rule 55(c), it never held that a finding of willfulness alone is sufficient to deny such a motion. Accordingly, other criteria in determining whether good cause exists to set aside Prack's default are analyzed.

    (b)    <u>Whether Setting Aside Default Would Prejudice the Plaintiff</u>

Prack contends that the plaintiff will not be prejudiced "as a result of this relatively short delay." Prack's untimely, July 21, 2014 motion to dismiss was made two weeks after the deadline for such a motion expired. Although two weeks may appear to be a relatively short period of time in this litigation, it does not undermine the prejudice to the plaintiff that would

15

attend from setting aside the entry of default. Unlike Prack, the plaintiff, proceeding pro se, demonstrated diligence and compliance with procedural rules and deadlines in this litigation and, given Prack's willful noncompliance with the deadline to respond to the complaint, setting aside the entry of default would take away the substantive result achieved by Tolliver in connection with his claims against Prack. Moreover, it would be fundamentally unfair and prejudicial to Tolliver if Prack's willful failure and lack of diligence is rewarded by setting aside the entry of default, especially because Prack testified that he was aware of the consequences of failing to respond to the complaint timely and assumed the responsibility for such a failure because "[i]t goes along with the job." The Court concludes that setting aside the entry of default would prejudice the plaintiff.

      (c)    <u>Whether a Meritorious Defense is Presented</u>

Prack contends that his motion to dismiss and his September 8, 2014 declaration demonstrate that he has a meritorious defense. The Court has recommended already that Prack's motion to dismiss be denied as untimely and, alternatively, on the merits, and Prack's September 8, 2014 declaration was found to be internally inconsistent and inconsistent with Norton's declaration. However, given that Prack's objections to the Court's recommendation are pending, the Court finds that it is possible that Prack presented a meritorious defense in his motion to dismiss. Since any doubt whether a default should be vacated should be resolved in favor of the defaulting party, <u>Enron Oil Corp.</u>, 10 F.3d at 96, the Court finds that this criterium militates in favor of setting aside the entry of default.

      (d)    <u>Whether Prack's Failure Was a Mistake Made in Good Faith</u>

Previously, Prack made a timely motion to dismiss the original complaint. On May 12, 2014, he signed the acknowledgment of service by mail form, and sought representation from

16

the attorney general's office, demonstrating intent to participate in this litigation. Initially, Prack attempted to respond timely, by signing the acknowledgment of service by mail form and sending it to Harben, on whom Prack relied to provide adequate and effective representation to him. No credible evidence was presented that Harben forwarded that form to the U.S. Marshals Service. Brewster's November 13, 2014 letter, admitting Harben's "errors and departures from best practice" and the resulting "burden on the Court," as well as the record demonstrate that Prack's failure may be attributed, in great part, to Harben's inexcusable and unjustified errors and lack of diligence in representing Prack in this litigation. Although Prack's failure is not justified or excused by Harben's own errors and lack of diligence, the Court finds Prack acted in good faith, when he failed to comply timely with responding to the complaint. Thus, the Court concludes that Prack's conduct, although willful, was in good faith.

   (e) <u>Whether the Entry of Default Would Bring About a Harsh or Unfair Result</u>

In light of Prack's intent and good faith attempt to participate in this litigation and the preference in this circuit for resolving disputes on the merits, the Court finds that the entry of default would bring about a harsh result for Prack. Thus, the Court finds that this criterium militates in favor of setting aside the entry of default.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion for judgment by default, Docket Entry No. 93, be denied, and Prack's default, entered on October 24, 2014, be set aside.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

17

objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      February 19, 2015

Respectfully submitted,

/s/ Kevin Nathaniel Fox
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Eric Tolliver

erictolliver6.rr

18