UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ERIC TOLLIVER,                                         :

                              Plaintiff,               :

                 -against-                             : **REPORT AND RECOMMENDATION**

D.S.A. LYNN LILLEY, D.S.P. L. MALIN,                   :        12-CV-971 (DAB) (KNF)
SUPERINTENDENT PATRICK GRIFFIN,
ACTING DIRECTOR OF S.H.U.                              :
D. VENNETTOZZI,[1] LT. T. LEVAC,
D.S.S. R. COVENY, DIRECTOR ALBERT                      :
PRACK,
                                                       :
                              Defendants.
--------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## PROCEDURAL HISTORY

Eric Tolliver commenced this action pursuant to 42 U.S.C. § 1983 against C.O. J. Skinner

("Skinner"), D.S.A. Lynn Lilley ("Lilley"), D.S.P. L. Malin ("Malin"), Superintendent Patrick

Griffin ("Griffin"), Commissioner Brian Fischer, Director of S.H.U. Albert Prack ("Prack") and

Acting Director of S.H.U. D. Venettozzi ("Venettozzi"), alleging violations of his constitutional

rights arising out of the September 11, 2011 visit of his fiancé, Kayan Grant ("Grant"), to him in

the Sullivan Correctional Facility ("SCF"), in New York, and the 2011 related disciplinary

hearing based on the September 11, 2011 misbehavior report ("the 2011 hearing"). The

defendants' motion to dismiss the complaint was granted, in part, and the plaintiff's "official

capacity claims for damages, his claims based on the issuance of an allegedly false misbehavior

report, his retaliation claims against Defendant C.O. J. Skinner and D.S.A. Lynn Lilley, and all

---

[1] This defendant's name is spelled Venettozzi in his answer. (Docket Entry No. 38).

1

claims against Commissioner Brian Fischer and Director of S.H.U. Albert Prack" were dismissed, leaving the following claims in the action: (a) procedural due process violations, in connection with the 2011 hearing; (b) retaliation, against Malin; and (c) due process violations, based on contact-visit restrictions, against Lilley.  (See Docket Entry Nos. 37 & 30).  Thereafter, the plaintiff supplemented his complaint, adding claims against Lt. T. Levac ("Levac"), D.S.S. R. Coveny ("Coveny") and Prack, alleging that they violated his "due process and constitutional right" in connection with the 2013 re-hearing, based on the September 11, 2011 misbehavior report ("the 2013 hearing").  (Docket Entry No. 57).  Before the Court are the parties' respective motions for summary judgment.  (Docket Entry Nos. 117, 160, 170).

## PLAINTIFF'S CONTENTIONS

Docket Entry No. 117

The plaintiff contends that summary judgment against Malin, Lilley, Griffin and Venettozzi is warranted because, on April 18, 2013, the New York State Supreme Court, Appellate Division, reversed the superintendent's decision affirming the hearing officer's decision that the plaintiff was guilty of violating certain prison disciplinary rules and ordered a new hearing "due to the fact that the 2011 hearing officer did not record all of the witnesses and the plaintiff's testimony."  The plaintiff asserts that it is undisputed that Lilley suspended, unlawfully, the "plaintiff's contact visit indefinitely without a formal hearing and prior notice, when the D.O.C.C.S. [New York State Department of Corrections and Community Supervision] own Directive-4403 stated that, even if the plaintiff was guilty, his contact visit could only be suspended for a maximum of (90) days."  Moreover, it is undisputed that the plaintiff appealed the 2011 hearing decision explaining that "the hearing officer was biased and partial when she refused to record the entire hearing," but the defendants, although "given a chance,  . . .  refused

2

to correct their wrongs and turn[ed] a blind eye and a deaf ear to the plaintiff's cry of his Due Process and Constitutional Violations."  In support of his motion, the plaintiff submitted his affirmation, Local Civil Rule 56.1 statement and: (a) Exhibit A, a Memorandum and Judgment in a New York Civil Practice Law and Rules Article 78 ("Article 78") proceeding, dated April 18, 2013, Tolliver v. Fischer, 105 A.D.3d 1239, 962 N.Y.S.2d 828 (App. Div. Third Dep't 2013), annulling the finding of guilty, after a Tier III disciplinary proceeding, for violating certain prison disciplinary rules, and a memorandum, dated "9/13/11," addressed to "DSP Malin," assigning Malin to hold the plaintiff's Tier III hearing; (b) Exhibit B, a discretionary review decision by Griffin addressed to the plaintiff, dated October 24, 2011, finding "no reason to modify the disposition" in the plaintiff's "Tier III hearing completed on October 5, 2011 by DSP Malin"; (c) Exhibit C, Lilley's September 13, 2011 letter to Grant stating that Grant's "visiting privileges with this inmate, both at Sullivan Correctional Facility or at any other NYS State Correctional Facility are now indefinitely limited to non-contact only" and New York Department of Correctional Services Directive No. 4403, dated "10/01/1991," and revised on "11/10/1993"; and (d) Exhibit D, Venettozzi's December 8, 2011 decision of the plaintiff's appeal of Malin's October 5, 2011 hearing decision.

Docket Entry No. 160

The plaintiff asserts that, upon remand following his initial Article 78 proceeding, he was found guilty for violating certain disciplinary rules for the second time by the defendants, and his appeal from that determination was denied by Prack.  Thereafter, the plaintiff's Article 78 petition was granted and the defendants' decision was reversed.  According to the plaintiff, upon another re-hearing, he was found guilty of the charges for the third time and his appeal was denied.  The plaintiff's filed another Article 78 petition.  However, on March 4, 2016, prior to

3

responding to the plaintiff's Article 78 petition, the defendants reversed, administratively, the March 4, 2015 hearing decision and expunged the charges from his disciplinary record.  The plaintiff contends that it is undisputed that Malin was biased and partial during the 2011 hearing when she failed to record the plaintiff and his witnesses' testimony, as required by law.  He maintains it is undisputed that his appeal to Griffin was denied and Lilley suspended the plaintiff's contact visits, indefinitely, without a formal hearing or prior notice, despite the rule that provides for contact visits to be suspended only for a maximum of ninety days.  The plaintiff asserts that Levac was biased in conducting the 2013 hearing and he tampered, intentionally, with the hearing record, violating the plaintiff's right to have a fair hearing officer conduct the hearing.  Coveny and Prack denied the plaintiff's rights when they affirmed the 2013 hearing decision.  Thereafter, the defendants decided not to oppose the plaintiff's Article 78 petition, reversed the hearing determination and expunged the charges from his record.

In support of his motion, the plaintiff submitted his affirmation, Local Civil Rule 56.1 statement and: (1) Exhibit A, the defendants' March 9, 2016 request to the  Clerk of the Court for the New York State Supreme Court, Appellate Division, Third Department, for an extension of time to file the response to the plaintiff's Article 78 petition, the March 15, 2016 letter to the Clerk of the Court for the New York State Supreme Court, Appellate Division, Third Department, informing that the hearing determination at issue had been administratively reversed and all references to the disciplinary hearing expunged from the plaintiff's record, and the March 4, 2016 administrative reversal of the March 4, 2015 hearing decision; (2) Exhibit B, the April 18, 2013, Article 78 decision; (3) Exhibit C, the October 24, 2011 discretionary review decision by Griffin and the September 13, 2011 letter from Lilley to Grant; (4) Exhibit D, DOCCS's Directive No. 4403; (5) Exhibit E, the December 8, 2011 review of the superintendent's hearing

decision, by Venettozzi; (6) Exhibit F, the February 5, 2015, Article 78 decision, Superintendent

Hearing Disposition Rendered by Levac, May 15, 2013 Memorandum to Levac from Michael

Sheahan and the plaintiff's grievances dated May 24, and July 26, 2013; and (7) Exhibit G, the

plaintiff's request for discretionary review, dated July 16, 2013, the plaintiff's August 11, 2013

follow-up letter on his request for discretionary review, the August 13, 2013 discretionary review

decision by Coveny, the plaintiff's August 20, 2013 letter to Coveny and the August 28, 2013

discretionary review decision by Coveny; and (8) Exhibit H,  Prack's September 23, 2013

Review of Superintendent's Hearing and the plaintiff's interrogatories and requests for

production of documents, pursuant to Local Civil Rule 33.2 of this court.

## DEFENDANTS' CONTENTIONS

Defendants' Contentions in Opposition to the Plaintiff's Motion for Summary Judgment

The defendants contend that the plaintiff's Rule 56 statement violates Local Civil Rule

56.1 of this court because it includes, improperly, legal arguments.  They assert that the

plaintiff's "second re-hearing" in 2015 is not the subject of the complaint or supplemental

complaint, and none of the defendants have been involved in the 2015 second re-hearing.  The

defendants maintain that the plaintiff's summary judgment motion must be denied because the

defendants "have disputed plaintiff's factual allegations" in their answers and declarations, and

they "adopt their arguments in favor of their motion for summary judgment."  The defendants

assert that the Article 78 decisions against the Commissioner do not dispose of any issues

material to this action because the defendants have not been parties to the Article 78 proceedings

and the Article 78 decisions do not make reference to any constitutional violation alleged in this

action or make factual findings regarding the plaintiff's allegations.

The defendants assert it is undisputed that "the recordings of the disciplinary hearings in question suffered from inaudible gaps," but "[w]hat is disputed is whether DSP Malin and Levac had any role in intentionally creating those inaudible gaps and whether the presence of those inaudible gaps even amounts to a constitutional violation as the creation of an audio recording of a prison disciplinary hearing or a transcription is not constitutionally mandated."  Moreover, it is not "constitutionally mandated that a recording or a transcript be reviewed in connection with any administrative review of a disciplinary hearing"; thus, "any due process claim based on an inaudible hearing tape against a supervisor who alleged [sic] reviewed the disciplinary hearing" must fail.  According to the defendants, Skinner's testimony and misbehavior report constitute "some evidence" of the plaintiff's misconduct and that is sufficient to support the finding of guilt at the disciplinary hearings at issue.

The defendants maintain that DOCCS rules do not require a hearing in the first instance to suspend a facility visitor's contact visitation privileges, and Lilley acted in good faith when making the determination to suspend, indefinitely, Grant's contact visit privileges.  The defendants assert that "contact visit privileges in New York do not create a liberty interest and their termination or suspension does not implicate the Due Process Clause."  Moreover, the plaintiff has no standing to sue regarding the suspension of Grant's contact visit privileges.

The defendants contend that the plaintiff's retaliation claim against Malin fails, as a matter of law, because: (a) Malin disputes that claim; and (b) no temporal proximity exists between the plaintiff's filing of a lawsuit against Green Haven Correctional Facility Deputy Superintendent Cunningham "approximately three years prior to September 2011," and Malin's finding of guilt against the plaintiff.  Moreover, the plaintiff's retaliation allegation "was not raised until the instant litigation was initiated," which demonstrates that the plaintiff's claim that

6

his 2008 lawsuit was "Malin's motivation for retaliation is fabricated."  The plaintiff failed to exhaust his retaliation claim against Malin because he never claimed that Malin retaliated against him based on "a lawsuit against DSP Cunningham."

The defendants assert that Levac's guilty determination does not implicate a liberty interest because the plaintiff "served no penalties" and "no time in SHU" (segregated housing unit) as a result.  Moreover, the defendants are entitled to qualified immunity, given "the lack of clearly established law" supporting the plaintiff's liberty interest violations claim and "the imposition of no penalty at all clearly cannot implicate a liberty interest if penalties of up to ninety days in SHU are routinely held by the Second Circuit to not implicate a liberty interest." Additionally, the penalty imposed here, which has since been expunged, "is at most a *de minimis*, non-constitutional, injury that is not actionable here."  The defendants assert that "[i]t would be an inconsistent result for due process claims to survive summary judgment for placement of a plaintiff in SHU when such claims would be dismissed against defendants who had, for example, imposed a ninety-day SHU penalty on a plaintiff."

The defendants contend that the plaintiff's claims against Griffin and Coveny raise disputed factual issues and must fail, as a matter of law, because no constitutional right to discretionary review exists.  Under DOCCS Directive No. 4932, Griffin and Coveny "were powerless to vacate guilty determinations via a discretionary review; they could only reduce the penalty," and an inmate seeking to reverse or vacate a decision must appeal to the DOCCS commissioner, not a superintendent, "under section 254.8."  Griffin made a good faith determination  that no basis existed to modify the penalties imposed by Malin, and Coveny made a good faith determination that "he had nothing to review based on his review of the record." The defendants assert that Griffin's and Coveny's denials of discretionary review and Griffin's

denial of a grievance did not raise any constitutional issues and are insufficient to establish

personal involvement in any alleged constitutional violations.  Similarly, the plaintiff's claims

against Venettozzi and Prack raise disputed factual issues and fail as a matter of law.  The

defendants assert that, "even if the Court deems AD Venettozzi and Director Prack to be

personally involved because they each approved recommendations made by SHU staff, . . . there

was nothing unconstitutional about those decisions because" Malin's and Levac's actions were

not unconstitutional.

      The defendants assert that they are entitled to qualified immunity because "there is no

clearly established law" that an inmate has a right to: (1) "due process protections concerning

contact visit privileges"; (2) a "recording (or transcription) of a disciplinary hearing and to have

any such recording or transcript reviewed on any appeal"; (3) "have redundant testimony and

evidence admitted at a hearing"; (4) "have due process protections in a discretionary review or to

have a discretionary review vacate a determination when regulations do not allow it"; (5) "[have]

an inmate . . . present at their [sic] disciplinary hearing"; (6) "have due process protection where

no additional penalty is imposed at a disciplinary hearing other than finding the inmate guilty of

charges"; (7) "[a] protected liberty interest in not having a guilty finding on a disciplinary record,

even when it does not impact time spent in SHU"; (8) "[require] a hearing officer to personally

confirm that an inmate who has refused to attend a disciplinary hearing has timely received a

copy of the written disposition"; (9) "[require] a hearing officer to personally confirm that an

inmate receives the hearing disposition immediately after it is rendered"; and (10) "[a f]inding

[that] a defendant [is] personally involved in a constitutional violation for affirming a grievance

or disciplinary determination."  Moreover, as stated in their declarations, the defendants

"reasonably believed that their actions were lawful and are thus entitled to qualified immunity"

and, even if the defendants "exercised poor judgment or made mistakes in taking the actions they allegedly took, qualified immunity still protects them from liability."

<u>Defendants' Contentions in Support of their Motion for Summary Judgment</u>

In addition to the defendants' contentions in their opposition to the plaintiff's motion, the defendants assert that Malin's denial of the plaintiff's request to call Marvette Lewis, the wife of the plaintiff's inmate witness, Zachary Lewis, as a witness does not show bias and did not violate the plaintiff's due process rights because her testimony "would have been redundant of Mr. Lewis's testimony that he did not observe Plaintiff and his visitor engaging in sexual activity." Thus, the plaintiff was not harmed by the absence of that testimony and "precluding redundant testimony does not violate due process." Moreover, the conclusory characterization of Malin's denial of Marvette Lewis's testimony as bias, without more, is insufficient to raise an issue of fact and no link exists between that denial and the finding of guilt, since Malin assumed that Marvette Lewis's testimony would support the plaintiff's defense.

The defendants contend that Malin's preclusion of the photographs of the Sullivan Correctional Facility visiting room windows is not actionable and does not show unconstitutional bias because Malin denied the request "as unnecessary and redundant because two corrections witnesses testified that the windows in question were not one-way windows, but rather, that they were two-way windows, as did Zachary Lewis, an inmate witness called by Plaintiff." It was not unreasonable for Malin to rely on the testimony of those witnesses, as well as her own familiarity with the windows at issue and the photographs would not have changed Malin's determination.

The defendants maintain that the plaintiff's characterization of Skinner's testimony that he was "not familiar" with the plaintiff is not actionable and does not show unconstitutional bias,

notwithstanding the plaintiff's allegation that Skinner testified he knew the plaintiff, "but that portion of the hearing recording is inaudible." Whether Skinner and the plaintiff had previous interactions was not material to Malin's determination and would not have changed it. The defendants contend that the state-law requirement that a Tier III disciplinary hearing be recorded "is not a constitutional one," and "[i]t is well established that state rules and regulations do not create constitutional rights enforceable under § 1983."

According to the defendants, the plaintiff alleged that Levac was biased "due to their purported prior dealings when Plaintiff was a member of the Five Points ILC [the Inmate Liaison Committee] and that Plaintiff concluded, after having the opportunity to review the recording of the hearing, that Lt. Levac had tampered with the recording of the hearing." However, the plaintiff "makes no factual allegations in his pleading or referenced documents showing that [Levac's] alleged bias or alleged tape tampering affected Lt. Levac's determination." The defendants assert that the plaintiff "has taken issue with Lt. Levac not providing him with photographs of the visiting room windows, but like DSP Malin, Lt. Levac also determined that witness testimony on the issue was sufficient and that photographs raised security concerns." The defendants maintain that any inference by the plaintiff that Levac tampered with the recordings of the 2013 hearing is conclusory, speculative and not based on any observation or knowledge, and the plaintiff is not an expert on audio recordings; thus he is unable to determine whether an intentional tampering with the recording occurred. Furthermore, the plaintiff "has come forward with no evidence to rebut Lt. Levac's testimony that portions of the recording were simply accidentally recorded over," and since "an audio recording of the re-hearing was not constitutionally mandated," and "Levac imposed no penalty that implicated a liberty interest," no due process violation occurred as a result of Levac's alleged tampering with the recording.

10

The defendants assert that, in connection with the plaintiff's claim that his "due process rights were violated because he refused to attend parts of his hearing and he was not advised of any rights he waived by doing so," the plaintiff "acknowledged that he refused to attend parts of the hearing, and even admitted at his deposition to having signed a Refusal to Attend Form, albeit not the same form made part of the record on the re-hearing."  The defendants maintain that "Levac confirmed on the record at the re-hearing that officers had sought to have Plaintiff come to the re-hearing, but that Plaintiff refused to do so, and that a Refusal to Attend form advising Plaintiff of rights he may be waiving was presented to Plaintiff for his signature." Levac denies that he threatened the plaintiff during the 2013 hearing.  The defendants assert that a hearing officer is not required to interview an inmate personally to insure voluntary waiver of appearance, and the steps taken by Levac "were more than sufficient."  According to the defendants, "due process does not require that an inmate attend his disciplinary hearing, especially when he refuses to attend," and it is not a due process violation to take the testimony of a witness outside the presence of an inmate at a disciplinary hearing.

The defendants assert that the plaintiff does not allege any facts supporting his claim that Levac, or any other defendant, "was personally involved in Plaintiff's alleged failure to timely receive Lt. Levac's disposition" and he acknowledges that he received the June 11, 2013 disposition by at least mid-July 2013, several weeks after it was issued, which is not the type of delay that implicates due process requiring only "that the report ultimately be provided." Moreover, the plaintiff "cannot point to any prejudice as a result of not receiving it in a timely fashion" since his administrative appeal was not denied as untimely.

In support of their contentions, the defendants submitted their Local Civil Rule 56.1 statement and counter-statement, exhibits and declarations by Maria Hartofilis, the defendants'

11

attorney, Malin, Lilley, Griffin, Venettozzi, Levac, Coveny, Prack and Jeffrey Hale ("Hale"),

assistance director, Inmate Grievance Program, New York State Department of Corrections and

Community Supervision.

## PLAINITFF'S CONTENTIONS IN REPLY AND IN OPPOSITION TO THE DEFENDANTS' MOTION

The plaintiff contends that Malin stated, falsely, in her declaration that she did not state at

the hearing that she was a friend of Cunningham's or mention the plaintiff's pending lawsuit

against him, of which she was unaware at the time of the hearing.  Malin failed to explain how

the plaintiff would know that Malin knows Cunningham and "that they were friends and had

came [sic] up through the ranks."  Moreover, Malin stated, falsely, that Zachary Lewis "testified

that the windows were two-way and that while he was in the courtyard near Plaintiff, he had a

clear vision of officers inside the visiting room and those officers had a clear of view of him,"

referring to page No. 45 of Exhibit B attached to Malin's declaration, which is a copy of the

transcript of the audio recording of the 2011 hearings.  According to the plaintiff, contrary to

Malin's false assertion, page No. 45 shows that Zachary Lewis "was not talking about the

officers being able to see us through the windows"; rather, he was stating that "where the

plaintiff and Mr. Lewis was [sic] standing at the time, was in clear view of the officers station

where they was [sic] all standing and sitting down, and that they could all see us through the

open yard door."  The plaintiff asserts that Zachary Lewis's testimony "had nothing whatsoever

to do with the windows being one-way," and Malin "knows that to be a fact, yet still she is trying

to mislead the Court into believing that Mr. Lewis was testifying concerning the windows."

The plaintiff asserts that Malin claims, falsely, that "she had made a typographical error

on the disciplinary disposition sheet, when she states that the hearing started on September 16,

2011, when, in fact, it started on September 20, 2011," referring to Exhibit C attached to her declaration.  However, Malin "not only forges the disposition sheet, but she also forges the date on the letter from the Superintendent to her dated September 13, 2011, telling her that plaintiff's hearing is to begin no later than September 17, 2011, she forges the date from 9/17/2011 to that of 9/20/2011."

The plaintiff asserts that Griffin's contention that he was powerless to vacate or correct Malin's guilty determination or unlawful conduct is contrary to the Second Circuit law stating that he has power to correct any wrong by his subordinates once it is brought to his attention. Moreover, Griffin's personal involvement is stated sufficiently by the facts that Griffin received and acted on the plaintiff's grievance.

The plaintiff points out the contradiction between Lilley's statement, in his declaration, that he was suspending Grant's "ability to have contact visits with any DOCCS inmate," with the words of Lilley's September 13, 2011 letter to Grant, stating that "your visitation privileges with this inmate, both at Sullivan Correctional Facility or at any other NY State Correctional Facility are now indefinitely limited to non-contact only."  Moreover, the regulations do not give Lilley the authority to suspend privileges indefinitely.  The plaintiff contends that Lilley stated in his declaration "that the indefinite suspension was not to punish the plaintiff but was to punish Ms. Grant," but Lilley stated that he believes in "the enhanced suspension periods in cases involving particularly egregious behavior and where the inmate had been disciplined for visitation-related violations in the past."  However, if Lilley was "not suspending the visit to punish the plaintiff but Ms. Grant, then why is he using the plaintiff's past record to punish Ms. Grant?"; thus, Lilley's declaration is contradictory and should be rejected as incredible.

Concerning Venettozzi, the plaintiff contends that his argument that he did not review personally the plaintiff's appeal and he acted on a recommendation from staff is meritless because: (1) no evidence was presented from any staff member to support this proposition; and (2) his argument that, as a high ranking official who has the last word on an inmate's appeal, he only "rubber stamped" the disciplinary determination without reviewing it, is incredible.

With respect to Levac, Coveny and Prack, the plaintiff contends that their argument, that the plaintiff's claims fail because he did not serve any SHU time as a result of their actions and inactions, is meritless. The defendants ignore "the unique circumstances of this case," and that the "2013 re-hearing found plaintiff guilty of disciplinary charges that were first instituted in 2011 and resulted in penalties that included six months in SHU. Thus, while the 2013 re-hearing did not impose <u>additional</u> SHU time, the underlying charge and penalty imposed an 'atypical and significant hardship' on plaintiff and the charge remains on plaintiff's disciplinary record as a result of the 2013 re-hearing decision at issue here." The plaintiff points to the contradictory nature of Levac's statements in his declaration that "I generally do not review the recording of hearings before I render disciplinary disposition and did not do so in this instance," but also that: (a) "[d]uring the course of the re-hearing, I unintentionally recorded over, with the testimony of another witness, part of the testimony of Officer Skinner that had previously been provided"; and (b) "[a]fter I realized I had recorded over a portion of his testimony, I called Officer Skinner to re-testify by telephone on June 11, 2013, as is reflected at pages 37-39 of Exhibit C." The plaintiff urges the Court to reject Levac's testimony as untruthful.

## DEFENDANTS' CONTENTIONS IN REPLY

In response to the plaintiff's contention that Malin forged the dates on certain documents, the defendants contend that Malin "explained the typographical error in the Hearing Disposition,

in which she inadvertently wrote that the hearing started on September 16, 2011, on one section, when all other documentation concerning the hearing clearly stated that the hearing began on September 20, 2011."  Concerning the September 13, 2011 memorandum attached as Exhibit B to the plaintiff's opposition, purportedly showing Malin forged the date on that document "because a notation that the hearing is to begin no later than September 17, 2011, is crossed out and replaced with September 20," the defendants assert it "is clear from the document [that] no attempt is made to obscure the fact that the document originally contained a September 17, 2011 date, making Plaintiff's assertions regarding a sinister motive purely speculative." Notwithstanding these errors, Malin explained that she received permission to begin the hearing on September 20, 2011.  According to the defendants "[t]he original September 17, 2011 date was crossed out and replaced with September 20, not by DSP Malin, but rather, by staff in the Sullivan disciplinary office, presumably to indicate that the new deadline to commence the hearing had been granted and was in effect."  In her reply declaration, Malin stated that she did not cross out the September 17, 2011 deadline or write in a September 20, 2011 deadline.  Malin attached to her declaration a copy of the request for an extension of time to conduct the hearing since she was not available on September 16, 2011, which was granted.  Moreover, she stated that the extension number 11-EC-3726 is noted in the Hearing Record Sheet, attached as Exhibit B to the plaintiff's opposition, which contains a section in which Malin "superimposed the number '20' over the number '16' in the 'Hearing Begin' section to indicate that the start of the hearing was extended to September 20, 2011, from September 16, 2011."  Malin also stated that her May 27, 2016 declaration "contains two typographical errors, in which I refer to the hearing transcript as Exhibit C when it is, in fact, Exhibit B to my declaration."  According to the defendants, a minor delay of the hearing "could not be a constitutional violation" because state

law does not create a "federally protected due process entitlement to specific state-mandated procedures." Concerning the plaintiff's contention, that Malin must have been aware, in September 2011, of the plaintiff's lawsuit against Cunningham because part of her duties was to arrange related court conferences, "is incorrect" because Malin never had any role in scheduling conferences while she was at Sullivan and Sing Sing correctional facilities; thus, the plaintiff's conclusory allegations about Malin's purported awareness of his lawsuit and her friendship with Cunningham are "not based on factual evidence" and must be rejected as speculative. Moreover, the plaintiff's due process claim against Malin fails because he does not dispute: (a) that some evidence supported Malin's finding of guilt; (b) that Malin acted in good faith when she precluded the testimony of Marvette Lewis and declined to provide visiting room photographs; and (c) Malin's characterization of Skinner's testimony in the hearing disposition. Malin stated that she "understood Mr. Lewis's testimony – 'I was close to the officer's desk. I don't know how many feet, but I was [sic] clear vision of them and they were in clear vision of me' – to mean he could see the officers in the visiting room through the windows in question that day and that they could see him."

The defendants assert that the plaintiff does not dispute the fact that Griffin was not authorized to vacate Malin's disciplinary decision or that no constitutional mandate exists to review audio recordings by officials reviewing disciplinary determinations. The plaintiff also does not dispute that no liberty interest is created by New York contact visit privileges regulations, regardless of whether Lilley was incorrect in his belief that he may suspend Grant's contact privileges indefinitely. According to the defendants, the plaintiff "may believe that AD Venettozzi was required to conduct an exhaustive and detailed review of each administrative appeal he decides, and he is personally involved for the purposes of Section 1983 in every appeal

he decides," but "this is simply not possible given the thousands of appeals he decides each year."  Venettozzi stated in his declaration that he relied solely on his staff in affirming Malin's decision and his "staff typically do not review the audio recordings of disciplinary hearings in making recommendations," and "also typically do not review a transcript of those proceedings or have one available to them to review."  Venettozzi stated that the "June 11, 2013 disciplinary determination rendered against Plaintiff concerning the same conduct addressed by the October 5, 2011 determination was expunged from Plaintiff's disciplinary record."  Attached to Venettozzi's declaration is Exhibit C, consisting of three pages authored by Venettozzi.  The last page of Exhibit C, entitled "Review of Superintendent's Hearing" states: "On behalf of the Commissioner, please be advised that your superintendent's hearing of June 11, 2013, has been reviewed and administratively reversed on February 11, 2015.  Commence and complete rehearing within 14 days of receipt of this notice."  Venettozzi also stated that Exhibit D, attached to his declaration, shows the plaintiff's DOCCS disciplinary history as of May 23, 2016, and "[a]ll references to discipline concerning Plaintiff allegedly engaging in sexual acts on September 11, 2011, have been expunged from his record."  The defendants contend that, since some evidence supports Malin's decision, "the finding of guilt was constitutional, even if state regulations may have called for a new hearing to be held due to gaps in the hearing recording/transcript."

The defendants contend that the plaintiff does not dispute that Levac's determination of guilt was supported by some evidence or Levac's explanation of "why he denied certain evidentiary requests or his denial of tampering with the recording of the hearing, or his explanation of the steps to confirm that Plaintiff voluntarily refused to attend a portion of the re-hearing."  The defendants maintain that the plaintiff disputes Levac's explanation that he

recorded, accidently, over a portion of the hearing requiring him to call Skinner to testify again, but the plaintiff "provides no factual arguments to support his assertions, only speculation. Having failed to allege facts that demonstrate that Lt. Levac's actions were anything but unintentional, summary judgment must be granted in favor of Levac (and DSS Coveny and Director Prack), on all claims based on Lt. Levac allegedly tampering with the hearing recording."

## PLAINTIFF'S OBJECTION TO LEVAC'S REPLY DECLARATION

The plaintiff objected to Levac's declaration, submitted in reply and dated June 23, 2016, as untimely and requested that it be rejected because it was "unsigned and un-sworn."  The defendants did not oppose the plaintiff's request.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Id. at 255, 106 S. Ct. at 2513.  In deciding a summary judgment motion, "[t]here is no requirement that the trial judge make findings of fact.  The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine

18

factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party."  Id. at 250, 106 S. Ct. at 2511.  Thus, summary judgment is

improper "[i]f reasonable minds could differ as to the import of the evidence."  Id.

> To succeed on a claim for violation of civil rights under 42 U.S.C. § 1983, plaintiffs
> must show that state officials, acting under color of state law, deprived plaintiffs of
> a right guaranteed them by the Constitution or laws of the United States.  Moreover,
> defendants' actions at that time must have been objectively unreasonable in light of
> clearly established federal law; otherwise, those actors are entitled to qualified
> immunity.

> Rodriguez v. Phillips, 66 F.3d 470, 473 (2d Cir. 1995).

"In order to state a claim under 42 U.S.C. § 1983 for denial of procedural due process . . . the

plaintiffs are required to demonstrate that they have a protected liberty interest."  Bailey v.

Pataki, 708 F.3d 391, 399 (2d Cir. 2013).  "It is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).

> The personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

> Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

It is undisputed that the defendants, at all relevant times, acted under color of state law.

## LEVAC'S REPLY DECLARATION

The plaintiff is correct that Levac's reply declaration is unsigned.  (See Docket Entry No.

207).  The defendants' request for an extension of time to prepare and file a reply, including reply

declarations, was denied for failure to show good cause to modify the motion schedule.  (Docket

Entry No. 203).  Accordingly, Levac's unsigned reply declaration will not be considered by the Court when determining the instant motions.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES: RETALIATION CLAIM AGAINST MALIN

"The Prison Litigation Reform Act of 1995 ("PLRA") mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.  42 U.S.C. § 1997e(a)."  Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1854-55 (2016).  "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.  The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"  Id. at __, 136 S. Ct. at 1862.

Hale states in his declaration that, in his capacity as custodian of records maintained by the Central Office Review Committee ("CORC"), he conducted a search of CORC's database for records of appeals to CORC of grievances filed by the plaintiff and found no reference to Malin retaliating against the plaintiff during the 2011 hearing because of his filing a lawsuit against any prison officials, including Deputy Superintendent Cunningham.  Attached to Hale's declaration are the plaintiff's grievances in connection with the September 2011 misbehavior report and the related 2011 hearing, none of which alleges retaliation against the plaintiff by Malin.  The plaintiff does not challenge the defendants' evidence that he failed to exhaust administrative remedies and he does not assert that the administrative remedies were not available to him in connection with his claim, raised for the first time in this action, that Malin retaliated against him because of his previous lawsuit against Cunningham.  Accordingly, granting summary judgment in Malin's favor on the plaintiff's claim of retaliation against Malin, based on the undisputed evidence that the plaintiff failed to exhaust administrative remedies, is warranted.

# QUALIFIED IMMUNITY

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736 (1982). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S. Ct. at 2738. "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Id. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." Reichle v. Howards, __ U.S. __, 132 S. Ct. 2088, 2093 (2012) (quotation marks and citations omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. Al-Kidd, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011). The Supreme Court has "'told courts . . . not to define clearly established law at a high level of generality.' The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Mullenix v. Luna, __ U.S. __, 136 S. Ct. 305, 308 (2015) (quoting Al-Kidd, 563 U.S. at 742, 131 S. Ct. at 2074). The Supreme Court has "explained that the right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."

21

Reichle, __ U.S. __, 132 S. Ct. at 2094 (citations omitted).  The Supreme Court explained that

defining clearly established law at a high level of generality "avoids the crucial question whether

the official acted reasonably in the particular circumstances that he or she faced."  Plumhoff v.

Rickard, __ U.S. __, 134 S. Ct. 2012, 2023 (2014) (quoting Al-Kidd, 563 U.S.at 742, 131 S. Ct.

at 2084).  "Qualified immunity gives government officials breathing room to make reasonable

but mistaken judgments about open legal questions.  When properly applied, it protects 'all but

the plainly incompetent or those who knowingly violate the law.'"  Al-Kidd, 563 U.S. at 743,

131 S. Ct. at 2085 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986)).

"[P]risoners retain rights under the Due Process Clause," but those rights are "subject to

restrictions imposed by the nature of the regime to which they have been lawfully committed.

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539,

556, 94 S. Ct. 2963, 2975 (1974) (citations omitted).

> [T]he Due Process Clause does not require a hearing 'in every conceivable case of
> government impairment of private interest.'  But the State having created [a certain]
> right . . . and itself recognizing that its deprivation is a sanction authorized for major
> misconduct, the prisoner's interest has real substance and is sufficiently embraced
> within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures
> appropriate under the circumstances and required by the Due Process Clause to
> insure that the state-created right is not arbitrarily abrogated.
>
> Id. at 557, 94 S. Ct. at 2975.

"[A] person's liberty is . . . protected, even when the liberty itself is a statutory creation of the

State.  The touchstone of due process is protection of the individual against arbitrary action of

government."  Id. at 558, 94 S. Ct. at 2976.  "[C]onsideration of what procedures due process

may require under any given set of circumstances must begin with a determination of the precise

nature of the government function involved as well as of the private interest that has been

affected by governmental action." Id. at 560, 94 S. Ct. at 2977. The following minimum requirements of procedural due process have been extended to inmates facing prison discipline: (1) a "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense"; (2) "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action"; (3) an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (4) "[w]here an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." Id. at 564-71, 94 S. Ct. at 2979, 2982.

### 1. *"A right to due process protections concerning contact visit privileges" (Claim against Lilley)*

"The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461, 109 S. Ct. 1904, 1909 (1989) (citation omitted). However, "state law may create enforceable liberty interests in the prison setting." Id. The Supreme Court explained:

> The fact that certain state-created liberty interests have been found to be entitled to due process protection, while others have not, is not the result of [the Supreme] Court's judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations. Stated simply, "a State creates a protected liberty interest by placing substantive limitations on official discretion." A State may do this in a number of ways. Neither the drafting of regulations nor their

interpretation can be reduced to an exact science.  Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met. . . . We have also articulated a requirement, implicit in our earlier decisions, that the regulations contain "explicitly mandatory language," *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest. . . .  [T]he use of "explicitly mandatory language," in connection with the establishment of "specified substantive predicates" to limit discretion, forces a conclusion that the State has created a liberty interest.

Id. at 461-63, 109 S. Ct. at 1909-10 (citations omitted).

In examining regulations, courts "search . . . for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question."  Id. at 463 n.4, 109 S. Ct. at 1910 n.4.  One "example of irrelevant mandatory language is the following: "A visitor who is denied a visit *will not* be allowed to visit an inmate for up to six (6) months following the incident . . . This language refers only to the penalty to be imposed once an individual is found to be unfit to visit, and has no role to play in guiding prison officials' discretion in deciding whether to exclude a visitor in the first instance."  Id. at 464-65 n.4, 109 S. Ct. at 1910-11 n.4.  For example, regulations may provide that

[v]isitors *may* be excluded if they fall within one of the described categories, . . . but they need not be.  Nor need visitors fall within one of the described categories in order to be excluded.  The overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions.

Id. at 464-65, 109 S. Ct. at 1911.

The plaintiff contends, in his summary judgment motion, that Lilley violated his rights because Lilley "suspended plaintiff's contact visit indefinitely without a formal hearing or prior

notice" and contrary to regulations, which provide that "his contact visit could only be suspended for a maximum of (90-days)."   It is undisputed that Lilley suspended Grant's contact visit privileges with the plaintiff, not the plaintiff's, indefinitely, as noticed in Lilley's September 13, 2011 letter to Grant.  At the time of the alleged violation, New York's Compilation of Codes, Rules and Regulations ("NYCRR") provided:

> Pursuant to the procedures set forth in this section, a superintendent may deny, limit, suspend or revoke the visitation privileges of any inmate or visitor to visit each other if the superintendent has reasonable cause to believe that such action is necessary to maintain the safety, security, and good order of the facility.

> 7 NYCRR § 200.5 (a).

> Contact visiting rights may be suspended by the superintendent for a violation of visiting rules and regulations which represents a threat to the safety, security, and good order of the facility.  However, grounds for the suspension of contact visiting rights shall be limited to the following: (i) the passing or attempted passing of contraband between an inmate and a visitor; or (ii) socially unacceptable physical contact between an inmate and visitor (including sexual activities or assaultive behavior).  . . . Contact visiting privileges may be suspended, limited, or revoked for either a visitor or an inmate depending upon who committed the misconduct resulting in such termination, limitation or suspension.

> 7 NYCRR § 200.5 (a)(3).

New York regulations also provided: "Upon suspension or revocation, the superintendent shall notify the visitor in writing of his action."  7 NYCRR §§ 200.5 (b)(1), 200.5(c)(1).

The regulations respecting contact visit suspension lack the requisite mandatory language because they provide that "[c]ontact visiting rights **may** be suspended by the superintendent" upon the occurrence of one of two "substantive predicate" acts, namely, "the passing or attempted passing of contraband between an inmate and a visitor" or "socially unacceptable physical contact between an inmate and visitor (including sexual activities or assaultive behavior."  7 NYCRR § 2005.5(a)(3) (emphasis added).  The regulations respecting contact visit

suspension do not require that a particular result be reached upon a finding that the substantive predicates are met, unlike, for example, the regulations respecting visit termination, mandating the following:

> A visit will be terminated immediately if any of the following misconduct takes place: (i) visitor or inmate becomes apparently under the influence of alcohol or drugs during a visit; (ii) unapproved parties continue to cross-visit after a warning is given by facility staff; (iii) a visitor or inmate refuses to follow instructions given by facility staff or facility rules; (iv) visitor or inmate attempts to introduce or pass contraband to the other as defined in sections 200.3(b)(5) of this Part; (v) assault on facility staff, inmate, or other visitors.
>
> 7 NYCRR § 200.5(a)(2).

The duration of the penalty imposed on Grant once she was found unfit to visit had no role to play in guiding Lilley's discretion in deciding whether to exclude her in the first instance. See Thompson, 490 U.S. at 464 n.4, 109 S. Ct. at 1910-11 n.4. Even assuming that Lilley suspended the plaintiff's, and not Grant's, contact visit privileges, the regulations respecting contact visit suspension are not worded in such a way that the plaintiff could expect reasonably to enforce them against Lilley. Therefore, the regulations concerning contact visit suspension "do not establish a liberty interest entitled to the protections of the Due Process Clause." Id. at 465, 109 S. Ct. at 1911. Moreover, the regulations concerning a contact-visit suspension, at the time of Grant's contact visit suspension by Lilley, did not require "a formal hearing or prior notice" before suspension and they do not prohibit an indefinite contact-visit suspension "without a formal hearing or prior notice," as the plaintiff contends. The Court finds that no clearly established law existed at the time of the alleged violation establishing the right to due process protection concerning contact visit privileges. Accordingly, Lilley is entitled to qualified immunity.

**2.** ***"A right to recording (or transcription) of a disciplinary hearing and to have any such recording or transcript reviewed on any appeal" (Claims against Malin, Levac, Griffin, Coveny, Venettozzi and Prack)***

<u>Malin and Levac</u>

Contrary to the defendants' contention "that state rules and regulations do not create constitutional rights enforceable under § 1983," it is clearly established that "state law may create enforceable liberty interests in the prison setting." <u>Thompson</u>, 490 U.S. at 461, 109 S. Ct. at 1909. "[A] State creates a protected liberty interest by placing substantive limitations on official discretion," such as using "explicitly mandatory language," which "forces a conclusion that the State has created a liberty interest." <u>Id.</u> at 462-63, 109 S. Ct. at 1909-10. At the time of the alleged violations in 2011 and 2013, New York regulations provided that, when conducting a Tier III superintendent's hearing, "[t]he entire hearing must be electronically recorded." NYCRR § 254.6 (a)(2). The explicit mandatory language used in New York's regulation that "[t]he entire hearing must be electronically recorded," forces a conclusion that New York created a liberty interest for an inmate to have his or her superintendent's hearing recorded in its entirety. Accordingly, at the time of the alleged violations in 2011 and 2013, it was clearly established that New York inmates had a constitutional due process right to have their entire superintendent's hearing recorded. It is undisputed that a portion(s) of the 2011 hearing conducted by Malin was inaudible and that a portion(s) of the 2013 hearing conducted by Levac was altered. It is also undisputed that Malin and Levac knew of the plaintiff's right to have his superintendent's hearings recorded in their entirety because: (a) Malin stated at the 2011 hearing that "[t]he entire proceeding is recorded"; (b) Levac stated at the 2013 hearing that "our procedure is recorded"; and (c) they do not argue to the contrary.

27

The plaintiff asserted, under penalty of perjury, that Malin and Levac were biased against him when they interfered, intentionally, with the hearings' recordings. Malin and Levac denied that they acted intentionally. Whether: (a) Malin caused, intentionally, portions of the audio recording to be inaudible; and (b) Levac altered portions of the recording or otherwise interfered with the recording's audibility intentionally, are disputed material issues of facts going to the merits of the plaintiff's claims of bias and the defenses in this action to be determined by the jury and not to the elements of the qualified immunity defense. Since it is undisputed that, at the time of the alleged violations, the plaintiff's right to have his hearings recorded in their entirety was clearly established, which Malin and Levac knew, Malin and Levac are not shielded by qualified immunity for their failure to record the hearings in their entirety.

<u>Griffin</u>

It is undisputed that the plaintiff filed for a discretionary review of the 2011 superintendent's hearing decision made by Malin and that Griffin conducted a superintendent's discretionary review, pursuant to 7 NYCRR § 254.9, which provided at the time of the alleged violation that "[a]t any time during which a penalty imposed pursuant to a superintendent's hearing is in effect, the superintendent may reduce the penalty." It is also undisputed that, in conducting the discretionary review of the plaintiff's 2011 superintendent's hearing decision, Griffin reviewed the misbehavior report, the hearing disposition and other "paperwork included in the hearing packet," finding, on October 24, 2011, no reason to modify the penalty imposed by Malin. No regulation exists requiring that any specific evidence be reviewed on discretionary review by the superintendent. The Court finds that no clearly established law existed, at the time of Griffin's discretionary review, providing for the plaintiff to have the 2011 superintendent's hearing recording or transcript reviewed by Griffin in conducting a discretionary review. The

Court finds that Griffin is shielded by qualified immunity for failing to review the recording or the transcript from the 2011 superintendent's hearing.

Venettozzi

It is undisputed that, on December 8, 2011, Venettozzi affirmed the 2011 superintendent's hearing decision by Malin, pursuant to 7 NYCC § 254.8(a), and that he "did not conduct a review of the entire documentary record of that hearing," but "acted upon the recommendation of Special Housing Staff to affirm the October 5, 2011 disciplinary determination."  However, no evidence was presented by the defendants, showing that any person reviewed any evidence in connection with Venettozzi's December 8, 2011 affirmance of Malin's decision.  Venettozzi's December 8, 2011 decision was an appeal decision, not a discretionary review decision.  Since the plaintiff's right to have the entirety of his superintendent's hearing recorded, 7 NYCC § 254.6 (a)(2), and his right to appeal the disposition of the superintendent's hearing, 7 NYCC § 254.8, had been clearly established at the time of the alleged violations, and Venettozzi does not argue to the contrary, Venettozzi cannot be shielded by qualified immunity based on the argument that he "did not conduct a review of the entire documentary record of that hearing" and he "acted upon the recommendation of Special Housing staff."  That is so because disputed material issues of fact exist concerning what part(s) of the plaintiff's 2011 hearing record Venettozzi reviewed and who, if anyone, from his staff reviewed what part(s) of the plaintiff's 2011 hearing record, if any.  Since Malin's decision was based on the testimony of witnesses at the hearing, Venettozzi's failure to review that evidence and to act based on his staff's recommendation, implicates the plaintiff's fundamental right to due process. Accordingly, Venettozzi is not shielded by qualified immunity for failing to review the recording or the transcript from the 2011 superintendent's hearing.

29

Coveny

It is undisputed that the plaintiff filed for discretionary review of the 2013 superintendent's hearing decision made by Levac and that Coveny conducted a superintendent's discretionary review, pursuant to 7 NYCRR § 254.9, which provided at the time of the alleged violation that "[a]t any time during which a penalty imposed pursuant to a superintendent's hearing is in effect, the superintendent may reduce the penalty." It is undisputed that, in conducting the discretionary review, Coveny reviewed Levac's hearing decision, but not the recording or the transcript from the hearing, and determined that the plaintiff had no sanctions in effect; thus, no penalty existed that Coveny could modify, pursuant to 7 NYCRR § 254.9. No regulation exists requiring that any specific evidence be reviewed on discretionary review by the superintendent. The Court finds that no clearly established law existed, at the time of Coveny's discretionary review, providing for the plaintiff's right to have the 2013 superintendent's hearing recording or transcript reviewed by Coveny. The Court finds that Coveny is shielded by qualified immunity for failing to review the recording or the transcript from the 2013 superintendent's hearing.

Prack

It is undisputed that, on September 23, 2013, Prack affirmed the 2013 superintendent's hearing decision, pursuant to 7 NYCC § 254.8(a), and he "did not conduct a review of the record of that hearing," but "acted upon the recommendation of Special Housing Staff to affirm the June 11, 2013 determination." However, no evidence was presented by the defendants, showing that anyone from the Special Housing Staff reviewed the record of the hearing in connection with Prack's September 23, 2013 affirmance of Levac's decision. Prack's September 23, 2013 decision was an appeal decision, not a discretionary review decision. Since the plaintiff's right

to have the entirety of his disciplinary hearing and superintendent's hearing recorded, 7 NYCC § 254.6 (a)(2), and his right to appeal the disposition of the superintendent's hearing, 7 NYCC § 254.8, were clearly established at the time of the alleged violations, and Prack does not argue to the contrary, Prack cannot be shielded by qualified immunity based on the argument that he "did not conduct a review of the record of that hearing" but "acted upon the recommendation of Special Housing staff."   That is so because disputed material issues of fact exist concerning who, if anyone, from Prack's staff reviewed the plaintiff's 2013 hearing record.   Since Levac's decision was based on the testimony of witnesses at the hearing, Prack's failure to review the record of that hearing and his affirmance of the 2013 hearing based on his staff's recommendation, without any evidence that the record was reviewed, implicates the plaintiff's fundamental right to due process.   Accordingly, Prack is not shielded by qualified immunity for failing to review the recording or the transcript from the 2013 superintendent's hearing.

### 3.   *"A right to have redundant testimony and evidence admitted at a hearing" (Claims against Malin)*

Malin is not shielded by qualified immunity based on her argument that no law clearly establishes the plaintiff's "right to have redundant testimony and evidence admitted at a hearing," because that argument is based on a disputed material fact, namely, whether the testimony of Marvette Lewis and the requested evidence Malin denied at the 2011 hearing were redundant.   The plaintiff stated, under penalty of perjury, that Malin told him off the record that "she does not respect inmate witnesses' testimony."   Malin stated, under penalty of perjury, that she did not: (a) tell the plaintiff that she "would disregard an inmate's testimony simply because it came from an inmate"; and (b) call Marvette Lewis as a witness because "she concluded that her testimony would simply be redundant of her husband's and that of the other inmate witness present."   If it is true that Malin stated to the plaintiff that she would disregard the testimony of

31

an inmate witness simply because it came from an inmate, that would show not only that Malin was biased against the plaintiff but also that the testimony of Marvette Lewis would not have been redundant of the testimony of her husband, inmate Zachary Lewis, or that of "the other inmate witness present."  Malin would have disregarded the testimony of inmate witnesses. Moreover, the requested photograph of the visitation area windows might not have been unnecessary, as redundant evidence, if it is true that Malin would disregard inmate testimony. The plaintiff's claim of bias is based on disputed material facts concerning whether Malin told the plaintiff, off the record, that she would disregard inmate-witness testimony.  Accordingly, Malin is not shielded by qualified immunity for her determination to exclude testimony she alleges was redundant.

**4.**   ***"A right to have due process protections in a discretionary review or to have a discretionary review vacate a determination when regulations do not allow it" (Claims against Griffin and Coveny)***

"A state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.  Plainly, however, the underlying right must have come into existence before it can trigger due process protection."  Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 463, 101 S. Ct. 2460, 2464 (1981) (citations omitted).  "[T]he mere existence of a power to [reduce a penalty] create[s] no right or 'entitlement.'"  Id., at 467, 101 S. Ct. at 2465.

New York regulations state only that "[a]t any time during which a penalty imposed pursuant to a superintendent's hearing is in effect, the superintendent may reduce the penalty." 7 NYCRR § 254.9.  The regulation imposes no requirement respecting the procedure to be used, what evidence to consider or what criteria to apply when conducting a superintendent's discretionary review; it only provides discretionary power to the superintendent to reduce the

32

penalty imposed.  Thus, New York did not create a right to due process protections or to any particular outcome in connection with the superintendent's discretionary review.  The Court finds that, at the time of the alleged violations, no clearly established law existed providing for the plaintiff's right to a superintendent's discretionary hearing, due process protections during a discretionary hearing or a particular result from a discretionary hearing.  The Court finds that Griffin and Coveny are shielded by qualified immunity from liability to the plaintiff respecting his claims concerning the discretionary review they performed.

*5.  "A right of an inmate to be present at [his] disciplinary hearing" (Claim against Levac)*

The defendants' contention that "due process does not require that an inmate attend his disciplinary hearing" is frivolous and contradicts the language contained in the "Refusal to Attend Hearing" form issued by the defendants and attached to Levac's declaration as Exhibit D, stating: "In accordance with Sections 252.3(A)(2), 253.6(b) & 254.6(b) of the New York State Code Rules & Regulations, Title 7, I hereby waive my right to attend my Disciplinary Hearing." As Exhibit D to Levac's declaration demonstrates, by mandating that "[t]he inmate shall be present at the hearing unless he or she refuses to attend," 7 NYCRR §§ 252.3(A)(2), 253.6(b) and 254.6(b), New York's regulations provide for an inmate's right to be present at his or her hearing, which was clearly established at the time of the alleged violations.  Levac knew that the plaintiff's right to attend his hearing was clearly established at the time of the hearing because he stated in his declaration that he: (a) "instructed Correction Officer Relf of Five Points to wake Plaintiff so that he could attend the re-hearing that day"; (b) "was advised by Correction Officer Relf that Plaintiff refused to attend"; and (c) "was advised Plaintiff refused to sign" the "Refusal to Attend Hearing" form, waiving his right to attend the hearing.

The defendants also contend that "due process does not require that an inmate attend his disciplinary hearing, especially when he refuses to attend," quoting the following from Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999), in support of that contention: "It is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate."  However, the Second Circuit's statement that "[i]t is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate" does not say anything about an inmate's right to be present at his or her disciplinary hearing.  In fact, in Kalwasinski, the inmate was present at his hearing because the court stated that "Kalwasinski spoke in his own defense" during the hearing, id. at 105, and the issue of an inmate's right to be present at the inmate's hearing was not before the court.  Accordingly, Levac is not shielded by qualified immunity based on his argument that no clearly established right existed for an inmate to be present at his hearing.

6. *"A right to have due process protections where no additional penalty is imposed at a disciplinary re-hearing other than finding the inmate guilty" (Claim against Levac);*
7. *"A protected liberty interest in not having a guilty finding on a disciplinary record, even when it does not impact time spent in SHU" (Claim against Levac);*
8. *"Requiring a hearing officer to personally confirm that an inmate who has refused to attend a disciplinary hearing has timely received a copy of the disposition" (Claim against Levac); and*
9. *"Requiring a hearing officer to personally confirm that an inmate receives the hearing disposition immediately after it is rendered" (Claim against Levac)*

The defendants' argument that Levac is shielded by qualified immunity because, "[u]nder Sandin v. Conner, 515 U.S. 472, 484 (1995), . . . a liberty interest and due process are generally not implicated for periods of confinement in SHU for less than 101 days unless a Plaintiff demonstrates 'atypical' conditions of SHU confinement," fails for the same reasons it was rejected by the assigned district judge, when she denied the defendants' motion to dismiss the claims against Prack based on qualified immunity, stating:

34

Prack reasons that he was not violating Plaintiff's clearly established rights because the 2013 re-hearing did not impose additional SHU time on Plaintiff and therefore did not deprive Plaintiff of a liberty interest. Prack's **reasoning puts the cart before the horse.** The relevant issue is whether it would have been reasonable for Prack to believe that the due process protections attendant to disciplinary actions such as those taken against Plaintiff were not violated. . . . Plaintiff alleges that he was not provided with a written disposition of the charges against him or the evidence relied upon in reaching that disposition. . . . Accordingly, Prack's Motion to Dismiss on qualified immunity grounds must be denied.

(Docket Entry No. 142) (emphasis added).

The defendants' contentions are meritless because they: (1) misstate the plaintiff's allegations of due process violations in connection with the 2013 hearing conducted by Levac; and (2) assume that the existence of the plaintiff's due process rights depends on the result of the superintendent's hearing. The plaintiff's due process rights in connection with the superintendent's hearing are created by New York regulations, 7 NYCRR Part 254, which include, inter alia, the mandate that, "[a]s soon as possible, but no later than 24 hours after the conclusion of the hearing, the inmate shall be given a written statement of the disposition of the charges." 7 NYCRR § 254.7(a)(5). As is apparent from the language of the regulations, this mandate, creating the plaintiff's right to be given a written statement of the disposition of the charges no later than 24 hours after the conclusion of the hearing, does not depend on the result of the superintendent's hearing. It is undisputed that Levac did not give the plaintiff a written 2013 hearing disposition, and no evidence exists in the record that the written 2013 hearing disposition was given to the plaintiff, as mandated by the clearly established New York regulation codified in 7 NYCRR § 254.7(a)(5). Thus, the plaintiff's due process rights were clearly established at the time of the alleged violation and did not depend on the result of the hearing, including the right to receive a written disposition of the hearing no later than 24 hours after the hearing, making Levac's qualified immunity arguments meritless. Accordingly, Levac is not shielded by qualified immunity based on grounds 6, 7, 8 and 9, mentioned above.

35

### 10. *"Finding a defendant personally involved in a constitutional violation for affirming a grievance or disciplinary determination" (Claims against Griffin and Venettozzi)*

Whether the defendants were personally involved in the alleged violations is not an element of the qualified immunity defense; rather, it goes to the merits of the plaintiff's claims. As discussed above, Griffin is shielded by qualified immunity in connection with the discretionary review of the plaintiff's 2011 superintendent's hearing decision, and Venettozzi is not shielded by qualified immunity in connection with his affirmance of the plaintiff's 2011 superintendent's hearing decision.

## DUE PROCESS VIOLATION CLAIMS OF BIAS AGAINST MALIN AND LEVAC BASED ON THEIR FAILURE TO RECORD THE HEARINGS IN THEIR ENTIRETY

"Since the touchstone of the right of due process is freedom from arbitrary governmental action, *Ponte v. Real*, 471 U.S. 491, 495, 105 S. Ct. 2192, 2195, 85 L. Ed.2d 553 (1985), it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right." Francis v. Coughlin III, 891 F.2d 43, 46 (2d Cir. 1989). "[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment." Id. at 47.

As discussed above, it is undisputed that the plaintiff's 2011 and 2013 hearings were not recorded in their entirety. The plaintiff asserted, under penalty of perjury, that Malin and Levac were biased against him when they interfered, intentionally, with the hearing recordings. Malin and Levac denied that they acted intentionally. Moreover, as the plaintiff points out correctly, Levac contradicted himself in his declaration, when he stated: (1) "I generally do not review the recordings of hearings before I render disciplinary dispositions and did not do so in this instance"; and (2) "[d]uring the course of the re-hearing, I unintentionally recorded over, with the testimony of another witness, part of the testimony of Officer Skinner that had previously been

36

provided.  This required me to recall Officer Skinner to testify again"; and (c) "[a]fter I realized I had recorded over a portion of his testimony, I called Officer Skinner to re-testify by telephone on June 11, 2013."  It appears from Levac's testimony that, contrary to his statement that he did not review the recording of the plaintiff's hearing before he rendered his decision, he did review the recording because he realized, before he rendered his decision, that he recorded over part of Skinner's testimony with the testimony of another witness, which prompted Levac to call Skinner "to re-testify by telephone on June 11, 2013."  Moreover, the plaintiff contends, under penalty of perjury, that Levac made threats to him at the 2013 hearing, which Levac denies, creating a disputed issue of material fact for the trier of fact to determine, especially in light of Levac's testimony that, during the 2013 hearing, he recorded over certain parts of the proceeding.  Thus, whether Malin and Levac acted with bias against the plaintiff are disputed issues of material fact that must be resolved by the trier of fact.  Thus, denying summary judgment is warranted on the plaintiff's claims of bias against Malin and Levac because disputed issues of material fact exist concerning Malin's and Levac's respective states of mind and the plaintiff pointed to evidence that would permit the trier of fact to draw a reasonable inference of unlawful conduct by them, namely, the undisputed failure to record the hearings in their entirety. Accordingly, the plaintiff's claims of bias against Malin and Levac, based on their failure to record the hearings in their entirety, survive the parties' summary judgment motions.

## DUE PROCESS VIOLATION CLAIM AGAINST VENETTOZZI: THE LACK OF PERSONAL INVOLVEMENT AND DUE PROCESS VIOLATION BY MALIN

The defendants' argument concerning the plaintiff's claim against Venettozzi is that, "[w]here [Venettozzi] merely 'rubber stamped' the disciplinary determination and did not proactively participate in the review, courts have held that there is insufficient basis to find personal involvement in a § 1983 action."  Alternatively, the defendants contend that no

constitutional violation occurred by Venettozzi in affirming Malin's 2011 decision "because the underlying actions of DSP Malin were not unconstitutional and the guilty determination was supported by the record."  However, the defendants' contention is not supported by the motion record because Venettozzi stated in his declaration that, in connection with the plaintiff's 2011 hearing, he "did not conduct a review of **the entire** documentary record of that hearing and would not have been aware of the arguments made in Plaintiff's appeal"; rather, he "acted upon the recommendation of Special Housing staff to affirm the October 5, 2011 disciplinary determination."  Based on Venettozzi's statement that he "did not conduct a review of **the entire** documentary record" of the plaintiff's 2011 hearing, and absent evidence that he "did not proactively participate in the review," as the defendants contend, a reasonable inference can be made that Venettozzi reviewed a portion of the documentary record, thus, participating actively in the review.  Moreover, Venettozzi stated, hypothetically, that he "would not have been aware of the arguments made in Plaintiff's appeal," rather than affirmatively that he was not aware of the arguments made in the plaintiff's appeal.  Thus, Venettozzi's own declaration indicates that it is not disputed that Venettozzi participated in reviewing less than "the entire documentary record" from the plaintiff's 2011 hearing.  Accordingly, summary judgment cannot be granted based on the lack of personal involvement argument.  Granting summary judgment based on the defendants' alternative ground is also not warranted, because whether Malin's actions were constitutionally sound involves disputed issues of material fact that must be left to the trier of fact to determine, as discussed above.  Thus, the plaintiff's due process claim against Venettozzi survives the parties' summary judgment motions.

**DUE PROCESS VIOLATION CLAIM AGAINST PRACK: THE LACK OF PERSONAL INVOLVEMENT AND DUE PROCESS VIOLATION BY LEVAC**

The defendants contend that Prack did not conduct a review of the record before affirming the determination and he followed the recommendation of his staff. "For the same reasons summary judgment should be granted to AD Venettozzi . . . it should also be granted as to Director Prack." Unlike Venettozzi, Prack stated in his declaration, in connection with the plaintiff's 2013 hearing, that he "did not conduct a review of the record of that hearing and was not aware of the arguments made in Plaintiff's appeal." Like Venettozzi, Prack "acted upon the recommendation" of his staff. Thus, it is undisputed that Prack: (1) did not review the record of the plaintiff's 2013 hearing; (2) was not aware of the arguments made in the plaintiff's appeal; and (3) acted upon the recommendation of his staff when he affirmed the 2013 hearing decision. However, the defendants do not make citation to any binding authority for their proposition that no personal involvement exists for the purpose of a Section 1983 claim "[w]here an official merely 'rubber stamped' the disciplinary determination and did not proactively participate in the review." The plaintiff may establish "personal involvement by making any one of five showings [of] the 'Colon factors,'" Warren v. Pataki, 823 F.3d 125, 136 (2d Cir. 2016), and the plaintiff alleged that Prack, after being informed of the alleged constitutional violations, failed to remedy the wrong. Absent any binding authority to support the defendants' position, the Court finds that summary judgment in Prack's favor is not warranted on the ground of lack of personal involvement concerning the plaintiff's due process claim against him. Granting summary judgment based on the defendants' alternative ground is also not warranted, because whether Levac's actions were constitutionally sound involves disputed issues of material fact that must be left to the trier of fact to determine, as discussed above. Thus, the plaintiff's due process claims against Prack survives the parties' summary judgment motions.

39

## DUE PROCESS CLAIM OF BIAS AGAINST MALIN BASED ON THE DENIAL OF THE ALLEGEDLY REDUNDANT EVIDENCE

"[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566, 94 S. Ct. at 2979. As discussed above, disputed issues of material fact exist concerning Malin's exclusion of Marvette Lewis's testimony as redundant of that of her husband, inmate Zachary Lewis, and another inmate witnesses. Moreover, Malin denied the plaintiff's request for a photograph of the visiting room windows to support his claim because she determined that it was not necessary in light of the plaintiff's description and her own knowledge of the visiting room. Given that Malin did not deny Marvette Lewis's testimony and the plaintiff's request for a photograph based on an undue hazard to the institutional safety or correctional goals, but based on redundancy, and in light of the disputed issues of material fact concerning the redundancy of Marvette Lewis's testimony and the evidence denied to the plaintiff, as well as Malin's bias against inmate witnesses, granting summary judgment on the plaintiff's bias claim against Malin based on the denial of allegedly redundant evidence is not warranted.

## DUE PROCESS VIOLATION CLAIMS AGAINST LEVAC AND PRACK BASED ON LEVAC'S ALLEGED FAILURE TO ADVISE THE PLAINTIFF OF THE RIGHTS HE WAS WAIVING BY REFUSING TO ATTEND THE 2013 HEARING AND PRACK'S ALLEGED FAILURE TO REMEDY THAT VIOLATION

It is undisputed that the plaintiff read the Refusal to Attend Hearing form presented to him in connection with the 2013 hearing because he testified to doing so during his deposition. It is undisputed that the Refusal to Attend Hearing form contains the following language: "In accordance with Sections 252.3(A)(2), 253.6(b) & 254.6(b) of the New York State Code Rules & Regulations, Title 7, I hereby waive my right to attend my Disciplinary Hearing. I understand that a disposition of the charges shall be made in my absence. I also acknowledge that I am

making this decision without any coercion from staff of other inmates." Thus, it is undisputed that the plaintiff was advised of the consequences of his refusal to attend the 2013 hearing and no due process violation occurred in connection with any waiver resulting from the plaintiff's refusal to attend the 2013 hearing. Accordingly, granting summary judgment to Levac and Prack on the plaintiff's due process violations claims based on: (a) Levac's failure to advise him of the rights he was waiving by refusing to attend the 2013 hearing; and (b) Prack's failure to remedy the alleged violation, is warranted.

**DUE PROCESS VIOLATION CLAIMS AGAINST LEVAC AND PRACK BASED ON LEVAC'S FAILURE TO GIVE PLAINTIFF A WRITTEN STATEMENT OF THE DISPOSITION OF THE 2013 HEARING AND PRACK'S FAILURE TO REMEDY THAT VIOLATION**

The defendants contend that Levac stated in his declaration that he "does not personally involve himself with providing dispositions to absent inmates" and the plaintiff "acknowledges that he received the June 11, 2013 disposition by at least mid-July 2013 (see Supp. Complaint at 27-28), several weeks after it was issued, which is not the type of delay that implicates the Due Process Clause, which only requires that the report ultimately be provided." The defendants' contention that the plaintiff acknowledged in his supplemental complaint that he received the 2013 hearing disposition "by at least mid-July 2013" is frivolous because the plaintiff stated, on page 27 of his supplemental allegations, made under penalty of perjury, Docket Entry No. 57: "I was never given a disposition of the hearing, I had no idea whether the hearing was still going on out of my presence, or had it ended. It was not until I receive my inmates [sic] monthly statement on 7/16/2013, see, my inmates [sic] monthly statement attached herein as EXHIBIT-C. This is when I notice that a $5 s[u]rcharge was taken out of my account for an [sic] disciplinary tier 111[sic] dated 6.18.2013, therefore, this hearing must be dismiss for these reasons [sic]."

Moreover, the plaintiff's grievance, dated "7-26-2013," on page 21 of the supplemental allegations, Docket Entry No, 57, states:

> On 7-16-2013, I receive[d] my inmate monthly statement and notice that five dollars ($5) was taken from my inmates account for a Tier-3 hearing, that [was] held out of my presen[c]e, it states that I was found guilty, I then did a F.O.I.L. request to have the tape and documents of this hearing sent to me for my review, due to the fact that the hearing officer Lt. Levac, did not send me any decision of this hearing or any notice of my rights to appeal, neither did he or any other officer advise me of the rights I am giving up if I refused to attend the hearing in person.

It is undisputed that Levac did not give the plaintiff a written statement of the disposition of the 2013 hearing he conducted, since he stated so in his declaration and the plaintiff did not rebut that statement.  No evidence exists that the plaintiff was given a written statement of the disposition of the 2013 hearing no later than 24 hours after the conclusion of that hearing, setting forth the evidence relied upon by Levac in reaching his decision and the reasons for any penalty imposed, as due process mandates.  See NYCRR § 254.7(a)(5).  No evidence exists that the plaintiff was ever given a written statement of the disposition of the 2013 hearing.  The Court finds that it is undisputed that the plaintiff was not given a written statement of the disposition of the 2013 hearing, as required by due process.  Levac cannot be absolved of the responsibility for complying with the due process requirement embodied in 7 NYCRR § 254.7(a)(5), because he does not: (a) "personally deliver copies of my Disciplinary Dispositions to inmates who do not attend their disciplinary hearings"; and (b) "follow-up to confirm that DOCCS has delivered copies of my Hearing Disposition to such inmates."  Although New York regulations mandate, in the passive tense, that "not later than 24 hours after the conclusion of the hearing, the inmate **shall be given** a written statement of the disposition of the charges," 7 NYCRR § 254.7(a)(5) (emphasis added), subsection (a) containing this mandate and entitled "Dispositions" provides authority to the hearing officer to impose certain penalties and speaks only about the

discretionary powers and mandatory duties of the hearing officer in imposing the penalty. Accordingly, since the subsection "Dispositions" concerns solely the hearing officer's discretionary powers and mandatory duties, the conclusion follows that the mandate to give a written statement of the disposition is for the hearing officer to discharge or to ensure that the responsibility is discharged. Since DOCCS is not a person who can be sued by the plaintiff under Section 1983 for a violation of the due process right to be given a written statement of the hearing disposition no later than 24 hours after the conclusion of the hearing, the plaintiff's claim is appropriately directed against Levac, the 2013 hearing officer, and Prack, who failed to remedy the violation by affirming Levac's decision. Accordingly, summary judgment on the plaintiff's due process violations claims against Levac and Prack, based on Levac's failure to give the plaintiff a written statement of the disposition of the 2013 hearing and Prack's failure to remedy the due process violation, is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (a) the plaintiff's motion for summary judgment, Docket Entry Nos. 117 and 160, be granted, in part, and denied, in part; and (b) the defendants' motion for summary judgment, Docket Entry No. 170, be granted, in part, and denied, in part, as follows:

(1) Malin be granted summary judgment on the plaintiff's retaliation claim against her, based on the plaintiff's failure to exhaust administrative remedies;

(2) Lilley, Griffin and Coveny be granted qualified immunity on all claims against them;

(3) Levac and Prack be granted summary judgment on the plaintiff's due process violation claims, based on Levac's alleged failure to advise the plaintiff of the rights he was

waiving by refusing to attend the 2013 hearing and Prack's alleged failure to remedy that

violation; and

(4) the plaintiff be granted summary judgment on his due process violation claims against

Levac and Prack, based on Levac's undisputed failure to comply with the requirement of

7 NYCRR § 254.7(a)(5), in connection with the 2013 hearing and Prack's undisputed

failure to remedy that violation.

The plaintiff's claims remaining to be tried because disputed issues of material fact exist in

connection with them are the: (i) due process claims of bias against Malin and Levac, based on

their failure to record the 2011 and 2013 hearings in their entirety; (ii) due process claim of bias

against Malin, based on the denial of the allegedly redundant evidence; and (iii) due process

claims against Venettozzi and Prack, based on the alleged failure to remedy those violations.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Batts.  *Failure to*

*file objections within fourteen (14) days will result in a waiver of objections and will preclude*

*appellate review.*  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328

F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      September 19, 2016

Copy mailed to:

Eric Tolliver

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

45